**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 1:21-cr-35-EGS** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY SABOL** | : | |
| **Defendant** | | |

<u>**DEFENDANT JEFFREY SABOL'S MEMORANDUM IN SUPPORT OF MOTION FOR PRE-TRIAL RELEASE FROM CUSTODY**</u>

Defendant Jeffrey Sabol (hereinafter "defendant" or "Mr. Sabol"), though undersigned counsel, respectfully requests this Court grant defendant's motion for Modification of Bail and Order him to be released from detention pending trial.

Defendant moves this Court, pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142, to release defendant on personal recognizance.

Alternatively, if this Court is not amendable to release defendant on personal recognizance, defendant moves this Court to release defendant into the third-party custody of his mother and father, and commit him to the supervision of a High Intensity Supervision Program (HISP) with GPS monitoring by local Pretrial Services.

If the Court deems that defendant isn't entitled to pretrial release, he respectfully moves for a Court Order permitting him to possess a laptop computer in his jail cell that allows him to review all discovery and participate in his own defense.

Defendant's arguments for release relies heavily on video evidence.  Defendant respectfully asserts a hearing is necessary for defendant's argument to be properly put forth.

 The defendant states the following in support of this request.

## <u>CERTIFICATE OF SERVICE</u>

Undersigned counsel hereby certifies, on Monday, August 23, 2021, the within motion and exhibits were filed via the Court's electronic filing service.  All video exhibits that were unable to be uploaded were sent to the Court and Government via email, in accordance with Mr. Mark Coates instructions.

Dated: August 23, 2021                    Respectfully Submitted,

                                          s/Alex Cirocco _____

                                          Alex Cirocco, Esq.
                                          Attorney for Jeffrey Sabol
                                          DC Bar ID # NJ 037
                                          Law Offices of Alex Cirocco, LLC
                                          600 Getty Avenue, Suite 305
                                          Clifton, NJ 07011
                                          973-327-9995
                                          alex@ciroccolaw.com

## **PREAMBLE**

"Facts are stubborn things; and whatever may be our wishes, our inclinations or the dictates of our passions, they cannot alter the state of facts and evidence…The law, in all vicissitudes of government, fluctuations of the passions or flights of enthusiasm, will preserve a steady undeviating course; it will not bend to the uncertain wishes, imaginations and wanton tempers of men." Jon Adams, speaking to the jury, standing before a crowded courtroom during the "Boston Massacre" trial in 1770.

## I.      <u>INTRODUCTION</u>

1.  Defendant moves for Bail Modification for the following reasons:

    a.  The Government is unable to prove by clear and convincing evidence that there are no conditions that could be imposed to ensure the safety of any other person and the community.  The Government went to great lengths during defendant's first bond hearing before Your Honor to distort the trust, misrepresent facts, and rely on the actions of co-defendants on January 6, 2021 to compensate for its inability to demonstrate that defendant should be detained.

    b.  The Government is unable to prove by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Mr. Sabol's appearance in court pending trial;

    c.  Defendant's treatment in the DC jail has violated, and continues to violate, his human rights, his 6th Amendment Right to assistance of counsel, and his 8th Amendment Right to not be subjected to cruel and unusual punishment; and

    d.  The presumption against bail for pretrial detainees and defendant's denial of Equal Protection Under the Law.

## II.   <u>PROCEDURAL HISTORY</u>

Defendant was initially charged with Civil Disorder in violation of 18 U.S.C. § 231 (a)

(3) on January 15, 2021. *See* Exhibit A.  He was arrested on January 22, 2021 and had his initial

appearance and initial detention hearing held in the Southern District of New York the same day.

Magistrate Judge Andrew E. Krause kept defendant detained because he found defendant was a

risk of flight/danger. *See* Minute Entry, 7:21-mj-866-UA-1 (1/22/2021)

On January 29, 2021, defendant was indicted, along with co-defendants Peter Francis

Stager and Michael John Liopatic Sr., for Civil Disorder and other offenses arising from their

actions at the U.S. Capitol. *See* Exhibit B.  On March 12, 2021, a superseding indictment was

filed, now naming defendant and four (4) co-defendants. *See* Exhibit C.  Defendant was indicted

for the following eight (8) charges:


1. Title 18 U.S.C. § 111 (a)(1) and (b)- Assaulting, Resisting, or Impeding Certain Officers

Using a Dangerous Weapon;

2. Title 18 U.S.C. § 111 (a)(1)- Assaulting, Resisting, or Impeding Certain Officers;

3. Title 18 U.S.C. § 231 (a)(3)- Civil Disorder;

4. Title 18 U.S.C. § 231 (a)(3)- Civil Disorder;

5. Title 18 U.S.C. § 1752 (a)(1) and (b)(1)(A)- Entering and Remaining in a Restricted Building

or Grounds with a Deadly or Dangerous Weapon;

6. Title 18 U.S.C. § 1752 (a)(2) and (b)(1)(A)- Disorderly and Disruptive Conduct in a Restricted

Building or Grounds with a Deadly or Dangerous Weapon;

7. Title 18 U.S.C. § 1752 (a)(4) and (b)(1)(A)- Engaging in Physical Violence in a Restricted

Building or Grounds with a Deadly or Dangerous Weapon; and

8. Title 40 U.S.C. § 5104 (3)(2)(F)- Act of Physical Violence in the Capitol Grounds or Buildings.

On April 8, 2021, defendant's detention hearing was held before Your Honor.  After reviewing both parties' briefs and hearing oral argument, Your Honor Ordered Mr. Sabol detained pending trial, finding by clear and convincing evidence that there were no conditions that could be imposed to ensure the safety of any other person and the community if Mr. Sabol were released, and finding by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Mr. Sabol's appearance pending trial.  *See* Exhibit D.

### III.  <u>LAW FOR PRETRIAL RELEASE</u>

Defendant is eligible for pre-trial detention based on his pending charges, but the burden

to detain lies with the Government.  *See* 18 U.S.C § 3142 (f) (1) (A).  To detain the defendant on

the basis of dangerousness, the Government's position must be supported by clear and

convincing evidence.  *See* 18 U.S.C § 3142 (f).  To detain the defendant on the basis of risk of

flight, the Government's position must be supported by a preponderance of the evidence.  *See*

*United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).  The statutory factors analyzed to

determine if the Government satisfied their burden are found in 18 U.S.C. §3142(g).  In the

recent case of *United States v. Klein*, U.S. District Court Judge John D. Bates granted pretrial

release to defendant, who was also charged with crimes related to the events of January 6, 2021.[1]

The Klein Court laid out the legal standard for pretrial release as follows:

