# Koffsky & Felsen, LLC

1150 Bedford Street
Stamford, Connecticut 06905
Tel. (203) 327-1500
Fax. (203) 327-7660
bkoffsky@snet.net

Via ECF

Case No. 1:21-cr-35-EGS

March 4, 2021

Hon. Judge Nelson S. Roman
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, N.Y. 10601

**Re:** **United States v. Helbrans**
**7:19cr497 (NSR)**

Dear Judge Roman:

I represent the pro se defendant, Nachman Helbrans, in the above referenced matter as stand-by counsel. Pro se defendant Nachman Helbrans has requested that I file the attached *Motion For Laptop Computer With Relevant Internet Access, A Copier And Printer For Defense Preparation* for the Court's consideration.

Respectfully submitted,

/s/ Bruce D. Koffsky
Bruce D. Koffsky

BDK/me
cc:    All Counsel of Record

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

**UNITED STATES OF AMERICA,**                    **INDICTMENT NO.**
                                                 **7:19-cr-497 (NSR)**

-against-

                                                 **Oral Argument Requested**

**NACHMAN HELBRANS, ET. AL.**
                    **Defendants.**

-------------------------------------------------------x

**MOTION BY NACHMAN HELBRANS, Pro Se, FOR LAPTOP COMPUTER**
**WITH RELEVANT INTERNET ACCESS, A COPIER AND PRINTER FOR**
**DEFENSE PREPARATION**

Back on July 8, 2019, Nachman Helbrans asked for self-representation in an open court. Your Honor told him explicitly that each and every motion he makes, even on the pro se matter, would have to be in writing. We fully agree with your Honor on this matter; that makes sense. Indeed, if a motion is not in writing, it could be extensively long, ambiguous, vague and confusing. Moreover, it does not give sufficient time and opportunity for the other parties to know on what exactly to respond. Additionally, it deprives the court of the opportunity to make the right decisions according to what is accurately requested and discussed by the parties. Let alone the famous issue of "reserved for appeal"; when there is no writing, it would be challenging, and at sometimes impossible, to determine what exactly was reserved for an appeal or alternatively waived by the parties. Clarifying unwritten issues by extending the oral arguments may sometimes confuse even more and complicate the matter even further. All the above are true even when all the arguers are native and fluent English speakers, let alone in a case, as in ours, where many of the arguers are nonnative English speakers. As such, we must agree with this court's prior advice and we must undertake that each and every substantial motion we will be making from now on will be in writing.

Oral arguments should be reversed for issues already well discussed in a prior writing, not to begin with.

The Fifth Amendment grants that no one shall be "deprived of life, liberty or property without due process of law." Due process includes a fair trial, that the person should have the opportunity to respond to the allegations made against him, and be given the opportunity to comply with his duty to present his answer before the court and jury, pretrial as well during the trial and post-trial. A fair trial means that both sides, the prosecution and the defense, have fairly the same chance to present their arguments and counter-arguments before the court. If one party gets an opportunity that the other party cannot compete with, it is obviously not fair. At this stage, for reasons self-explained by the essence of this motion, it is impossible for us to present a comprehensive memorandum of law regarding this matter of fair trial; therefore, we will simply leave this matter for common sense.

Now to the relevance to our situation: as we explained to your Honor in our last writing, I grew up and was educated in the Orthodox Hasidic Jewish community, and my primary language is Yiddish and Hebrew. Although I understand, read and communicate in English fairly well; still I cannot hand-write in English to such a level as drafting a substantial letter; however, I have regularly used a computer as part of my prior work experience, as well for important private matters, and as such I am able to write in English when assisted by a computer and relevant computer programs.

Furthermore, in today's world and with the current technology, even an educated and experienced lawyer could not draft and finalize a motion just by his first handwriting. In fact, I doubt if, in the last decade, any substantial motion prepared by an attorney could have been completed without a computer.

To particularize the matter, in my case, a computer is necessary for my defense for multiple reasons.