> To assess a defendant's dangerousness, the court must "take into account the
> available information" concerning four statutory factors: (1) "the nature and
> circumstances of the offense charged," (2) "the weight of the evidence against the
> person," (3) "the history and characteristics of the person," and (4) "the nature and
> seriousness of the danger to any person or the community that would be posed by
> the person's release." 18 U.S.C. § 3142(g)(1)–(4). As the D.C. Circuit recently
> stated in *United States v. Munchel*, "[t]o justify detention on the basis of
> dangerousness, the government must prove by 'clear and convincing evidence' that
> 'no condition or combination of conditions will reasonably assure the safety of any
> other person and the community.'" 2021 WL 1149196, at *4 (D.C. Cir. Mar. 26,
> 2021) (quoting 18 U.S.C. § 3142(f)). That requires the government to establish that
> the defendant poses a continued "articulable threat to an individual or the
> community" that cannot be sufficiently mitigated by release conditions. *Id.* (quoting
> *Salerno*, 481 U.S. at 751); see also id. ("[A] defendant's detention based on
> dangerousness accords with due process only insofar as the district court determines
> that the defendant's history, characteristics, and alleged criminal conduct make
> clear that he or she poses a concrete, prospective threat to public safety.").
> Furthermore, "[d]etention cannot be based on a finding that defendant is unlikely
> to comply with conditions of release absent the requisite finding of dangerousness
> ... [as] otherwise the scope of detention would extend beyond the limits set by

---

[1] *See United States v. Frederico Guillermo Klein*, 2021 WL 1377128 (citing *United States v. Chrestman*, 2021 WL
765662 (D.D.C. February 26, 2021))

Congress." Id. at *7; see also Salerno, 481 U.S. at 746 ("[P]retrial detention under the Bail Reform Act is regulatory, not penal.").

Defendant submits the within motion as a motion to reconsider Your Honor's initial detention decision. "Neither the Federal Criminal Rules nor the Local Criminal Rules of this district explicitly provide for motions for reconsideration. Courts in this district, however, have entertained motions for reconsideration of interlocutory decisions, and "the Supreme Court has recognized…the utility of such motions.'" *United States v. Coughlin*, 821 F. Supp. 2d 8, 17 (D.D.C. 2011) (quoting *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008))." *See United States v. Vo*, 13-168-4 (JDB), Memorandum Opinion and Order. "To motions for reconsideration of interlocutory orders, however, they have applied the "as justice requires" standard normally applied to motions under Rule 54(b) of the Federal Rules of Civil Procedure. *Coughlin*, 821 F. Supp. 2d at 18; *United States v. Bloch*, 794 F. Supp. 2d 15, 19 (D.D.C. 2011); *United States v. Sunia*, 643 F. Supp. 2d 51, 61 (D.D.C. 2009)." *Id.*

"Asking 'what justice requires' amounts to determining, within the court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton*, 255 F. Supp. 2d 531, 539 (D.D.C. 2005). Those circumstances include when a court has "patently misunderstood the parties, made a decision beyond the adversarial issues presented, or made an error in failing to consider controlling decisions or data, or where a controlling or significant change in the law has occurred.'" *Arias v. DynCorp*, 856 F. Supp. 2d 46, 52 (D.D.C. 2012) (quoting *Negly v. FBI,* 825 F. Supp. 2d 58, 60 (D.D.C. 2011)). But "where litigants have once battled for the court's decision, they should not be… permitted to battle for it again." *Arias,* 856 F. Supp. 2d at 52 (internal quotation marks and citation omitted). *Id.*

Based on the new information defendant now presents to Your Honor, the within motion may also be considered by Your Honor as a motion to reopen the detention hearing. The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f)(2)(B). The new video evidence that defendant provided has a material bearing on the issue of whether defendant can be released pretrial.

## IV.   **ARGUMENT**

1.   **THE GOVERNMENT FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THERE ARE NO CONDITIONS THAT CAN BE PLACED ON DEFENDANT TO ENSURE THE SAFETY OF THE COMMUNITY AND FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT NO CONDITIONS OR COMBINATION OF CONDITIOINS WILL ENSURE DEFENDANT RETURNS TO COURT**

   **A.  NATURE AND CIRCUMSTANCES OF THE OFFENSES CHARGED, UNDER 18 U.S.C. 3142(g)(1)**

In analyzing "The Nature and Circumstances of the Offenses Charged, the *Klein* court

applied the following six subfactor analysis:

> These considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses;" (2) "engaged in prior planning before arriving at the Capitol;" (3) "carried or used a dangerous weapon during the riot;" (4) "coordinated with other participants before, during, or after the riot;" or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioter' misconduct;" and (6) the nature of "the defendant's words and movements during the riot," including whether he "damaged federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot."

*United States v. Frederico Guillermo Klein*, 2021 WL 1377128 at p. 6.

Each of these six subfactors will be addressed individually and under its own subsection.

Factors four and five are interrelated and will be addressed in the same subsection.

1.   <u>Has Defendant Been Charged with Felony or Misdemeanor Offenses</u>

Defendant is Indicted on eight felony offenses.  As such, this factor weighs heavily in

favor of detention.

2.  <u>Did Defendant Engage in Prior Planning Before Arriving at the Capitol</u>

Your Honor found that defendant did engage in prior planning and found this factor to weigh in favor of detention. *See* Exhibit D, page 29.  Defendant concedes that although he did make arraignments and have an itinerary for his cross-country trip to Washington D.C., Your Honor incorrectly found this evidence to be in favor of detention.  While the Government consistently makes mention of defendant's helmet, steel toe boots, zip ties, and radio, there is nothing illegal, dangerous, or, and most importantly, offensive use-weapons on defendant's person.  Defendant is not charged with using his steel toe boots or zip ties as a weapon on January 6.  There is no evidence provided that shows defendant using his steel toe boots or zip ties as a weapon.  The Government continuously made mention of the zip ties found in defendant's book bag.  These zip ties were never taken out of defendant's bookbag or used in any way, shape, or form on January 6.  *See* Exhibit E, picture of similar zip ties that were in defendant's bookbag.

The Government even went as far as arguing at defendant's bond hearing that, "He chose to arm himself because as the Court can see, I don't think zip ties would have been a sufficient weapon in this scenario." *See* Exhibit F, pg. 25, discussing defendant taking the baton from Officer A.W.  This assertion by the Government is a complete distortion of the truth regarding the zip ties defendant had in his bookbag.  There is no possible way a plastic zip tie could have been used as a weapon in defendant's position on the Lower Western Terrace steps.  The Government makes no argument, nor provides any evidence, that defendant carried these zip ties to be used as a weapon on January 6.

Your Honor found that defendant's amount of prior planning and intentionality "suggests that he was not just caught up in the frenzy of the crowd, but instead came to Washington, D.C. with the intention of causing mayhem and disrupting the democratic process…" *United States v.*

*Jeffrey Sabol*, 21-35-1 (Citing *Chrestman*, 2021, WL 765662, at 8). Defendant submitted two videos at his initial detention hearing showing him waiving his hands in a way clearly demonstrating he was calling off any violence or assaults. *See* Exhibits G and H. (These exhibits are discussed in more depth in Section D). Defendant clearly waiving his hands and calling for the end of any violence and assaults contradicts Your Honor's finding that defendant came to the U.S. Capitol to cause mayhem.