First, as I am use to computer writing since an early age, I can hardly finalize a substantial document in handwriting, should it even be in Yiddish or Hebrew, unless the document is finalized along with my first draft; otherwise, it would only result in a complicated hard-to-read document, and will probably miss the point. Let alone the fact that for safety reasons, pens provided here at the jail are special short, soft and small which barely serve to write a short letter to family or a friend, but by any means are not suitable to write complicated documents, letters or motions.

Second, since English is not my first language, I heavily rely on the computer to draft, edit and correct my motions by utilizing editing programs that I have used in the past to form any substantial document in English. Those computer programs assist, namely in spelling, grammar, synonyms, suggestions and translations. Generally, those programs require an internet connection to function properly. To exemplify the first and second reasoning above, I will share my and my co-defendants' past experience with document preparation in jail. We eagerly tried for over two years in jail to overcome the hardships and befriend with the poor pen and paper provided here. In fact, on the first day that we were incarcerated, some of our lawyers told us that we should write down the facts of our case and our arguments even in Hebrew or Yiddish, and they will arrange the translations to make use of them. We tried and then again tried, just to be proven that there is simply no way that any useful document, even six pages long, could be completed in a timely fashion in this manner.

I will give one particular example to your Honor. Just after I was denied bail in May 2020, my lawyer discussed with me the matter and the government's approach; I conclude that the first step should be to try to inform the government itself of the true story and background. I, together

with defendant Mayer Rosner, jointly drafted a comprehensive letter to the government. For convenience reason, it was formally addressed to then-attorney general Mr. Geoffrey Berman; however, in fact, we intended to present the letter to the entire prosecution team on this case, as well as to use it as an attachment to some of our motions. The letter explains our view on the case, what we believe would give the reader enough knowledge of the facts and truth about the allegations, the Teller children and our community. We were, and we are still convinced that if the prosecution had been receiving the letter, they would already have taken action to remedy the situation. However, since we had no computer access, we had no choice but to draft the letter in Hebrew. Despite working on it day and night, it took us three months to handwrite the letter due to the prison conditions. Finally, we sent it out for copy typing, but it took another seven months to typeset it due to the handwritten numerous additions and amendments. The translation will probably take at least six weeks. Calculating the time from writing to finalizing the translation should bring us to over a year just for one simple (albeit a relatively long) letter. Suppose we would need to write substantial motions and affidavits in such a manner. In that case, we will spend decades before they will be completed, or we will be forced to waive altogether our right to present any pretrial motions, not because of a strategic move, but rather simply to avoid spending behind bars ten or fifteen times more than any possible sentence we might get if somehow unjustly found guilty at trial.

Third, in this case, the proper knowledge and understanding of the law, both substantive law and procedural law, are vital for defense preparation. In this regard, district courts of various circuits, including the Second Circuit, clarified in various rulings that it is the duty of an attorney or a pro se defendant to study and verify every law he quotes to assure that this law is relevant to the case, complete and still considered good law and not overruled. In the same token, they

clarified that it would be against the duty of an attorney or a pro se defendant to quote any rule, case or law without study and verification of the jurisprudence developed around it.

Before the computer times, judges and lawyers always needed access to a comprehensive library of hundreds if not thousands of law books, in addition to a full correspondence of opinions and analysis by judges, professors and scholars. No lawyer could sit in his bureau (or his basement) and draft motions without them. This practice was always around since the establishment of US courts; even in common law times it never functioned differently.

As happened with most aspects of our life, when technology developed, we got dependent on it, since the previous pre-technology options disappeared or became extremely rare; and once so, it became virtually impossible to do the same vital task without the help of technology. One example, try to make banking, transactions and payments, sales and purchases, all without the use of technology. The same is true with the law field; since law libraries got computerized, especially by the two programs WestLaw and LexisNexis, it became almost impossible to draft any legal motion without using one of those (or similar) programs, especially when it comes to complicated motions which require so much knowledge in law, to distinguish so many cases in so many extensive issues, including constitutional issues, federal and state, criminal and civil, administrative and family law, international and uniform acts, all related to this trial.