Your Honor also found that regardless if defendant sought to fight with the government or protesters, his attire and planning led Your Honor to find this factor to favor detention. *See* Exhibit D, page 30, footnote 9. Defendant is not a member of any of the groups alleged to have organized and participated in violence at the Capitol on January 6. There is no evidence that he knew of a plan to attack the Capitol, coordinated any attack on the Capitol, or carried a map of the Capitol. Defendant coming to Washington D.C. to participate in a political rally is not a violation of any U.S. law. Defendant wearing steel toe boots or a helmet is not a violation of any U.S. law. These items, which the Government continuously cited to in its argument, are not in any way "offensive" items that can be used to inflict violence. If defendant really planned to engage in battle, he would have equipped himself with offensive-used items prior to arriving at the Capitol on January 6, like so many other people did that day.

For these reasons, this factor weighs in favor of release.

3.   <u>Did Defendant Carry or Use a Dangerous Weapon During the Riot</u>

In Your Honor's initial bond decision, the Court found that defendant did use a dangerous weapon, namely a police baton, and found this factor to weigh in favor of detention. *See* Exhibit D, page 33. Based on the evidence produced by the Government, this factor is neutral and should not weigh in favor of detention or release.

Defendant's most serious charges and actions come in a 20 second time frame, from 3:27:24 PM – 3:27:44 PM, where defendant took Officer A.W.'s baton from him and assisted co-defendant Jack Wade Whitton in pulling Officer B.M. down the Lower Western Terrace steps.

In regards to the charge of defendant taking the baton from Officer A.W., there is no allegation or evidence that defendant used the baton to strike Officer A.W. or any other officer on the top of the Lower Western Terrace steps.  Prior to approaching Officer A.W., defendant was not in possession or carrying any type of weapon.  Defendant also denies, nor does the Government proffer any evidence, that defendant was in possession of any weapon prior to entering the Lower Western Terrace steps.

In regards to the charge of defendant assisting co-defendant Jack Wade Whitton in pulling Officer B.M. down the steps, there is no evidence that defendant used the baton to assault or attack Officer B.M.  Your Honor's initial decision states "The video evidence may not show Mr. Sabol striking the officer with the baton, but it certainly shows him using it during this violent encounter." *See* Exhibit D, page 34.  The Government submitted a single photograph from above the Lower Western Terrace steps which shows defendant over B.M. *See* Exhibit I.  Defendant refutes any allegations that he used the baton to assault B.M.  This picture is a distortion of defendant's actions and is used to portray him in a much more assaultive and dangerous light than what the video evidence shows.

We are now almost six months past defendant's initial bond hearing and the Government has still not provided any further evidence to support their claim that defendant assaulted Officer B.M.  In their initial bond brief, the Government consistently argued that defendant held the baton against Officer B.M.'s neck. *See* Exhibit F, pages 5, 13, and 14.  Your Honor also found that defendant held the baton against Officer B.M.'s neck. *See* Exhibit D, pages 37, 39, and 42.

There is no evidence, neither in videos, bodycams, or pictures, that defendant held nor pushed the baton against Officer B.M.'s neck.  When looking closely at the photo, you can clearly see the baton is not against Officer B.M.'s neck, but instead hovering above it. *See* Exhibit I.  Co-defendant Whitton's hand is clearly on Officer B.M.'s neck.

When viewing C.M.'s body cam footage on .5 speed, starting at 16:27:31, you can clearly see that co-defendant Jack Wade Whitton initiated and is the main actor in pulling Officer B.M. down the steps. *See* Exhibit J.  Mr. Whitton grabbed Officer B.M. by the helmet and already had Officer B.M. sliding down the stairs prior to Mr. Sabol coming into view.  The footage never shows Mr. Sabol using the baton to assault Officer B.M.  Your Honor's findings that "Mr. Sabol wielded the baton in one hand as he pushed Officer B.M. down the U.S. Capitol steps…" conforms with defendant's position that he never used the baton to assault Officer B.M. or any person or property during January 6.  While not completely clear because of the angle of C.W.'s body cam, at approximately 16:27:42-16:27:50 of C.W.'s body cam, the footage shows that immediately after Officer B.M. is pulled down the steps, Mr. Sabol leaves the Lower Western Terrace steps and does not reengage with any other persons. *See* Exhibit J.

Your Honor also found that defendant "forcibly took Officer A.W.'s baton to injure or intimidate others-…" See Exhibit D, page 34.  When viewing footage from inside the Lower Western Terrace, footage that was not shown to Your Honor at defendant's initial hearing, defendant can be seen carrying away an injured individual immediately after the incident with Officer A.W. and B.M.  *See* Exhibit K, 13:30-14:25.  Defendant also found video from the same time frame filmed from the bottom of the Lower Western Terrace steps.  Defendant is clearly seen by the feet of an injured individual and attempting to assist him.  *See* Exhibit L, 23:02-24:37.  This is the same individual that defendant is shown carrying away in Exhibit K. (This

evidence is also argued in support of defendant's release in Section D below). Defendant's actions immediately after taking Officer A.W.'s baton clearly demonstrate that defendant did not take the baton with the intent to injure or intimidate others.

The Government consistently relied on actions of other individuals and evidence unrelated to defendant's conduct to argue defendant's dangerousness. During defendant's initial bond hearing, the Government made two mentions of what it perceives to be blood on Officer A.W.'s jacket and on the white marble floor. *See* Exhibit M, pages 33-34. Defendant does not make light or minimize the seriousness of any injuries that happened to Officers A.W., Officer B.M., or any Officer on January 6. However, defendant is not charged with, there is no evidence submitted, and defendant completely denies ever hitting or assaulting Officer A.W. The proffers by the Government that Officer A.W. had blood on his jacket and on the floor next to him has no relation or effect on the dangerousness analysis that the Court must conduct to determine detention or release.

While defendant concedes he was in possession of Officer A.W.'s baton, he never used the baton to injure or threaten any other Officer, and the evidence shows his possession of the baton was very brief. For these reasons, this factor is neutral and does not favor release or detention.

4. and 5. <u>Did Defendant Coordinate with Other Participants or Did Defendant Assume a Formal or De Facto Leadership</u>

There is no evidence that defendant coordinated with, assumed any type of leadership role, or has any type of relationship with his co-defendants. Defendant doesn't know any of his co-defendants and had no contact or relationship with them prior to, or on January 6. For these reasons, these two factors favor release.

6. The nature of "the defendant's words and movements during the riot," including whether he "damaged federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot."

Although defendant faces eight felony charges, the most serious charges, and the charges the Government consistently cited, are defendant's actions on top of Lower Western Terrace steps, spanning approximately 20 seconds. Your Honor found this factor to weigh in favor of detention based on defendant's actions over this 20 second period, finding defendant acted "deliberately and dangerously". *See* Exhibit D, page 35.

This factor is neutral in deciding detention or release. Defendant is not alleged to have damaged any federal property or promoted or celebrated any efforts to disrupt the certification of the electoral vote count during the riot. Defendant did not enter the U.S. Capitol or attempt to gain entry into the U.S. Capitol at any point during January 6. Defendant also did not boast or make light of the January 6 incident or his actions on January 6 after they took place. The Government's allegations that defendant "was involved in some of the most violent assaults on law enforcement that occurred that day," is not a fair representation of defendant's actions. While defendant was involved in events on the Lower Western Terrace steps, defendant denies assaulting Officer B.M. Additionally, co-defendant's actions, which can be clearly seen on bodycam and video evidence, were much more violent and offensive to the Capitol Officers.