There cannot be a fair trial if from one side there are the native English speaking prosecutors who have access to the best computers, desktops and laptops, and the best programs available, either to read the law and to draft motions, take notes and whatsoever, while on the other side there are pro se incarcerated defendants, secondary in English, who are not granted even a normal pen and an ordinary notebook, let alone that they cannot cope with writing even one line

in English handwriting without significant spelling and grammar errors, as long they are not granted access to a computer and relevant internet resources.

In the prison there is a so-called "law library", however with all the time-restrictions and conditions surrounding the library, it cannot be considered as a normal library that could enable one to prepare legal motions, but rather can be considered some sort of entertainment for inmates. Take into account the fact that there are just two slow computers for forty inmates who have to share the one or two hours available. Moreover, only published cases are available there, and for reading only. Let alone that most of the times when we arrive someone else already occupies or wants to occupy them, and if we got lucky to use it, it is almost useless due to the slowness of the computer and the system crashing when showing results of a search done, besides the poorness of the program installed there who does not allow to query a useful search. Moreover, even after finding some case, we have to copy write it by hand, since we usually have to wait two weeks to get it printed, and when finally printed, there is no way to cooperate the relevant content them into the motion.

The two typewriters available in the "library" are of the same faith. On a good chance they have ink, but if they do have ink, they lack paper; and then we have to fill out a complete form and beg around the clock to receive some paper. However, let us not forget that usually, one of them or both are out of order.

During the last 12 months, the law library was almost completely shut down; most of the time, the library was entirely closed. When it is luckily opened, it has so many restrictions that make it impossible to get some work done there. As of today, the library keeps opening and closing without too much prior notice.

Fourth, the government has produced voluminous discovery. We have much to say (actually to write) about the content of the discovery we received and much more about the content of the discovery not received yet. However, the government's conduct or misconduct is out of the scope of this motion. What is important here, that we have little use from the discovery received. While most of the days we cannot access the computer designated for discovery review, even we get to there, most of the files could not be opened due to many essential programs missing there, let alone the fact that the computer operating system software continually crashes.

There were extensive efforts from our side and from our counsels to partly solve the issue. We will not deny that it is possible that the government also tried to solve this problem in particular. However, to date, the problem remained unsolved. For a short time, we were provided a relatively new laptop on which many of the previous inaccessible files were accessible. However, this new laptop went somehow to another jail section and all the previous problems remain unsolved. In any case, we never had a chance to incorporate the discovery's content into our motion, nor were we able to type or translate their content in a reliable manner.

Fifth, we need to contact and have access to many persons and/or institutions in a timely manner and on a writing basis and receive a reply from them in a timely manner and on a writing basis. To name a few, we need access in a timely manner to the docket, the court clerk, our standby counsels, the government, as well as many witnesses and potential witnesses, including various experts. To contact them all and to receive a timely reply via the prison phone system or the prison mail system, will render all contacts meaningless and useless in the context of pretrial preparation. We will not waste the court's time to elaborate on this matter since all our counsels always complained about that and always suggested a contact on a writing basis, which was never available to us as mentioned above.

Given all the above, we cannot exercise our Fifth Amendment right of due process without given reasonable access to computers, a copier, a printer, and relevant internet resources, along with the most essential office/paper supplies. The computer will be used only for discovery, legal research, drafting of motions and other legal paperwork, and maintaining contact with those assisting as in preparing the in 2021, as none of those mentioned above tasks is possible to carry out without a relevant use of the internet.

Now in a direct reference to the government: dear prosecutors, there is no need to automatically object to each and every request that we put forward. The government is obligated for truth-seeking, not for overzealous prosecution. Objecting to our legitimate request for vital means of defense is not in line with the truth-seeking mission the government is obligated for. Let us say that all our pretrial motions will at the end of the day be resolved in favor of the government, still, to prevent it from being written in the first place is not what the government is entrusted and paid for; rather, they are entrusted and paid to secure a fair trial that includes a fair opportunity to raise any sincere issue of defense, pretrial, during the trial and post-trial.