In finding this factor favored detention, Your Honor cited to *Klein*, which specifically mentioned defendant Sabol by name in their footnote of defendant's charged with violent acts on January 6. *See* Exhibit N, Footnote 8. This reference by the *Klein* Court relied on the statement of facts, not the video evidence, and does not take into account the specific actions of defendant Sabol, nor does it reference his actions proceeding or following his actions at the top of the steps. Defendant's actions of allegedly dragging Officer B.M. down the steps was after co-defendant

Jack Wade Whitton had already grabbed Officer B.M. by the head and started sliding him down the steps.  After this event, defendant immediately exits the Lower Western Terrace steps, helps carry an injured member of the crowd away from the steps, and does not engage with any other U.S. Capitol Officers or attempt to break into the U.S. Capitol.

Although the picture of defendant and Officer B.M. may look like defendant was hitting Officer B.M. with the baton, *See* Exhibit I, defendant vehemently denies that he assaulted B.M. with the baton, nor does the Government have any evidence showing he did, something Your Honor acknowledged in his written decision. *See* Exhibit M, page 34.  Defendant leaving the Lower Western Terrace steps immediately after the incident, not being involved in any other assaultive conduct, and assisting an injured member of the crowd goes directly to the issue of whether defendant poses a concrete and prospective threat to public safety.  Defendant was in possession of a police baton and did not use it to commit any violence or destruction of property. Because defendant does take Officer A.W.'s baton, but did not use it to commit further violence, nor commit any other acts of violence or destruction at the U.S. Capitol, this factor is neutral and neither weighs in favor of detention or release.

In the case of Jeffrey Sabol, applying the *Klein* analysis, three of the six subfactors weigh in favor of release, one of the six subfactors weigh in favor of detention, and two of the six subfactors are neutral.

As such, and under the analysis implemented by this Court in *Klein,* the nature and circumstances of the offense weigh in favor of release in regards to dangerousness.  *United States v Klein*, 2021 WL 1377128.

In regards to risk of flight, Your Honor only found this factor favored detention because of the prison exposure defendant faces. *See* Exhibit D, pages 43-44.  Your Honor failed to consider what

effects home detention, GPS monitoring, posting of a bond, and defendant relinquishing his passport would have on his ability to appear in court.  If released and placed under such conditions, defendant would not pose any risk to flee or not appear in court as required.

**B.  WEIGHT OF THE EVIDENCE, UNDER 18 U.S.C. 3142(g)(2)**

The weight of the evidence is the least important of the factors, and the bail statute
neither requires nor permits a pretrial determination of guilt. *United States v Winsor*, 785 F.2d
755, 757 (9th Cir. 1986).  Although defendant is facing eight charges resulting from January 6,
the Government's basis for filing a motion in opposition to defendant's pretrial release is Counts
2 and 5 of the Indictment. (Assaulting Officer B.M. with a Deadly Weapon and Assaulting,
Resisting, or Impeding Officer A.W.).

Throughout their brief and oral argument to Your Honor at defendant's first bond
hearing, the Government repeatedly comingled and referenced the actions of co-defendants, as
well as harped on irrelevant evidence in an effort to strengthen their argument for detention
against Mr. Sabol.

Defendant does not deny that he was at the U.S. Capitol on January 6, nor does he deny
that he is the person pictured with the tan jacket and teel bookbag.

Starting with Count 5, charging Mr. Sabol with Assaulting, Resisting, or Impeding
Officer A.W., defendant does not deny that he took Officer A.W.'s police baton out of his hands
at the top of the Lower Western Terrace steps.  Defendant takes issue with the Government
consistently referencing "the amount of force he was using to snatch that baton out of Officer
A.W.'s hands…" *See* Exhibit F, page 25.  Whether defendant used maximum or minimum force
in taking the baton from Officer A.W. is irrelevant to whether defendant poses a concrete,
prospective threat to public safety if he were released.  If there was no struggle between
defendant and Officer A.W. over A.W.'s baton, defendant certainly would not argue that he is
less culpable or less of a threat to public safety because he took the baton with ease.  The
Government's arguments over how much force was used by defendant, and how "Sabol fell back

down the steps", *See* Exhibit F, page 5, have no relevance to the weight of the evidence in relation to that charge. What defendant does, and more importantly does not do, after he takes Officer A.W.'s baton is relevant, and will be discussed in depth in section D.

Moving to Count 2, Assaulting Officer B.M. with a Deadly Weapon, the evidence against defendant is not strong. As cited above, Officer C.M.'s body cam clearly shows that co-defendant Whitton is the main actor that grabbed and pulled Officer B.M. down the steps. *See* Exhibit J. Defendant, at best, is shown with his left hand on Officer B.M.'s backside while co-defendant Whitton is dragging Officer B.M. down the steps. The Government relies heavily on one photo in an attempt to show defendant acting violently against Officer B.M. *See* Exhibit I. Defendant vehemently denies, nor does the evidence show, defendant striking Officer B.M. in the back of the head or neck with the baton. As stated above, the photo clearly shows defendant does NOT have the baton against Officer B.M.'s neck.

Based on the video evidence and the proffers the Government made in their brief and at defendant's initial hearing, it is readily apparent that co-defendant Peter Stager is the actor who struck Officer B.M. in the helmet multiple times with objects. In a video posted by Storyful to YouTube, co-defendant Peter Stager is clearly seen smacking his flag downwards to where Officer B.M. is laying. *See* Exhibit O, :24-:27. This is also confirmed when viewing Officer C.M.'s body cam. *See* Exhibit J. On Officer C.M.'s body cam, from 16:27:41-16:27:42, you can see co-defendant Stager smacking his flag handle down to wear Officer B.M. is laying. Further confirming defendant Sabol did not engage in any assault against Officer B.M. is seen when the video is paused at 16:27:44. Defendant Sabol is clearly standing up with his backpack facing towards Officer B.M., walking away from the steps.

While defendant concedes the evidence against him for disarming Officer A.W. is strong, the evidence attempting to prove defendant assaulted Officer B.M. with a deadly weapon is extremely weak.  The only evidence the Government submitted is a picture which shows defendant holding a baton above Officer B.M.'s upper body. The video evidence defendant highlighted above refutes the Governments allegations that defendant struck and assaulted Officer B.M.

Defendant has now provided evidence to support his position, other than his "self-serving statements that he did not intend to harm MPD officers during the siege of the U.S. Capitol". *See* Exhibit F, page 14.  For these reasons, defendant asserts that this factor is neutral as it pertains to release or detention.

### C.  HISTORY AND CHARACTERISTICS OF THE DEFENDANT, UNDER 18 U.S.C. 3142(g)(3)

Jeffrey Sabol is a fifty-one-year-old United States Citizen with an extremely de minimis criminal record.  Jeffrey's mother Vicki, father Andrew, and domestic partner Michelle love him unconditionally and want him home.

Your Honor incorrectly found this favor to weigh in favor of detention.  This factor specifically asks the Court to look at the history (past actions) and characteristics of the defendant.  While Your Honor did acknowledge the vast amount of character letters defendant submitted, Your Honor focused on defendant's actions on January 6 and the days thereafter in finding this factor favored continued detention. *See* Exhibit D, pages 47-54.