In the famous case of Brady v. Maryland, 373 US 83 - Supreme Court 1963, the Supreme Court reminded the prosecutor and the public of the true mission. In their words: "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts"." In footnote 2, the Supreme Court quoted the strong words of Judge Simon E. Sobeloff: "The Solicitor General is not a neutral, he is an advocate; but an advocate for a client whose business is not merely to prevail in the instant case. My client's chief business is not to achieve victory but to establish justice. We are constantly

reminded of the now classic words penned by one of my illustrious predecessors, Frederick William Lehmann, that the Government wins its point when justice is done in its courts."

In light of that, we expect the government to fully agree with our legitimate request, especially that the computer and the relevant internet resources will be used to establish an honest communication with the government that will solve many of the future challenges of this case with minimal wasting of judicial resources.

We appeal to the government not to fool us around with academic questions if there is an absolute constitutional right for a computer and internet for incarcerated pro se defendants. Everyone knows that the constitution was written before the computer and internet ever existed, so it could not exist a computer-related absolute constitutional right. However, the absolute right we are talking about is due process and fair trial. The computer and the internet are only means mandatory to achieve those goals. We further beg the government not to fool the court and us around with manufactured security concerns, since the computer and the internet and all activities can and probably be recorded and even monitored, so logically it should not be any security concern more than the regular prison phone system or ingoing and ongoing mail. In fact, many federal, state and county jails and prisons already have on some way or another an ingoing and outgoing email system for the prisoners, although that our request is somehow unique because our case and situation are unique as well.

The government shall also take into account that without a computer, we are de facto prevented from any possibility to take part in a legal discussion about the very same subject, so it will be unfair practice to begin with.

Finally, we will cite some cases that we noticed that computers and/or internet were specially allowed in jail when consideration about self-representation so required. In United States

v. Buswell, No. 11-CR-198-01 (W.D. La. January 18, 2013), the court found the defendant's Fifth Amendment right of due process was not being violated because "Buswell can utilize a laptop to read documents that are on DVD/CD, he can keep documents in his cell and internet access is available on request. There was no evidence to the contrary. ...the facility where the defendant is housed will accommodate him by providing access to a conference room, a laptop computer that can read CD's (which he may even be allowed to keep in his cell with the permission of the warden), access to a printer and/or copier and access to his attorneys at all times other than during lockdown periods when meals are served twice a day...

The evidence adduced at the detention hearing is as set forth above-the defendant can have access to his attorneys at any time other than in two mandatory lockdown periods when meals are served, he can have access to a conference room to review documents with his attorneys, he can have access to a computer to review documents on CD/DVD, or he can have the documents themselves, as well as access to a printer or copier and the internet. He can telephone his attorneys and those calls, while recorded as part of normal security policy, are not monitored by the government and there is no evidence to the contrary. The only meaningful difference between this type of access to counsel compared with that of home incarceration is the location where conferences take place." Likewise in United States v. Dupree, 833 F. Supp. 2d 241 (E.D.N.Y. 2011) the court rejected Dupree's bail motion that his pretrial release was necessary to prepare his defense as the court relied on the fact that "MDC will arrange for the following to be provided to Dupree at MDC so that he can adequately prepare for and participate in his defense with counsel: (1) access to an attorneys' visiting room with a computer that can read DVDs from 9:00 a.m. to 3:30 p.m., with or without counsel, beginning on November 7, 2011 and until the start of trial on December 5, 2011; (2) Dupree's access to the aforementioned attorneys' visiting room can be

extended from 3:30 p.m. to 9:30 p.m., provided Dupree is with counsel during this time and twenty-four hour notice is given to MDC for each day an extension is requested; (3) access to counsel and agents of his counsel in an attorneys' visiting room with a computer that can read DVDs following each trial day until 9:30 p.m., provided that twenty-four hour notice is provided to MDC for each day such access is requested; and (4) access to a locked storage area for the storage of documents so that Dupree has additional space other than his detention cell to store documents... Dupree will have 12.5 hours of daily access to a computer that can read DVDs and be used to review documents." Similarly in U.S. v. Hazelwood, Case No.: 1:10 CR 150 (N.D. Ohio Feb. 16, 2011), "The court determined at a hearing held on January 12, 2011, that the Northeast Ohio Corrections Center ("NEOCC") must allow Mr. Hazelwood to use a new computer which he has been provided to review documents. An employee of the Center confirmed at the hearing that there are no special IT requirements for his doing so. Further, NEOCC has made substantial accommodations for Mr. Hazelwood well beyond those accorded most detainees based on the complex nature of this case. Among other things, he is allowed to possess more boxes of information than other inmates, and one of five video conferencing rooms is substantially devoted to his use."