While not an exhaustive list, U.S.C. 3142(g)(3) sets out factors to be analyzed when determining detention or release.  The complete statute is as follows:

(3) the history and characteristics of the person, including-

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug our alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

As evident by subfactors (A) and (B), this factor is designed to focus on the past actions of a defendant.

Every single factor that the U.S.C. 3142(g)(3) lays out is in favor of release for Mr. Sabol.  Starting with subsection (A), defendant has very strong ties to his community.  He has

lived in Colorado for over 28 years and lived at his current address since 2012.  He also has a strong employment record, working as a Senior Geophysical Manager for Kemron for the past 6.5 years and prior to that was employed at Environmental Chemical Corporation for 13 years. Defendant has no history relating to drug or alcohol abuse and has no record concerning his appearance at court proceedings because his past criminal record is so insignificant.

Moving to subsection (B), "a court is supposed to give special consideration to whether at the time of the charged offense the defendant was on probation, parole, or other release for another offense" *See U.S. v Floyd*, 11 F.Supp. 2d39, 41 (D.D.C. 1998).  Defendant was not on probation, parole, or any other type of pre or post trial release on January 6, 2021.

The Government made ridiculous assertions that have no relevance to the history and characteristics of defendant.  In their initial brief for detention, the Government argued, "If released, the defendant would have even more opportunities to unleash violence against those in "battle" against him…". *See* Exhibit F, page 15.  That statement by the Government, while not only having no relevance to the history and characteristics of Mr. Sabol, is a prime example of an UNidentified and UNarticulable threat.  Defendant has no prior history of acts of violence, nor any involvement with any of the groups associated with organizing or participating in violence on January 6.

This argument not only contradicts defendant's history and characteristics, but also the overall meaning of the Bail Reform Act.  As U.S. Court of Appeals Judge Katsas stated in his concurrence and dissent in *Munchel* when discussing the January 6 events and the transition of power from former President Trump to President Biden, "But the transition has come and gone, and that threat has long passed." *United States v Munchel*, 2021 WL 1149196 at 6 (D.C. Circuit 2021) The Government's desperate assertions to paint Mr. Sabol as a threat or danger to the

community fall "well short of any 'identified and articulable threat.'" *Id.* At 6.  In furtherance of defendant's arguments that he does not pose a risk of danger to the community, Mr. Sabol is not alleged to have any contacts with individuals who might wish to take action against this county. *See Klein* at 11.

Your Honor primarily focused on defendant's actions on January 6, which are already analyzed and accounted for in 18 U.S.C. § 3142(g) (1), (2), and (4).  Your Honor found, "The Court agrees with the Government that Mr. Sabol's willingness to act violently during what he perceived to be a "battle" and a fight against tyranny is extremely troubling. *See* Gov't's Opp'n, ECF No. 20 at 15.  That he acted violently against law enforcement protecting the peaceful transition of power based on a belief that the 2020 Presidential Election was stolen is also very alarming. *Id.*  This recent conduct raises concerns about Mr. Sabol's character and the danger Mr. Sabol may present to the community if he were released. *See Chrestman*, 2021 WL 765662, at 14." *See* Exhibit D, page 49.

In *Klein*, the Government made similar arguments for detention under U.S.C, 3142 (g)(3), History and Characteristics of Defendant, stating that Klein's conduct on January 6, "demonstrates an utter disregard for the law and the legitimate functions of government." *Klein* at 19.  The *Klein* Court, responding to this argument by the Government, found, "In light of the D.C. Circuit's recent admonition in *Munchel*, the Court finds that this argument is best considered in the subsequent section examining whether any condition or combination of conditions would reasonably assure the safety of the community." *Klein* at 20.

On July 7, 2021, the U.S. Court of Appeals for the District of Columbia Circuit issued its opinion in *U.S. v. Hale-Cusanelli*, 2021 WL 2816245, *United States v. Hale-Cusanelli*, 21-3029, 2021 WL2816245 (D.C. Cir. July 7, 2021). The Court's opinion and review of the District

Court's decision makes clear that analysis conducted under U.S.C. 3142(g)(3) is to focus on defendant's past history.  *Id.* at 10-11.

Your Honor also did not consider that defendant in no way boasted or gloated about his actions after January 6.  There is no evidence that he is proud of what he did, nor is there evidence that he would commit these acts again if given the chance, facts that courts have analyzed when determining the history and characteristics of the defendant.  *See Klein* at 21 and *Chrestman* at 28.

In regards to dangerousness, Your Honor found this factor to weigh in favor of release, "but only by a slim margin".  *See* Exhibit D, page 54.  Based on the evidence and case law, this factor strongly favors release as to dangerousness.

In regards to risk of flight, Your Honor incorrectly found this factor favored continued detention.  While defendant does not deny nor make excuses for his actions immediately following January 6, the Government did not meet their burden of proving by a preponderance of the evidence that defendant is a flight risk and will not appear in court.  Immediately following January 6, defendant was still in full possession of all travel documentation, such as his license and passport, and was not under any conditions such as home detention or GPS monitoring. Defendant is willing to turn over his passport, driver's license, and remain on home detention with GPS monitoring.  Defendant's mother Vicki and father Andrew are also willing to co-sign defendant's bond of $100,000 each as financially responsible people.

The Government's arguments, as wells as Your Honor's decision, only focused on defendant's actions immediately after January 6.  Your Honor's decision made no reference to why the Court found defendant would not appear in court if conditions such as GPS monitoring and home detention, as well as defendant turning over all travel documentation, were imposed.

Mr. Sabol has retained new counsel and is fully committed to resolving his charges, either through a plea or trial, and moving on with his life.  He has no intentions of avoiding prosecution.

        For all of these reasons, based on the evidence and controlling case law, defendant's lack of criminal history, letters of support from friends and family, strong work history, community ties, lack of drug and alcohol abuse, his mother and father co-signing his bond, and remain on home detention with GPS monitoring, this factor clearly favor pretrial release.

### D.  NATURE AND SERIOUSNESS OF THE DANGER TO ANY PERSON OR THE COMMUNITY THAT WOULD BE POSED BY DEFENDANT'S RELEASE, UNDER 18 U.S.C. 3142(g)(4)

"Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope," as it requires the Court to engage in an "open-ended assessment of the 'seriousness' of the risk to public safety." *Cua*, 2021 WL 918255, at 5 (quoting *United States v. Taylor*, 289 F. Supp. 3d 55, 70 (D.D.C. 2018)).

As the *Foy* Court highlighted, "in considering 'the nature and seriousness of the danger to any person or the community that would be posed by Foy's release,'" 18 U.S.C. § 3142(g)(4), the court is mindful of the D.C. Circuit's caution that a future threat must be "clearly identified" for pretrial detention to be justified, particularly given that "the specific circumstances of January 6 have passed." (*See U.S. v. Michael Joseph Foy*, Defendant., 21-CR-00108 (TSC), 2021 WL 2778559, at p. 5 (D.D.C. July 2, 2021) (citing *Munchel*, 991 F.3d at 1283-84).  Defendant Michael Foy, after initialing being denied bond, was released from custody and placed on home detention on July 2 by Judge Chutkan.  Defendant Foy's actions on January 6, which can be seen on video, show Foy swinging a wooden hockey stick at U.S. Capitol police at the top of the Western Tunnel steps. *See* Exhibit O, :05-:10.  These actions were much more violent and aggressive than anything Jeffrey Sabol did on January 6.  Michael Foy, like Jeffrey Sabol, had no criminal record, did not boast or brag about his actions after they happened, and did not have any ties to extremist groups.