It is worth noting that all three cases quoted above were not pro se and were represented by advocate counsel, and the special computer and/or internet access allowance were all related to a very limited issue of pretrial discovery; our case is much stronger. In the case United States v. Waddell, 151 F. Supp. 3d 1317 (S.D. Ga. 2015), the pro se defendant was allowed up the sixteen hours of internet connection, aberrantly for a limited discovery issue. The defendant was denied additional time beyond those sixteen hours only because a sincere defense cause was not provided.

In our case, the cause of motion drafting, legal research, communicating with the government, verifying the laws and rules etc., all are self-evidently required for the defense.

Therefore, we see it reasonable and legitimate to ask the Honorable court to order that we get laptop computers with relevant internet access, a copier and printer. Those should be available for all-day use, either in our cell or in a designated place where we can reach during all the hours of the day besides lockdown times. Those computers should not be monitored by the prosecution, rather they could be monitored by an appointed staff member of the prison with whom we would have the opportunity to discuss which kind of use of the computers and internet is essential for our defense. Should we ever use those devices for anything else than preparing our defense, such as for friendly family letters or videoconferencing or for religious books not related to the case, it should prompt a proper investigation by the prison personnel as a contempt of court; however, nothing should be handed over to the prosecution without ordinary electronics search warrant.

We thank your Honor in advance for taking into consideration to grant us our rights under the Fifth Amendment so we can adequately prepare our defense for a fair trial to prove our innocence.

Dated: Valhalla, New York
   November 20, 2020

                                                      Respectfully Submitted,
Pro Se Defendant
Nachman Helbrans.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/5/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

NACHMAN HELBRANS and MAYER ROSNER,

Defendants.

19 cr 497 (01) and (02) (NSR)

NELSON S. ROMÁN, United States District Judge:

Pro se Defendants Nachman Helbrans (01) and Mayer Rosner (02) requested approval for the use of CJA funds to purchase laptops that they can use to prepare their defense while detained at Westchester County Jail ("the Facility"). (ECF Nos. 202, 203.) In their papers and during a status conference held on March 4, 2021, Defendants represented that without laptops they will not be able to write in English, conduct research, review discovery, or otherwise prepare their defense in an effective and timely manner.

The application is granted as follows:

1. Standby Counsel for Defendants Helbrans (01) and Rosner (02) are authorized to procure with CJA funds, a laptop computer or similar device (hereinafter, "Electronic Device") for each Defendant so that he may prepare his defense.[1] The Court also authorizes the use of CJA funds for necessary external hard drives, software programs, charging cables, or adapters.

2. Standby Counsel shall coordinate with the Facility to ascertain from the Facility what it will permit, to ensure that the Electronic Devices procured are acceptable to the Facility, to confirm who at the Facility will accept delivery of the Electronic Devices, and to confirm when Defendants will have access to the Electronic Devices and where they will be stored when not in use. Standby

---

[1] The Court reiterates that each Defendant represents himself and only himself. Each pro se Defendant must communicate with the Court (whether in writing or orally) on his own behalf and may not purport to represent any other Defendant.

Counsel shall also ensure that the Electronic Devices are compatible with any external drives upon which discovery has been or will be exchanged.

3. Once Standby Counsel have procured the devices, and prior to sending them to the Facility, Standby Counsel shall confirm that the wireless and printing capabilities are configured in a manner acceptable to the Facility and that necessary software is installed and functional for word processing, Hebrew/Yiddish to English translation, and reviewing discovery materials. If the Facility indicates that access to the internet is not possible or only possible on a very limited basis, Standby Counsel shall determine whether an inexpensive translation software program can be installed on the Electronic Devices that can be used without internet access and, if so, preload the Electronic Devices with said program. Standby Counsel shall also create a password protected administrative account on the Electronic Device that is separate from the defendant's password protected user account to prevent any user from making changes to the Electronic Device. Only Standby Counsels shall have access to this administrative account.