Most recently, on August 9, 2021, the United States Court of Appeals for the District of Columbia reversed the District Court's decision to detain January 6 defendant George Pierre Tanios. *See* Exhibit P, *United States of America v. George Pierre Tanios*, 1:21-cr-00222-TFH-2.

The Court stated, "The record reflects that Tanios has no past felony convictions, no ties to any extremist organizations, and no post-January 6 criminal behavior that would otherwise show him to pose a danger to the community within the meaning of the Bail Reform Act." *Id.*  Defendant Tanios is alleged to have carried a chemical spray in his bookbag at the Capitol on January 6. Tanios and his co-defendant Khater are alleged to have discussed when to spray the chemical substance, leading to co-defendant Khater retrieving the substance from Tanios bookbag and spraying Capitol Police Officers. *See* Exhibit Q, *Tanios* Indictment.  The allegations against Tanios involved prior planning and arming himself with an offensive weapon, unlike Sabol.

The Government failed to identify any concrete, prospective, or articulable threat to public safety that would warrant Mr. Sabol's pretrial detention.  Much of the government's arguments for detention based on dangerousness focus on the much more violent allegations against co-defendants, as well as distorting the actions of Mr. Sabol on January 6.

The Government consistently referred to defendant and his actions on January 6 as methodical, premeated, as well as referring to defendant as "savvy", in an effort to portray Mr. Sabol as a criminal mastermind who will inflict violence into his community the moment he is released from detention. *See* Exhibit F.  As stated above, defendant's criminal history is de minimis at best, including zero felony convictions, clearly portraying that his actions on January 6 were an aberration in his life.

The Merriam-Webster Dictionary defines methodical, premeated, and savvy as follows:

1. Methodical- arranged, characterized by, or performed with method or order; habitually proceeding according to method, systematic;

2. Premeated- characterized by full conscious willful intent and a measure of forethought and planning;

3. Savvy- having or showing perception, comprehension, or shrewdness especially in practical matters.

The Government's constant references to defendant being methodical and premediated on January 6 could not be further from the truth. The Government's entire case is based on a 20 second video clip where defendant disarms Officer A.W. of his baton. Defendant denies using the baton to threaten, injure, or inflict violence onto any other person or U.S. Capitol Officer, nor does the evidence the Government produced show defendant using the baton to threaten, injure, or inflict violence.

The Government's evidence, in no way, shape, or form, shows defendant acting methodical or premediated on January 6. The Government's allegation of defendant being "savvy" is clearly erroneous.

The Government heavily relied on the image of defendant holding the baton above Officer B.M. *See* Exhibit I. Defendant denies hitting Officer B.M. with the baton and has now presented the Court with evidence that adds credence to his denial of hitting Officer B.M. with the baton. *See* Exhibit J, C.M.'s Body Cam and *See* Exhibit K, Tunnel Camera. Additionally, since defendant's initial bond hearing, the Government has not produced any more evidence in support of their allegation that defendant assaulted Officer B.M.

The Government consistently intermingled the actions of co-defendants, specifically Whitton and Stager, in their argument to convince Your Honor defendant posed a danger if he were released pretrial. The violent actions of Whitton and Stager are consistently mentioned and argued to Your Honor by the Government as if they were the actions of Mr. Sabol, or that Mr. Sabol conspired with these individuals and planned this attack on the Lower Western Terrace steps. At defendant's initial bond hearing, the Government references the actions of co-

defendants six times. *See* Exhibit M, pages 19, 21, 28, 32, 33, 34. The only reason the Government consistently brought up the violent actions of co-defendants to Your Honor's attention is to portray defendant as acting in concert with them. Mr. Sabol did not know any of his co-defendants prior to coming to Washington D.C., did not conspire with any of them on January 6, nor did he in any way conspire with any of them prior to January 6.

Defendant again brings to Your Honor's attention the videos of him waiving off any violence. *See* Exhibits G and H. These actions by defendant, although prior to the events on the Lower Western Terrace steps, clearly show that defendant did not come to the U.S. Capitol with the intent to harm or injure Officers.

While defendant's actions of waving off any violence may not alleviate him of being charged or convicted of some or all of the charges he is facing, his actions certainly have an effect on whether defendant can be released from detention pretrial. Both exhibits defendant submitted to Your Honor clearly show him attempting to waive off any violence. *See* Exhibits G and H. In fact, in one of the videos of defendant waiving his hands, not only is defendant waiving his hands to stop any violence, but is also within feet of a Capitol police officer. *See* Exhibit H, 1:14-1:25. These actions further contradict the Government's contentions that defendant was premediated and methodical on January 6.

Again, these actions do not alleviate defendant for any conduct that happened after this incident, specifically the events on the Lower Western Terrace steps. However, these actions completely disprove the Government's position that if released, defendant would unleash violence against those in battle against him and be a continued threat to the community. As the Government correctly pointed out in their initial brief, defendant traveled to Washington D.C. in December 2020 to attend a political rally for then President Donald Trump. *See* Exhibit F, page

3.  The rally was attended by thousands of protesters, included members of the Proud Boys, involved violence, stabbings, and resulted in multiple victims being hospitalized. *See* Exhibit R. Defendant was not involved in any type of violence on this day nor was he charged with any crimes.

As discussed above under U.S.C. 18 3142 (g)(1)., Sub-Factor 3, further evidence that defendant does not present an identified and articulable threat to public safety is found when viewing Government camera footage from the Lower Western Terrace steps. *See* Exhibit K. Immediately following defendant's actions at the top of the steps, defendant can be seen carrying what appears to be an injured protester away from the mob.  Defendant is assisted by an unknown individual. *See* Exhibit K, 13:20-14:20.  This is also confirmed when viewing footage defendant found from the bottom of the steps. *See* Exhibit L, 23:02-24:37.  Seconds after defendant disarmed Officer A.W., he was not in possession of the baton and was helping an injured individual.  This incident, unlike defendant waving his hands to stop any violence, happens immediately *after* the incident at the top of the Lower Western Terrace steps.  This is further proof that the 20 second incident involving Officer A.W. and B.M. was an aberration in defendant's life and he is no way a danger to any person or community.

Finally, the Government continued their assault and misrepresentation of facts regarding defendant's actions and alleged that defendant's actions on January 6 led to the death of another individual present. *See* Exhibit F, page 13.  Your Honor cited to the Government's allegations of defendant's conduct being responsible for the death of January 6 participant in Your decision, under Sections (1) and (4) of 18 U.S.C. § 3142(g). *See* Exhibit D, pages 26, 56, and 57-58. Although no name was ever mentioned, defendant assumes the Government is referencing the

death of Rosanne Boyland, 34, who died at the top of the Lower Western Terrace steps on January 6, 2021.