4. Before it is sent to the Facility, each Electronic Device shall be clearly marked with the name, ID number, and Marshal's registration number of the Defendant who has been assigned to receive that particular Electronic Device.

5. The Defendants can access and use their respective Electronic Devices on a temporary basis and at times approved by Facility personnel for the sole purpose of preparing their defense in this matter. The Electronic Devices may not be used for any other purpose, including, but not limited to, personal correspondence. Use of the Electronic Devices must take place in the Defendant's unit or a location where, to the extent possible, a Defendant is not disrupted. After a Defendant is finished using his Electronic Device for the day, Defendant shall return the Electronic Device to the designated Officer for safekeeping.

6. Because of the volume of discovery and the complexity of this matter, The Court requests that Defendants be afforded the ability to use the Electronic Devices as much as possible, but no less than several hours each day, to the extent consistent with the Facility's requirements. The Court also requests that, especially if they are not able to access the internet on their Electronic Devices, Defendants continue to have access to legal research tools in the Law Library and that, as needed, Defendants be permitted to print from their Electronic Devices directly or by using a flash drive to transfer documents to a computer from which they can print.

7. This Court will revisit this Order and any Defendant's access to his respective Electronic Device if it appears that any Defendant is not abiding by this Order.

8. No later than the conclusion of the proceedings against Defendants in District Court, whether through dismissal of the charges or sentencing, Defendants shall return their respective Electronic Devices to their respective Standby Counsel, who will promptly provide them to the Administrative Office of the U.S. Courts.

The Clerk of Court is directed to terminate the motions at ECF Nos. 202 and 203. Standby Counsel for Defendants Helbrans (01) and Rosner (02) are directed to send a copy of this order to their respective Defendants and to file proof of service on the docket.

Dated: March 5, 2021
White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

3

| | |
|---|---|
| 03/04/2021 | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Status Conference via telephone as to Nachman Helbrans, Mayer Rosner, Aron Rosner held on 3/4/2021. Pro se Defendant Nachman Helbrans (01) present with standby counsel Bruce Koffsky, Esq. and Peter Schaffer, Esq. Pro se Defendant Mayer Rosner (02) present with standby counsel Susanne Brody, Esq. Defendant Aron Rosner (03) present with counsel Evan Lipton, Esq. AUSAs Samuel Adelsberg and James Ligtenberg also present. Ruth Kohn is standby (Yiddish) Interpreter. Angela ODonnell is court reporter. The Court finds that each Defendant knowingly, intentionally and voluntarily waives his physical appearance and each Defendant consents to this proceeding to be conducted telephonically. After separate Faretta Hearings, the Court issued orders granting each Defendants Helbrans (01) and M. Rosner (02) leave to proceed pro se. The pro se Defendants have discovery but its very difficult to review. The Court will issue separate orders granting CJA funds to purchase a laptop for pro se Defendants Helbrans (01) and M. Rosner (02) to review the discovery and file supplemental motions. Motions had been submitted previously by counsel. A supplemental motion briefing schedule will be discussed at the next conference. Pro se Defendants Helbrans (01) and M. Rosner (02) need to discuss the issue of trial with their respective standby counsel. The Government will make an early production of 3500 materials but cant do so within the requested 30 day period. Protective Orders are needed and instructions must be given to pro se Defendants Helbrans (01) and M. Rosner (02) concerning accessing sensitive materials. The next Status Conference via teleconference for Defendants Helbrans (01), M. Rosner (02) and A. Rosner (03) is scheduled for March 26, 2021 at 11:00 am or, alternatively, for March 26, 2021 at 3:00 pm. The Court grants the exclusion of speedy trial time for Defendants Helbrans (01), M. Rosner (02) and A. Rosner (03) from today, March 4, 2021, until March 26, 2021 in the interests of justice and to permit Defendants time to review discovery, file motions and hold plea negotiations. Defendants Helbrans (01) and M. Rosner (02) remanded. Bail continued for Defendant A. Rosner (03). (jbo) (Entered: 03/26/2021) |