The Government did not, and has not, provided one piece of evidence that defendant's actions led to the death of Ms. Boyland. The name of the deceased was never mentioned. The time of death or cause of death was never mentioned. The location of the death was never mentioned. The Government had no boundaries in their attempt to keep defendant locked up.

Defendant now presents Your Honor with evidence that not only completely absolves defendant from any involvement in the death of Ms. Boyland, but gives this Court some insight into the events surrounding her death. When viewing C.M.'s bodycam, Ms. Boyland can be seen laying on the top of the Lower Western Terrace steps. *See* Exhibit J, 16:27:37. Further along in the video, Ms. Boyland can be seen laying on the top of the steps, appearing to be unconsciousness, directly in front of a U.S. Capitol Police Officer. *See* Exhibit J, 16:27:52-16:27:57. The Government's allegations that defendant Sabol's conduct directly interfered with the ability of Capitol police to tender aid to Ms. Boyland is completely contradicted by this video.

After an analysis of all four 18 U.S.C. § 3142(g) factors, factors (1), (3), and (4) weigh in favor of release, and factor (2) is neutral. For these reasons, the Government has not proved by clear and convincing evidence that defendant poses an identified and articulable threat to the community or another person, and has not proved by a preponderance of the evidence that defendant is a flight risk. As Your Honor was also aware at defendant's initial bond hearing, Pre-Trial Services recommended that defendant be released on an unsecured bond. *See* Exhibit S. Defendant, without delay, must be released from pretrial detention.

If released, defendant would be requesting to stay with his mother and father in the town of Waterville, Oneida county, NY.  Undersigned counsel has personally spoken with Bill Parker, Sr., U.S. probation officer for the Northern District of New York.  Mr. Parker's office covers Oneida county, NY.  Mr. Parker relayed that if defendant were to be released, the District of Columbia probation office would put in a request to his office to supervise defendant.  Mr. Parker informed undersigned counsel he would accept this request and ensure any conditions Your Honor placed on defendant were enforced, such as GPS monitoring, home detention, and checking the home for weapons.

2. **DEFENDANT'S TREATMENT IN THE DC JAIL IS A VIOLATION OF HIS HUMAN RIGHTS AND A VIOLATION OF HIS 6TH AMENDMENT RIGHT TO ASSISTANCE OF COUNSEL AND 8TH AMENDMENT RIGHT TO NOT BE SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT**

In *U.S. v. Salerno*, 481 U.S. 739 (1987), the Court ruled that pretrial detention is a regulatory measure, rather than a punitive measure. *Id.* at 758.  Since being transferred and detained in DC Jail, defendant's human rights, 6th Amendment Right to assistance of counsel, and 8th Amendment Right to not be subjected to cruel and unusual punishment have been consistently violated, and the regulatory scheme of pretrial detention has clearly become one of punitive measures.

Defendant has been subjected to solitary confinement, unable to view his discovery, receive mail within a reasonable amount of time, or have an opportunity to speak with his attorney and have a meaningful discussion about his case and the Government's evidence.

From March 19- March 26, defendant was placed in solitary confinement for 24 hours a day. From March 27- April 30, defendant was locked in his cell for 23 hours a day.  He was given 1 hour to shower and attempt to make phone calls.  Defendant relayed to undersigned counsel that all January 6 defendants were again placed in solitary confinement from June 14-19 without reason.  From the date defendant entered the DC jail until June 12, defendant was not given the option to get a haircut or shave.  After June 12, he is only eligible for a haircut or shower if he received the Covid-19 vaccine.

Defendant's prior counsel relayed to undersigned counsel that he sent a discovery package to defendant in the DC jail on June 18.  To date, defendant has not received any discovery.  Both prior counsel and undersigned counsel reached out to the DC jail regarding this issue.

Undersigned counsel received correspondence from the DC jail on July 16 advising that defendant's discovery had still not arrived at the jail.

Since undersigned counsel has been retained, I have requested multiple video conferences per week.  On the week of June 28- July 1, defendant and I were afforded two, 1 hour video conferences.  On the week of July 5- July 9, defendant and I were afforded one, 1 hour video conference.  On the week July 12-16, defendant and I were afforded one, 1 hour video conference.  On the week of August 2-6, defendant and I were afforded one, 1 hour video conference.  On Wednesday, June 30, 2021, during undersigned counsel's second video conference with defendant, 10 weeks after defendant's initial bond hearing before Your Honor, and more than 23 weeks after being arrested, through screen sharing with counsel, defendant was finally able to view some of the discovery evidence the Government provided.

The Government continues to provide hours of video footage in discovery.  The Government most recently sent defense counsel discovery packets on July 12, July 16, and August 11, all containing video footage and paper discovery.  At this rate, it will take years for defendant just to watch and review discovery, let alone have substantive conversations with counsel to assist in his defense.  The Government itself has admitted the January 6 investigation is, "the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence." Gov't's Mem. Regarding Status of Disc. ("Gov't's *Bledsoe* Discovery Mem.") at 2, *United States v. Bledsoe*, Crim. No. 21-204 (BAH) (D.D.C. July 12, 2021)

Defendant has major issues receiving letters from family and counsel.  He received a letter from his mother on June 15 that was postmarked April 22.  Defendant has relayed to undersigned counsel that this issue has happened to many January 6 defendants incarcerated in the DC jail.  Legal mail has also been opened prior to defendant receiving it.  Undersigned

counsel's retainer, which was mailed to defendant via certified mail, clearly labeled as legal mail, appears to have coffee stains on it and the header and footer of the retainer were removed. *See* Exhibit T.

As recently as July 17, 2021, defendant relayed to undersigned counsel that all inmates' tablets were taken away for "security reasons". The "security reasons" were a non-violent, First Amendment protected protest that occurred outside the jail.[2]

United States lawmakers have voiced their concerns over treatment of detained January 6 defendants. Senators Elizabeth Warren (D-Mass.) and Dick Durbin (D-Ill.) both gave statements about the treatment January 6 defendants are being subjected to, specifically solitary confinement. *See* Exhibit U. "Solitary confinement is a form of punishment that is cruel and psychologically damaging," Warren said in an interview. "And we're talking about people who haven't been convicted of anything yet." *Id.*

The 8th Amendment to the U.S. Constitution explicitly states that cruel and unusual punishment shall not be inflicted. U.S. Const. amend. VIII. The 8th Amendment "was directed, not only against punishments which inflict torture, 'but against all punishments which, by their excessive length or severity, are greatly disproportioned to the offense charged.'" *Weems v. United States*, 217 U.S. 349, 371 (1910). Solitary confinement for the charges defendant is currently facing is unmistakably excessive severity and punishment disproportionate to the crimes charged. Until defendant either enters a guilty plea or is convicted at trial, he is innocent. Even if every allegation the U.S. Government accuses defendant of is true, placing defendant in solitary confinement, especially for extended periods of time without reason, clearly represents that his pretrial detention has turned from regulatory to punitive.

---

[2] A video of the protest can be found at: https://www.youtube.com/watch?v=BkgZ9YaJfKo&feature=youtu.be

Defendant's inhumane treatment, as well as his 6th and 8th Amendment rights being violated, demand that he be released from pretrial detention and afforded the ability to assist in his own defense.

3.  **THE UNITED STATES GOVERNMENT HAS A PRESUMPTION AGAINST PRE-TRIAL DETENTION AND DEFENDANT IS BEING DENIED EQUAL PROTECTION UNDER THE LAW**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *See Salerno*, 481 U.S. at 755.  Pretrial detention is the carefully limited exception because prior to any admission of guilt or conviction at trial, all defendants are innocent.  This is the reason that 18 U.S.C. § 3142(g)(2), the weight of the evidence, "is the least important of the factors, and the bail statute neither requires nor permits a pretrial determination of guilt. *United States v Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The Circuit Court in *Munchell*, while stating that those who participated in the January 6 incident could rightly be subject to detention to safeguard the community, went further, stating, "But we have a grave constitutional obligation to ensure that the facts and circumstances of each case warrant this exceptional treatment." *Munchell* at 20.

The facts and circumstances of Jeffrey Sabol and his case clearly show the government has not met its burden for pretrial detention.  The Government consistently argued that defendant is responsible for the violent actions of co-defendants, as well as made arguments that defendant is in some way responsible for the death of a January 6 protester, without providing any evidence to support their claim.  Defendant's actions, charges, and past history do not warrant the exceptional treatment *Salerno* talks about.

The events that took place at the Capitol on January 6 are unique to say the least.  It is the only time in our nation's history where the sitting President claimed the election to be "stolen", and held a rally outside the U.S. Capitol the day Congress was set to certify the electoral college. The only time in defendant's life where he has incurred any violent charges were on January 6,

2021.  As previously cited, the transition of power has come and gone.  There is no future threat

of disrupting the election or transfer or power.  *Munchell* at 6.  Now that the transition of power

has happened, there is no way the Government can establish by clear and convincing evidence

that defendant remains a danger to the community or poses an identified or articulable threat.

Further proof that defendant's actions do not warrant pretrial detention is found when

scrutinizing political protests and riots in recent history, as well as the position the U.S.

Government took regarding those incidents.

On January 20, 2017, during former President Trump's inauguration, right here in

Washington D.C., a riot occurred where damage occurred to numerous public and private

properties.  During this riot, six police officers were injured, three of whom were hit in the head

with flying objects.  A fire also broke out during the protest.  *See* Exhibit V.  Two Hundred and

Thirty Four (234) protesters were arrested.  By July 2018, 168 of the protesters had their charges

dismissed by the Department of Justice.  *See* Exhibit W.

During the summer of 2020, protests and riots erupted all around the country following the

death of George Floyd.  Some of the most deadly and violent protests occurred in Portland,

Oregon.  As of May 2021, 58 of the 97 suspects arrested in Portland, Oregon had their charges

dismissed by Department of Justice.  The riots in Portland lasted for over 100 days and were

filled with violence and destruction of the city.  *See* Exhibit X.

Additionally, defendant's actions pale in comparison to protestors and rioters around the

country who have been detained on federal charges.  Specifically, federal defendant Malik

Muhammad was recently Indicted in federal court in Oregon under case number 3:21-cr-00205-

HZ.  *See* Exhibit Y.  Muhammad was Indicted on two counts of Civil Disorder, two counts of

Using an Explosive to Commit a Felony, and two counts of Unlawful Possession of a Destructive

Device.  These charges are in addition to a 28 count Indictment in Multnomah County Circuit Court, including attempted aggravated murder, first degree attempted murder, first degree criminal mischief, riot, and unlawfully possessing a firearm.  *See* Exhibit Z.  Defendant Muhammad is the prime example of a defendant who warrants the exceptional treatment of pretrial detention.

The treatment and prosecution by the U.S. Government to past rioters and protesters is a complete contradiction to the current prosecution of January 6 defendants.  Defendant's Constitutional right to Equal Protection under the law has been violated and continues to be violated every day that he spends incarcerated pretrial.

The Government's evidence unquestionably lacks proof that warrant defendant to be the carefully limited exception to pretrial release, and the Government's prosecution of defendant's case indisputably shows a violation of defendant's right to Equal Protection under the law. These violations of defendant's rights demand he be released from detention pretrial.

## 4.  IF DEFENDANT IS NOT RELEASED PRETRIAL, HE MUST BE ALLOWED ACCESS TO A LAPTOP THAT ALLOWS HIM TO VIEW ALL HIS DISCOVERY

Every defendant has the right to review discovery in their case, especially January 6 defendants, whose cases are part of the largest criminal investigation and prosecution in U.S. history.

Defendant is currently only viewing discovery when he has video conferences with counsel through screen sharing.  The current process of defendant viewing his discovery through screen share, combined with the additional discovery the Government continues to provide, (undersigned counsel just received a new discovery packet on August 11, 2021), and Chief Judge Howell's recent decision in *Re Capitol Breach Grand Jury Investigations Within the District of Columbia*, Grand Jury Action No. 21-20, denying the Government's motion to hire Deloitte to expediate the review and processing of all evidence related to the January 6 cases, demands immediate change occur that will allow defendant to view his discovery.

This issue would be immediately solved if defendants within motion for pretrial release is granted.  If Your Honor denies defendant's motion for pretrial release, defendant must be afforded access to a secured laptop in the DC jail.

Federal Courts have granted the use of laptops to pretrial detainees in the past.  In *United States v. Helbrans,* 7:19cr497 (NSR), a Southern District of New York case, an application was made for the defendant to have access to a laptop and internet so the defendant may prepare his defense, which was granted. (*See* Exhibit AA).  In *United States v. Reid, et al, including Brandon Nieves*, a Southern District of New York case, an application was made for the defendant to have access to a laptop to permit clients to review large amounts of discovery in the case.  Judge

Halpern granted the application.  (*See* Exhibit BB).  In *United States v. Washington*, 20 CR 30015, a Central District of Illinois case, an application made for access to a laptop was granted. (*See* Exhibit CC).

 The unique circumstances of defendant's case dictate that if he remains detained pending trial, he be afforded the opportunity to access a laptop to view his discovery and assist in his own defense.

## V.   <u>CONCLUSION</u>

**WHEREFORE,** for the foregoing reasons, and all others which may appear in defendant's reply brief, at oral argument on this matter, and any others this Court deems just and proper, defendant respectfully requests that he be released on personal recognizance.

**FURTHERMORE,** if that request is denied, defendant requests as an alternative, that he be released on Third Party Custody and placed into the High Intensive Supervision Program of the Pretrial Services Agency conditioned on reasonable conditions, including, but not limited to, electronic monitoring and curfew.

**FINALLY,** if all forms of pre-trial release are denied, undersigned counsel requests that this Court issue an Order granting defendant the right to possess in his cell at the D.C. jail, or any other place he is incarcerated, a laptop that affords him the ability to review all paper and video discovery the Government has provided.

Dated: August 23, 2021                                          Respectfully submitted,

s/Alex Cirocco
Alex Cirocco, Esq.
Attorney for Jeffrey Sabol
DC Bar ID # NJ 037
Law Offices of Alex Cirocco, LLC
600 Getty Avenue, Suite 305
Clifton, NJ 07011
973-327-9995
alex@ciroccolaw.com