```
 1              UNITED STATES DISTRICT AND BANKRUPTCY COURTS
                      FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA       Criminal No.  21-cr-00035

 4          v.                      Washington, D.C.

 5   JEFFREY SABOL,                 October 7, 2021

 6             Defendant.           10:00 a.m.

 7   -------------------------/

 8                  TRANSCRIPT OF MOTIONS HEARING
               BEFORE THE HONORABLE EMMET G. SULLIVAN
 9                  UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   For the Government:      United States Attorney's Office
                              By: COLLEEN KUKOWSKI, ESQUIRE
12                                BENET KEARNEY, ESQUIRE
                              555 Fourth Street, NW
13                            Washington, D.C.  20530

14

15   For the Defendant:       Law Offices of Alex Cirocco, LLC
                              By: ALEX CIROCCO, ESQUIRE
16                            600 Getty Avenue
                              Suite 305
17                            Clifton, New Jersey 07011

18

19   Court Reporter           Lisa K. Bankins RMR FCRR RDR
                              United States District Court
20                            District of Columbia
                              333 Constitution Avenue, NW
21                            Washington, D.C. 20001

22

23   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
24

25
```

```
 1              P R O C E E D I N G S
 2         THE CLERK:  Your Honor, this is Criminal Case
 3    21-035, United States of America versus Jeffrey Sabol.
 4    Will parties on the line please identify yourself for the
 5    record?  And we'll start with government counsel, please.
 6         MS. KUKOWSKI:  Good morning, Your Honor.  AUSA
 7    Colleen Kukowski for the government.
 8         THE COURT:  Good morning.
 9         MS. KEARNEY:  And good morning, Your Honor.
10    AUSA Benet Kearney for the government.
11         THE COURT:  Good morning, counsel.
12         MR. CIROCCO:  Good morning, Your Honor.  Alex
13    Cirocco representing defendant, Jeffrey Sabol.  Both
14    present via audio and video via Zoom, judge.  My client is
15    currently incarcerated in the D.C. Jail.
16         THE COURT:  All right.  Good morning, counsel.
17    Mr. Sabol, how are you this morning?
18         THE DEFENDANT:  All right.  Sir, how are you?
19         THE COURT:  Good.  All right.  I assume,
20    counsel, Mr. Cirocco that your client has no objection to
21    proceeding by virtue of this Zoom hearing today.  Is that
22    correct?
23         MR. CIROCCO:  That is correct, judge.
24         THE COURT:  All right.  It's your motion.  I've
25    read everything.  If you wish to summarize it, go right
```

1    ahead.  It appears that the Court needs to scrutinize some
2    information about some new evidence.  So go right ahead.
3    You have my attention.
4            MR. CIROCCO:  Thank you, judge.  The first thing
5    I want to do is thank this Court for granting -- thank
6    this Court on behalf of my client and myself for granting
7    oral argument today.  It's very much appreciated and I do
8    incorporate all of my brief, both submissions, judge, my
9    initial brief and my reply into this argument.  Judge,
10   before we get into the facts of the case for
11   dangerousness --
12           THE COURT:  I don't want to re-argue my opinion,
13   my lengthy opinion.  I just want to focus on the new
14   evidence.  So get right to the point, counsel.
15           MR. CIROCCO:  Understood, judge.  So, judge, the
16   first new evidence I want to start with in regards to
17   dangerousness is in relation to what I submitted as
18   Exhibit I, judge, which was the picture of Jeff --
19   allegedly Jeff with the baton in his hand.  I would ask
20   that I can share my screen, judge, to bring the picture up
21   up on the screen.
22           THE COURT:  Sure.
23           MR. CIROCCO:  I apologize, judge.  I didn't hear
24   you.  Did you say yes?
25           THE COURT:  Yes.  That's fine.  Yes.

1          MR. CIROCCO:  Judge, I have on the screen what I
2     submitted in my brief as Exhibit I, judge.  And what I
3     want to talk about with this picture, judge, is that this
4     picture does not accurately represent what happened at the
5     top of the steps on January 6th at approximately 4:27,
6     judge.  First, judge, this picture was taken at the top of
7     the steps, not at the bottom.  I think it is clear from
8     this picture, judge, that the baton --
9          THE COURT:  I can't see anything.  Did you open
10    that or not or what?
11         MR. CIROCCO:  I did, judge.  I apologize.  One
12    second.
13         THE COURT:  That's all right.  Maybe I'm the
14    only one who can't see.  I don't know.
15         THE DEFENDANT:  I don't see anything either,
16    sir.
17         MR. CIROCCO:  I'm hitting share screen, judge.
18         (Defense counsel had technical difficulties.
19    After which, the following ensued:)
20         MR. CIROCCO:  Now, judge, the first thing I want
21    to talk about in this photo is that -- I am just going to
22    restart, judge --
23         THE COURT:  Sure.
24         MR. CIROCCO:  -- this was taken at the top of
25    the steps.  The baton is clearly not on the officer's neck

1    and I believe that's shown by Co-defendant Whitton's hand

2    you can see on his neck and as well as this individual,

3    judge, who I'm circling with the gray sweatshirt, his hand

4    is also below the baton.  So the inference or what this

5    picture shows, judge, is not accurate in what actually

6    happened at the top of the steps.

7           Now there is video evidence, judge, and this is

8    from C.W.'s body cam and I'd like to show that to the

9    Court as well.

10          THE COURT:  Where is your client depicted in

11   this?

12          MR. CIROCCO:  My client, judge, is with the teal

13   book bag and the orange shirt.

14          THE COURT:  All right.  That's what I thought.

15   I didn't want to assume that.

16          MR. CIROCCO:  Yes.  So I am going to start this

17   video, judge.  I did mute it because the sound I don't

18   think is relevant.

19          THE COURT:  It looks like your client's hand is

20   on the posterior, for want of a better word, of one of the

21   police officers it looks like.

22          MR. CIROCCO:  Judge, the hand may be there.

23   What my issue is that in the Court's findings is that the

24   baton was possibly or the Court found that he was using

25   the baton to assault the officer.  The argument really

1    just focuses on the baton, judge.  I will address his

2    hand --

3              THE COURT:  The baton appears to be on the

4    police officer's back.

5              MR. CIROCCO:  So, judge, my argument is that in

6    this picture specifically that it's not on his back.  It's

7    above his back because this individual right here who I am

8    circling, his hand is on his neck and it looks pretty

9    clear to me, judge, my position that the baton is actually

10   in the air in this picture.

11             THE COURT:  Why would it be in the air for any

12   reason other than to strike a police officer?

13             MR. CIROCCO:  Well, judge, my position which I

14   will show with this video is that while my client was

15   minimally involved with this officer going down the

16   stairs, he was not in any way attempting to hit him,

17   assault him.  There was no malice to assist --

18             THE COURT:  It certainly looks like it.  I mean

19   I can't think of any other reason why that baton would be

20   parallel actually on or above the back of the police

21   officer.  He wasn't swatting away flies there.  I mean the

22   only inference the Court can draw, reasonable inference is

23   that the baton was being used in an effort to strike the

24   police officer.  I mean unless I'm missing something,

25   counsel.

1          MR. CIROCCO:  Well, judge, one of my main issues

2    with this picture is, judge, it is a snapshot of the video

3    and I do submit that this picture does not look favorable

4    upon my client at all.  But when you see the video

5    evidence, judge, direct evidence and circumstantial

6    evidence which I will show you, I think it is clear that

7    there was no attempt to be assaulting or hitting the

8    officer.

9          THE COURT:  All right.  Go ahead, counsel.

10          MR. CIROCCO:  Thank you, judge.  This was marked

11    as Exhibit J in my brief, judge, and this is Officer

12    C.W.'s body cam.  I'm starting this at 16:27:31 seconds,

13    judge.  And I am going to play this on half speed.

14          THE COURT:  All right.

15          (Video played.)

16          MR. CIROCCO:  And I want to pause it right here,

17    judge, just for a second.  So the first thing I want to

18    point out to Your Honor is, well, my client was somewhat

19    involved with this scene.  It is clearly obvious from this

20    that Co-defendant Whitton had initially grabbed the

21    officer.  And with or without Jeff coming, he was going

22    down the steps regardless.  And I understand that there

23    still is potential criminal liability for his action.  But

24    we're here to determine dangerousness, judge, and if he

25    would be a danger if released.  So I want to point that

1    out to, Your Honor, to be --

2            THE COURT:  Sure.

3            MR. CIROCCO:  So, judge, as I play it here --

4            THE DEFENDANT:  We're seeing no video.  At least

5    I'm not seeing any video.

6            MR. CIROCCO:  Judge, are you seeing video?

7            THE COURT:  Yes.  I see the screen shot now.

8    Yes.  I see it.

9            MR. CIROCCO:  Jeff, you're not seeing anything?

10           THE DEFENDANT:  I see a screen shot from above.

11   I'm seeing no video at all.

12           MR. CIROCCO:  What about now?

13           THE DEFENDANT:  No.  I'm seeing you.

14           MR. CIROCCO:  How about now?

15           THE DEFENDANT:  All right.  We are at the

16   beginning.  Yes.  I'm seeing the video of the body cam

17   right now.

18           MR. CIROCCO:  Okay.

19           THE DEFENDANT:  So you are going to want to

20   rewind it --

21           MR. CIROCCO:  Got you.

22           THE DEFENDANT:  -- or whatever.

23           MR. CIROCCO:  So, judge, I am restarting it

24   because my client did not get to see it.

25           THE COURT:  Sure.

1          MR. CIROCCO:  So here, judge, you have the

2    officer going down.  Jeff does come here and the video is

3    a little choppy and he goes down the steps and you can see

4    from the video, judge, he's on his feet, judge.  And the

5    circumstantial evidence, judge, and I'm going to pause it

6    in just a second to prove that he was not intending to

7    assault an officer is right here, judge, and I made this

8    clear in my brief.  I paused it at 16:27:44.

9          Immediately after the officer got to the bottom

10   of the steps, judge, you can see Jeff's book bag is facing

11   inward meaning his body is facing out.  So immediately

12   after this officer got to the bottom of the steps, Jeff

13   got up and turned around, which I think goes directly to

14   dangerousness and the issue of him assaulting a police

15   officer.

16         Now, judge, the baton was in his hand, he was

17   swirling the baton.  Is there a possibility that the baton

18   may have made contact with the officer?  Yes.  But there

19   is no evidence that shows he was intentionally assaulting

20   a police officer, judge.

21         And I have more circumstantial evidence to

22   follow, judge, immediately after this scene, which I would

23   like to show the Court.

24         So judge, probably the biggest piece of new

25   evidence, judge, that I have submitted is evidence of Jeff

9

1    helping somebody.  I'm going to show that in one second,

2    judge.

3           So, judge, this is Exhibit K which I submitted

4    in my brief, judge, and this is tunnel cam from inside the

5    tunnel and I don't know if Your Honor noticed, it was very

6    difficult at first to find Jeff.  I actually kept my mouse

7    on the screen when I screen recorded it.  And this is

8    immediately following that incident at the steps, judge.

9           And in the government's initial brief, judge, in

10   April and in their brief that they submitted in opposition

11   to my brief, they made a statement that said "if released,

12   the defendant would have even more opportunities to

13   unleash violence against those in battle against him."

14   And, judge, I submit that that is an unidentified and

15   unarticulable threat.  And I'm going to play this video

16   starting here, judge.  This video has no sound.  And as

17   you can see, judge, we are able to find Jeff right here

18   right after that incident and he appears to be or not

19   appears to be, he is helping an individual.

20          And, judge, that statement that I just said to

21   you that the government made if released, he would engage

22   in battle, judge, there is still a battle going on right

23   here at the top of these steps.  No doubt about it, judge.

24   There's mace.  There's things being thrown.  There's

25   violence.  And Jeff is at the bottom of the steps helping

1    somebody which goes directly to the issue of

2    dangerousness.  Is he a future danger?  He is, judge, 20

3    to 30 feet away from an intense battle from violence, from

4    people being hit, from people being attacked and he is

5    helping somebody.

6           And again this does not mean, judge, that all

7    Jeff's charges now get dismissed, he has no liability

8    because he's shown helping somebody.  What we're here

9    today to determine is if he is a danger while released

10   pretrial while he is innocent, judge.  And this video

11   directly shows him not being involved in battle, not

12   re-engaging, not attempting to get into the Capitol.  He

13   saw an injured individual which I will next show to

14   confirm this, judge, on the floor and as Your Honor can

15   see, he is walking away with the injured individual.  I'm

16   going to stop that video, judge.

17          Judge, this is Exhibit L that I've submitted

18   which was video evidence that I found from the bottom of

19   the steps and I also turned the sound off on this, judge.

20   And as you can see, judge, Jeff is right there, right here

21   where my mouse is, judge.  You see his beard.

22          THE COURT:  Yes.

23          MR. CIROCCO:  And you see an injured individual

24   right here on the floor, judge.  This is just confirming

25   the video I just showed, Your Honor, that he is indeed

1    helping somebody.  And right behind him, judge, people are

2    fighting, things are being thrown, violence is happening

3    and he is helping somebody.

4           And I try so hard not to repeat myself, judge,

5    because I know you're hearing what I'm saying.  But we're

6    here for dangerousness, future danger.  As of today, Jeff

7    is innocent.  And I think those videos go to prove that

8    he's not a danger.  That that completely rebuts the

9    government's presumption or argument that if released, he

10   is going to unleash battle against those against him.

11   Judge, there is no evidence of that.  As Your Honor is

12   fully aware, he has the most diminimous criminal record.

13   Even that's too much, judge.  He has no ties to any

14   extremist groups, judge.  He has no history of violence in

15   his past, judge.  And I think that clearly shows or is

16   very strong proof of why we're here today and why he

17   should not be detained while he is innocent, judge.

18          Going back to the identified articulable threat,

19   judge, as I said he has no evidence -- no violence in his

20   past.  The only time he was ever involved in violent

21   activity was January 6, 2021.  That day is over.  The

22   election has been certified.  Joe Biden has been sworn in

23   as president of the United States, judge.  There is clear

24   evidence I just showed this Court that a battle was going

25   on, something the government would say he would engage in

1    once he's released, judge, and he was helping somebody.

2    And this I believe adds even more support to the

3    tremendous amount of character letters, judge, which I

4    know you read before his initial hearing and have received

5    in support of him, judge.  And I think this goes to the

6    issue of why we're here today.  We're not here today to

7    determine guilty or not guilty.  We're here to determine

8    while he is innocent because that is a fact, judge.  Jeff

9    Sabol is innocent on October 7, 2021 of every charge that

10    he's been indicted on.  And when you're innocent, there's

11    a presumption, what is the norm of pretrial release and

12    only in exceptional circumstances, especially for someone

13    with no record, judge, to be detained.

14          So the next argument I want to make which I

15    think is very important were certain misrepresentations

16    made by the government at his initial hearing.  Some of

17    those in my brief, judge, they mention the blood on

18    Officer A.W.'s jacket which my client is not charged with

19    or have any relation to happening.  Blood on the marble

20    floor by the steps.  The amount of force used in the

21    allegation that he took the baton from Officer A.W.  And

22    my reasoning I take exception with this, judge, especially

23    that fact or that statement by the government, if he

24    easily took the baton, I wouldn't be saying, judge, oh, he

25    easily took it, he's less of a danger.  So these things

1    have nothing to do with dangerousness, judge.  They just

2    prejudice my client at this stage in the proceeding.

3            Now at the initial hearing, judge, the

4    government made an allegation that Jeff's actions led to

5    the death of another individual and I was not the only

6    person that read it like that, judge, because and I'm

7    quoting from Your Honor's opinion, judge, and this is on

8    page 27.  Your Honor stated "the protester who had been

9    trampled by the mob who the government alleges Officers

10   A.W. and B.M. were trying to aid when Mr. Sabol interfered

11   and attacked them later died."  So, judge, in your

12   findings that Mr. Sabol was a danger, you found that his

13   actions led to the death of another individual and I have

14   evidence that clearly shows that is a hundred percent not

15   true, judge, which I would like to show the Court.

16           THE COURT:  All right.

17           MR. CIROCCO:  So, judge, I am going back to

18   Exhibit J and I am going to play this on half speed,

19   judge.  I'm starting this at 16:27:30, judge.  So this is

20   the same video that I was just previously showing, Your

21   Honor, judge.  I apologize.

22           So, judge, I'm stopping at 16:27:36.  This is

23   Ms. Roseanne Boylan right here who I in my brief submitted

24   that that who the government is alleging that Jeff Sabol

25   is responsible for dying.  You can see here at the top of

1    the steps, judge.

2           Judge, at this point, Jeff is at the bottom of

3    the steps and completely away from Ms. Boylan on the

4    floor.

5           And I'm going to pause it, judge, because this

6    is the scene that I think is so important.  What you see

7    is a police officer right above Ms. Boylan, judge.  And

8    not only does Jeff have nothing to do with anything that's

9    going on with Ms. Boylan, it looks like the officer is

10   actually striking Ms. Boylan on the floor.  And, judge, if

11   you look at the person in blue whose face is right next to

12   that, you see their immediate shock at what is going on

13   and I'm going to make sure I try to pinpoint the exact

14   pause in here, judge.  As you can see, there's an item

15   striking her right there.  And, judge, look at her shock,

16   judge.  There's officers right here.  As you saw from the

17   camera, judge, behind the -- inside the tunnel, there's

18   tons of officers here.

19           So at his initial hearing, judge, arguing for

20   dangerousness, that he's a future danger, the government

21   argued that he was responsible for someone dying.  And,

22   Your Honor, in his findings that he was a danger relied on

23   that assertion by the government.  And, judge, it's so

24   clear to me, most respectfully, judge, and I think it's so

25   clear to anyone that watches this that Jeff had nothing to

1    do with her dying.  He has been sitting in prison for

2    months with this allegation that his actions led to the

3    death of another individual.  And I submit, judge, along

4    with the other misrepresentations that I mentioned, this

5    was does because there is no evidence to support him being

6    detained pretrial.  There is no articulable threat.  There

7    is no identified threat, judge, for Jeff to be detained.

8    And I think this evidence clearly shows that that

9    allegation by the government is false, judge.

10              Judge, I did briefly just want to touch on risk

11   of flight.  The government did -- that the majority of

12   their argument for risk of flight -- the majority of the

13   government's argument for risk of flight was his evidence

14   of a previous attempt at flight -- a previous attempt to

15   flee.  Now, judge, a couple of things I want to touch on

16   that.

17              First, evidence of a prior attempt to flee,

18   judge, does not by itself satisfy the burden.  And I bring

19   Your Honor's attention to the statute, 18 USC 3142,

20   Section G, the factors to be considered.  Under history

21   and characteristics, judge, Congress put Section --

22   Subsection B and that speaks about whether at the time of

23   the offense, someone is on probation, parole or pretrial

24   release and I cited to Your Honor case law that a judge is

25   supposed to take that factor if someone is on parole or

1    pretrial release or probation extra weight.  If Congress

2    wanted evidence of a prior attempt to flee to have more

3    weight or satisfy the burden the government had, they

4    could have listed it in its own subsection which they

5    didn't.

6            I submit, judge, that under Subsection A with

7    about 11 factors, one of the factors is past conduct which

8    I submit that would go to, judge, along with many others

9    that Jeff has in his favor such as family ties, employment

10   and lack of criminal record.

11           The government still has today to prove by a

12   preponderance of the evidence why if Jeff was released, he

13   would not come to court.  And I submit, judge, that him

14   being on home detention, having an ankle monitor, all

15   travel documentation turned over, judge.  I submitted in

16   my brief both of his parents would sign for him as

17   financially responsible people in the amount of a hundred

18   thousand dollars each.

19           His partner, Michelle, would be willing to post

20   her house and I just want to touch on that, judge.  In my

21   reply brief, there was a communication by my client, he

22   would be asking to stay with Michelle if Your Honor were

23   to release him who lives in New York and is neighbors with

24   his parents.

25           There are no witness intimidation issues, judge.

1    There's no evidence of dual citizenship.  No ties to any
2    extremist groups.  As I submitted, judge, his parents are
3    in their late 70's, early 80's.  His mother suffers from
4    C.O.P.D. which I ask Your Honor to take into
5    consideration.  Judge, I'm also Jeff's second attorney
6    that he hired and the only argument I make to that is it's
7    counter-intuitive, judge, to hire private counsel and then
8    flee.
9              And then also in regards to the evidence to his
10   attempt to flee, judge -- and I understand that the
11   evidence is, of course, to concern to the Court -- number
12   one, that the evidence of his attempt to flee was not a
13   violation of any court order.  He was still in possession
14   of all of his travel documentation.  And, number two,
15   judge, while one of the factors that Jeff has in his favor
16   of having such a small criminal record, I believe it was a
17   DUI and marijuana charge and a family court issue, judge,
18   and I understand these charges are much more serious.  But
19   speaking with my client and looking at the pretrial
20   services report, there was no failure to appears, there
21   was no violation of court orders.  So although it is
22   small, he does have a history of complying with court
23   orders, judge, and having respect for a court order, the
24   judicial process and understanding of court order to not
25   leave the house, not talk on the phone, not do anything

1   that Your Honor would ask him to do, he can follow, judge,

2   and understand it's basically a lot to him.

3            Judge, other new evidence or strike that -- case

4   law, judge, which I cited to Your Honor since Jeff's first

5   hearing, Defendant Michael Foy, which was decided by a

6   district court judge and it's not binding on Your Honor.

7   I'm fully aware.  Defendant Michael Foy was alleged to be

8   at top of the steps with Jeff and he was swinging a hockey

9   stick at police officers.  He is also alleged to have

10  entered the Capitol, something Jeff did not do which I

11  think is also very important, judge.

12           At his motion to reopen, the -- I apologize,

13  judge -- Michael Foy had no record, no ties to any

14  extremist groups and no post January 6th celebration,

15  something Jeff also did not do, judge.  He did not brag

16  about this.  He did not take pictures of himself

17  celebrating.  And Michael Foy was released.

18           And, judge, the other case which came from the

19  Court of Appeals, George Tanios, the facts of that case,

20  judge, I took them straight from the indictment were that

21  George and his co-defendant, Julian, came to the Capitol.

22  George had a can of chemical spray, judge, in his book

23  bag, discussed with his co-defendant when to spray it and

24  the co-defendant took it from his book bag and sprayed

25  officers, judge.  So you have violent action, judge.  You

1    have assaultive intent to harm.  And the Court of Appeals

2    found that because George had no felony convictions, no

3    ties to extremist groups and no post 6th January behavior,

4    he did not -- he was not a danger to the community.

5            Now, judge, I'm fully aware as I'm sure Your

6    Honor is that Jeff did get indicted on new charges that

7    happened -- that allegedly happened approximately two

8    hours prior to the charges he was initially facing.  And I

9    understand those are a concern for the Court, judge, a

10   hundred percent.  But we're here today for dangerousness

11   and pretrial release.  And just like with the old charges,

12   Jeff is innocent of all these charges, judge.  And these

13   new charges what they show again is that there was no

14   weapon used, judge.  The zip ties that were in his book

15   bag that the government focused on in his first hearing

16   were never used, judge.  Again he didn't enter the

17   building.  He didn't celebrate.

18           And I think a very important point again,

19   judge -- I'm sure the government will show the videos --

20   he didn't throw a punch.  He didn't try to tackle anybody.

21   He didn't try to push anybody.  While, judge, I do concede

22   that the evidence does seem to show him with his head down

23   and going at the officer, he never had assaultive conduct

24   to harm anybody.  Not once, judge.  Not in his new charges

25   and not in his old charges, judge, which is again why we

1    are here because Jeff is innocent of every charge that has

2    been brought against him that he is being indicted for.

3    And until he resolves that case with a guilty plea or

4    convicted at trial, judge, he remains innocent.  And to

5    keep someone detained while they're innocent, judge, the

6    burden is high and I submit to this Court that Jeff with

7    no record and the evidence that I've submitted to Your

8    Honor today that shows that he had nothing to do with the

9    death of an individual which the government alleged would

10    show that that picture which the picture looks bad, judge.

11    But it was a snapshot of what happened.  And it is not

12    true of what happened and had no intent to harm any

13    officers.  And I think that's clear, judge, if you watch

14    that video.  If he wanted to harm the officer, he easily

15    could have done that.  But what did he do?  He went and

16    helped somebody.

17         So, judge, I understand there's evidence against

18    my client.  And I understand that there is some charges

19    that he will have to answer for.  But we're not at that

20    point yet, judge.  We are at the point of pretrial release

21    or detention.  And what I'm asking this Court -- while I

22    am asking this Court to release my client, I am

23    specifically asking this Court to find that the government

24    did not meet their burden to keep him detained while he is

25    innocent mandating he be released, judge.  I have nothing

1     further, judge.

2          THE COURT:  All right.  Thank you.  I'll hear

3     from government counsel.

4          MS. KUKOWSKI:  Thank you, Your Honor.  What I

5     want to focus on today is what the defense has put forth

6     as the new evidence.  Just to start with some of the newer

7     cases that the defense raised, the matter of Michael Foy

8     and the matter of George Tanios and his co-defendant,

9     Julian Khater.  The thing I think that's important to

10    point out as the Court knows, each of these decisions on

11    detentions are individualized assessments.  We look to the

12    factors that are in 3142(g).  In the Foy case, Judge

13    Chutkan analyzed the facts and she also distinguished

14    Foy's conduct from others that day to include Mr. Sabol.

15    In her opinion which again is a peer opinion, it's not

16    from the Court of Appeals, but I think it's particularly

17    notable that what she did there was focus on the fact that

18    unlike Sabol, the defendant in that case had no prior

19    claiming.  And she also looked at words and actions after

20    the fact and the defendant's stated intent and focused

21    specifically in her opinion on the fact that Mr. Sabol

22    talked about fighting tyranny.  So I think Mr. Foy is

23    immediately distinguishable and already has been

24    distinguished from the defendant in this case.

25          Looking at the Tanios opinion, I think it's also

1    important to look at it from the perspective of his

2    co-defendant as well.  So in the Tanios opinion which was

3    just a very brief per curiam opinion, the Court said that

4    there wasn't adequate findings regarding his

5    dangerousness.

6            What's important to look at there is his

7    conduct.  Yes, Mr. Tanios brought bear spray with him that

8    day and he had bear spray in his backpack.  But it was his

9    co-defendant that went and retrieved the bear spray from

10   the backpack and Tanios in response specifically said hold

11   on, hold on, not yet, it's still early.  That was the

12   scope of Tanios' conduct.  It was the co-defendant,

13   Khater, that used the bear spray and used it in two

14   occasions at approximately 2:23 p.m. and that co-defendant

15   is still held.  So the court there in the Court of

16   Appeals' appropriately distinguished between those two

17   individuals.  One who I would say still engaged in

18   egregious conduct by bringing bear spray to the assault or

19   to the riots and then the one who actually used that and

20   engaged in the assaults.  That defendant, Khater, is still

21   held and his detention was confirmed by the Court of

22   Appeals.

23           Now I want to note or I did note I should say

24   the time of those assaults in the Tanios and Khater case.

25   Those are on 2:20, 2:23 p.m.  And this brings me to our

1    new evidence in this case.

2            At 2:23 p.m., the new evidence showed that the

3    defendant had already engaged in one assault against

4    police.  He was about to engage in a second assault

5    against police at around 2:27 p.m. and then shortly

6    thereafter, would engage in a third altercation at 2:33

7    p.m. with police, all before he even got to the lower West

8    Terrace.  And this is really what I want to focus on

9    today.

10           What defense counsel argued was that we, the

11   government, and we did state that one of the threats that

12   the defendant poses is to those he perceived himself to be

13   in battle against and defense counters that his helping,

14   the defendant's helping of someone in the crowd that day

15   means he's not dangerous.  But what we submit to the Court

16   is that the defendant is helping someone that he sees or

17   he perceives to be on his side of the battle after he had

18   already engaged in two hours of assaultive conduct against

19   those on the opposite side does little to mitigate his

20   dangerousness and that's what this comes down to.

21           When we were initially looking at this case,

22   when we were first before, Your Honor, we were focused on

23   a short time period from approximately 4:27 to 4:30 p.m.

24   I think it's accurate to say at that point in time,

25   defense counsel was arguing that what the defendant did

1    engage in was a momentary lapse of judgment.

2             But what we see now when we look at the new

3    evidence that I'm about to present to the Court is that

4    the defendant was in fact part of the vanguard, part of

5    the front line rioters that began engaging with police at

6    approximately 2 p.m. on the West Plaza of the Capitol that

7    was instrumental in overwhelming the police line and by

8    forcing the police to retrieve back to the lower West

9    Terrace and that he engaged in multiple assaults during

10   that initial battle and then continued his assaultive

11   conduct to include robbing an officer of his baton, his

12   source of protection and then his involvement in driving

13   Officer B.M. out in the crowd.

14             So we see now that what he did that day was

15   engage in concerted violent action against police and I

16   think more importantly, this goes to his dangerousness.

17   He was repeatedly presented with choices.  From 2 p.m. on,

18   he was presented a choice if he wanted to peacefully

19   protest.  He could have stayed in the crowd and not

20   engaged in physical assault, physical altercation.  He

21   could have left.  He had many options available to him.

22   But what he chose to do was assault officers.  And he made

23   that decision multiple times and that conduct contributed

24   to officers being overwhelmed and then eventually got us

25   to the point where we focused on originally, the assaults

1    at 4:27, 4:30 p.m.

2              So Court's indulgence.  I'm going to share the

3    screen and what I'm going to show first is a screen shot

4    from a U.S. Capitol Police surveillance camera on the

5    Capitol grounds.  It's from 2 p.m. and it's -- the reason

6    why I'm showing it is to help just set the Court's

7    perspective.  And can the Court see the photograph of the

8    still shot at 2 p.m.?

9              THE COURT:  Yes.

10             MS. KUKOWSKI:  So what I'm going to do first is

11   just orient the Court as to what we're looking at.

12   Immediately at the bottom of the screen where you see

13   several officers on a tan area and they're side by side,

14   that's the lower West Terrace.  That is where the eventual

15   assaults at 4:27 occurred.  But at 2 p.m., as the Court

16   can see, officers were still able to move freely about at

17   that point and there was a police line that was being

18   maintained on what we have referred to as the West Plaza,

19   the ground level of the Capitol grounds.

20             What I want to draw the Court's attention to or

21   orient is the organization level of this police line at

22   this point.  Officers are in control at 2 p.m.  I'm going

23   to draw the Court's attention over to the left side of the

24   screen and zoom in to this blue flag with the half

25   crescent moon on it and then the Court can also see a

1    yellow Gadsden flag by a white flag that has some large

2    letters on it.  This is the area that the Court will see

3    in the video that I'm about to play.  It will be in the

4    foreground.  The defendant is standing approximately over

5    to the left side, frankly, slightly obscured by the

6    scaffolding and that's where this first altercation is

7    going to happen between the defendant and police at 2:04

8    p.m.

9            Court's indulgence while I switch to the video.

10   Okay.  And can the Court see the video here?  It's the

11   Government's Exhibit 2 and there should be rioters with

12   that blue flag and the white crescent on it.

13           THE COURT:  It's still buffering, counsel.

14           MS. KUKOWSKI:  Okay.  Let me switch to a

15   different video player and see if that helps.  Okay.  Is

16   the Court able to see the screen now?

17           THE COURT:  Yes, I am.

18           MS. KUKOWSKI:  Okay.  Great.  So just to orient

19   the Court what you see in the background is the media

20   tower that's in the center of the West Plaza.  You see the

21   blue flag with the white crescent there and then that

22   yellow Gadsden flag with the lettering.  So that's where

23   we are in perspective.

24           So what I want to focus the Court on is and I'll

25   start playing.  I'll pause it at the three-second mark.

1     And these clips are going to be quick.  So I can replay or

2     play it at a slower speed.  But what you'll see starting

3     at around three seconds is a subject wearing camouflage.

4     The subject would be carrying a riot shield and he's going

5     to be followed by another rioter who has a red hat on, a

6     blue jacket backpack and then Defendant Sabol is together

7     with that individual in the red hat wearing his teal

8     backpack and his helmet and you'll see them charge at the

9     police line.

10          So I've got it paused at the three-second mark

11    and what the Court here can see is the individual again

12    with the camouflage, the shield, the individual with the

13    blue jacket and the red hat.  And then the teal

14    backpack --

15          THE COURT:  Yes.

16          MS. KUKOWSKI:  -- and the helmet at the bottom

17    left corner is Mr. Sabol.

18          And so what the Court could see there was at the

19    end of the clip, there was in fact individuals in the

20    crowd even spraying officers.  But the defendant himself

21    was involved in charging at that police line.

22          So I want to show you that angle from the

23    perspective of the crowd because you can see there the

24    defendant's concerted action with his fellow rioters.  He

25    was engaging in the moment with others and chose to team

1    up and then attack the police line.

2              So what I want to do now is play the same or

3    play the video of the same assault from two different

4    perspectives, from the perspective of the police officer

5    who was the victim and then a perspective of a police

6    officer who was trying to stop those assaults.  I will

7    pull up what will be Government's Exhibit 3 for the

8    record.

9              So this is the body worn camera of Officer M.T.,

10   an officer who was a victim.  I'll restart from the

11   beginning.  I've got it paused at nine seconds and I'm

12   going to play it back and I'm going to play it back at a

13   slightly slower speed because what I'll submit to the

14   Court is you can see the defendant and these other rioters

15   in the crowd making a decision to charge at the police

16   line together.  So I'm going to bring it back to the

17   five-second mark.

18             The Court can see again this riot shield in the

19   center of the screen, the individual with the blue jacket,

20   backpack and red hat and then the defendant is going to be

21   behind them.

22             And so just for the record, I'm going to play it

23   back at a slower speed by starting at five seconds.  And

24   now I've got it paused at 11 seconds.

25             So I ask the Court to follow this tan jacket and

1    this black object which is in fact the defendant's head

2    charging at the police officers and the police shield.

3    And what's important here is that the defendant continues

4    pushing against the officers.  This isn't a momentary --

5              THE COURT:  Can you put your pointer on the

6    defendant?

7              MS. KUKOWSKI:  Sure, Your Honor.  So this is his

8    helmet.  Here, this black object that you can see.  It's a

9    bit blurred through the shield.

10             THE COURT:  Yes.

11             MS. KUKOWSKI:  This blue gray is going to be his

12   jeans and this arm here and tan jacket is him.

13             THE COURT:  Right.

14             MS. KUKOWSKI:  Okay.  So I'm going to restart it

15   at the 11-second mark.  And pausing it at 14 seconds.  And

16   so here the Court can clearly see the defendant's teal

17   backpack still engaging, still charging at the officers.

18             THE COURT:  Right.

19             MS. KUKOWSKI:  I'll restart it at 14 seconds.

20   So the Court could see that it wasn't until the very end

21   of that video clip that officers were able to push the

22   defendant off.

23             And the next video clip that I'm going to play

24   which is Exhibit 4, Officer J.M.'s body worn camera, is

25   going to be from one of the perspective of the officer

 1    trying to remove the defendant.  And here what I want to
 2    emphasize is two things.  One again that the defendant's
 3    assault here was sustained.  It was continued charging at
 4    the police.  And then second while it wasn't the defendant
 5    that was necessarily involved in this context, there was
 6    an officer during the course of these assaults that was
 7    pulled out into that crowd at the lower west or at the
 8    West Plaza and you can hear other officers yelling we've
 9    got an officer in the crowd.  This is foreshadowing the
10    dangerousness of the defendant's conduct and I think it's
11    a prelude to what you see later on when the defendant is
12    directly involved and dragging an officer out of the
13    crowd.
14            Pull up Government's Exhibit 4 and I'll share my
15    screen in just a moment.  And what the Court can see here
16    again is the start of Government's Exhibit 4.  You'll see
17    the defendant with his tan jacket and teal backpack
18    beginning to charge at the police line at approximately
19    eight seconds into the video clip.
20            THE COURT:  All right.  It's still buffering.
21            MS. KUKOWSKI:  So I have it paused at the
22    14-second mark.  And what the Court --
23            THE COURT:  I'm sorry, counsel.  I can't see it.
24    It is still buffering on my screen.
25            MS. KUKOWSKI:  Okay.

1              MR. CIROCCO:  Same with me, madam prosecutor.

2              MS. KUKOWSKI:  Thank you.  I'm going to restart

3    this from the beginning.  See if that will help.  And I'll

4    close out and restart it.  And can the Court see the video

5    frame up now?  It's the time stamp and the BWC --

6              THE COURT:  It's still buffering.

7              MS. KUKOWSKI:  Okay.

8              THE COURT:  All right.  I can see it now.

9              MS. KUKOWSKI:  Okay.  Great.  So I'll let it

10   just play through, Your Honor, and I'll give the Court the

11   time stamps so that I don't have to stop, pause and have

12   more buffering.  But what the Court will see is that at

13   approximately eight seconds or so, the defendant with his

14   tan jacket and teal backpack will charge at the police

15   line and at approximately 13 seconds into the clip is when

16   we will hear officers start yelling that there's an

17   officer in the crowd.  Then the Court will see at about

18   the 19-second mark when officers are finally able to push

19   the defendant back into the crowd of rioters.  We'll

20   restart from the beginning here for Government's Exhibit

21   4.

22             Was the Court able to view that?  Was the Court

23   able to see that clip, Your Honor?

24             THE COURT:  Yes.

25             MS. KUKOWSKI:  Okay.  Great.  So what I will

1    move on to next is a picture -- so that was the

2    defendant's initial assaultive conduct at 2:04.  I'll just

3    briefly show a screen shot from that same Capitol Police

4    surveillance camera that is Government's Exhibit 6.

5              So what we see here is that same view, that same

6    vantage point looking out from the West Plaza and the

7    lower West Terrace.

8              THE COURT:  Okay.  It's not showing yet.

9              MS. KUKOWSKI:  Court's indulgence, Your Honor.

10   Ms. Kearney is going to see if she can get that --

11             THE COURT:  Sure.  That's fine.  That's fine.

12             MS. KUKOWSKI:  Excellent.  Okay.  So Ms. Kearney

13   has the Government's Exhibit 6 now up on the screen and

14   so --

15             THE COURT:  Yes.

16             MS. KUKOWSKI:  Excellent.  So the Court can see

17   that by 2:30, that tight police line that was down on the

18   West Plaza has fallen.  The crowd has overwhelmed where

19   that central media tower is and is starting to move

20   towards the I would say the bottom portion of where the

21   lower West Terrace is and the police line had been

22   retreated at that point.

23             So the defendant's next two instances of

24   assaultive or physical engagement with law enforcement is

25   at 2:27 and then at 2:33.  The 2:27 assault is going to

1    occur in and around the same location as the 2:04 assault.

2    And then his engagement with law enforcement at 2:33 is

3    going to be much closer to the bottom left corner of the

4    screen where there is again a yellow Gadsden flag and

5    there are several officers standing on the police line

6    there.

7              So I point this out because the Court should

8    take note that the defendant is part of that crowd that's

9    pushing the police line back.  And this all goes to

10   dangerousness because it's action that is continuing and

11   it shows also that I would say he may not have expected to

12   find himself in this position, but he was part of the

13   leadership group of rioters.

14             So, Ms. Kearney, if you could play what's been

15   marked as Government's Exhibit 5, body worn camera from

16   Officer H.S.?

17             Okay.  And so now before Ms. Kearney starts the

18   video, I want to point out two things.  One is first and

19   foremost the defendant.  He's standing behind the

20   individual with the black jacket and the long dreds.  You

21   can see him with his tan jacket --

22             THE COURT:  Yes.

23             MS. KUKOWSKI:  -- and you can see him with his

24   helmet.  And what you can see the defendant doing here is

25   looking at that police line and looking at the crowd.  And

1    I want to emphasize this because this is one of the many

2    occasions where the defendant was presented with a choice.

3    He was if he wanted to could have remained a passive

4    protestor who didn't physically engage in violence.  He

5    could have been like this individual you see in the center

6    of the screen.  He's wearing tan pants, a tan jacket and a

7    hat.  And I would point him out to the Court and ask the

8    Court to watch him because this individual as the Court

9    can see is standing with his back towards police, is not

10   engaging with them.  And once the defendant and others

11   start charging at the police line, this individual who is

12   a member of the crowd that day pointed out an officer that

13   fell to the ground and said there's a cop on the ground,

14   you have to help him or words to that effect.  Showing

15   that that man made a very different choice while the

16   defendant was choosing to engage in assaultive conduct.

17          So, Ms. Kearney, if you want to go ahead and

18   play this video.  And pause it if you could, Ms. Kearney?

19          Now we may need to play it back just a touch

20   here.  But what the Court will see is that around the

21   nine-second mark the defendant is charging at the police

22   line like he's charging into a rugby scrum.  He's putting

23   his hands out and again he's taking that posture where

24   he's going head first.  This is deliberate assertive

25   reaction.  And in contrast, the individual with the tan

1    jacket and tan pants is pointing to the cop on the ground

2    saying get the cop up.

3         And here is where the Court can see by Ms.

4    Kearney's cursor the defendant.

5         So we will be the first to admit this assault in

6    and of itself, Your Honor, may not have been enough to

7    have the defendant detained.  But when the Court looks at

8    this assault accompanied by the 2:04 assault and then the

9    focus point of this case, the assaults at 4:27 and the

10   4:30, the Court can see why the defendant is a danger and

11   see the consequences of his decisions.  He chooses to

12   engage in violence against those he perceives to be on the

13   other side quite literally of the battle.

14        The final incident that we want to show the

15   Court is a very quick one and it happened at approximately

16   2:33 p.m.  And here you are going to see the defendant

17   teaming up with two other individuals who have been

18   charged in separate cases who also separately engaged in

19   additional assaultive conduct at the lower West Terrace.

20   But what you see is the defendant joining in with these

21   two individuals and attempting to grab and wrest a visor

22   out of the hands of an officer.

23        And I want to point this out because it happens

24   at 2:33.  And again looking back at that photo of the

25   surveillance camera, the Court can see what the situation

1     on the ground is like at 2:30.  This is what's happening

2     when the police line has fallen and they are being forced

3     to retreat and move up to the lower West Terrace.  And

4     again it's a precursor of when the defendant made the

5     decision almost two hours later to reach out and rob

6     Officer A.W. when Officer A.W. is on the ground, rob

7     Officer A.W. of his baton.  It shows the defendant's

8     decision making that day and it shows his dangerousness.

9            Ms. Kearney, if you could cue up Exhibit 7 which

10    is another clip from Officer H.S.'s body worn camera?  And

11    this will be again a very quick clip, Your Honor.

12    Ms. Kearney is pointing to the play button.  But the Court

13    can actually see directly behind the play button is the

14    defendant --

15           THE COURT:  Yes.

16           MS. KUKOWSKI:  -- and he has on a black helmet.

17           At around the three-second mark, you're going to

18    see an individual wearing camouflage and a red hat and he

19    is going to reach out towards an officer and grab -- start

20    to grab at the officer's helmet and visor.  And then at

21    around the five-second mark, the Court will see the

22    defendant reach in and try to wrest that visor from the

23    officer as well.

24           And so again, this is part of the new conduct

25    that has been indicted in the government's most recent

1    superseding indictment.  And individually these new

2    assaults and new engagement with officers may not seem

3    that monumentous.  But when you look at the perspective of

4    where the crowd was moving, how the crowd was pushing back

5    the police line and then the defendant's subsequent

6    actions at the lower West Terrace, the Court can see that

7    the defendant chose to engage in this battle and that he

8    was violent throughout the day.  That he chose to try to

9    physically assault or engage with those on the other side

10   of that battle.  And that is a battle he still perceived

11   after -- to be continuing after his assaults.  He thought

12   he was hurt after the riot.  He thought he was fighting

13   the tyranny.  It is why he is still a danger and why the

14   defense's new evidence we would say is not material and

15   does not mitigate his dangerousness to the community and

16   moreover, it doesn't actually even touch on anything to do

17   with his risk of flight.  I don't think we need to

18   reiterate his risk of flight.  We've gone over that

19   initially in our first round of briefings and when we were

20   first before the Court.  But nothing has changed there.

21          THE COURT:  What about counsel's point about the

22   demonstrator who was ultimately -- who ultimately died?

23   What about that point, counsel?

24          MS. KUKOWSKI:  Your Honor, I think we stand by

25   our original point.  We never stated that Mr. Sabol

1      himself was responsible for her death --

2              THE COURT:  Right.

3              MS. KUKOWSKI:  -- and we, frankly, don't even

4      know what her status was at that point when she was on the

5      ground.  But what we do know is police officers could not

6      get to her because they were dealing with their own

7      assaults and they were dealing with trying to recover

8      their officers who were on the ground and had been dragged

9      out into the crowd.  That is what the defendant's conduct

10     affected, was their ability to respond.

11             THE COURT:  Right.  Right.

12             MS. KUKOWSKI:  That rioter very well may have

13     perished even if officers had gotten to her minutes

14     earlier.  But the fact remains, they couldn't have because

15     of his conduct.

16             THE COURT:  And the fact that he was in close

17     proximity to where she was laying on the pavement.

18             MS. KUKOWSKI:  Yes.

19             THE COURT:  All right.  Counsel, thank you.

20     Very briefly, counsel, without being repetitive.

21             MR. CIROCCO:  Thank you, judge.  Judge, just in

22     regards to the death of the protestor, Your Honor did find

23     at the initial hearing that Mr. Sabol's actions were

24     responsible for her death and I still submit that I

25     believe the video clearly shows that it had nothing to do

1    with her dying.

2              And, judge, we are not here today -- the

3    government relies on the weight of the evidence, the

4    weakest factor.  We are not here today to determine if

5    Jeffrey Sabol is guilty or not guilty --

6              THE COURT:  I understand all that.  You made

7    that point three or four times.  But just go ahead and

8    respond.

9              MR. CIROCCO:  January 6th is over.  That's the

10   only time that he's ever been violent or ever been

11   involved with law enforcement ever in his life.  Where is

12   the articulable threat that he will be a danger if he is

13   on home detention if he can't leave the house?  What do

14   they cite in his past or what is there to show that he

15   would be a danger, judge?  No ties to groups.  No past

16   violence, judge.  Nothing.  We are here to determine

17   dangerousness and I submit that they have not met that

18   high burden, judge.  Nothing, nothing in his past shows

19   that he is a danger if he is released while he is still

20   innocent judge.  Nothing.  Thank you judge.

21             THE COURT:  All right.  Fine.  All right.  I'll

22   give it some more thought.  I'm not inclined to grant the

23   motion.  But in fairness, I want to consider written

24   submissions along with the oral presentations today.  So

25   I'll continue this hearing for a couple of weeks.

1          What about going forward though?  How do the

2     parties wish to proceed?  Are we at the point now to

3     select a trial date or not?  Are you still in discovery?

4          MS. KUKOWSKI:  Your Honor, the government still

5     is in discovery and has been providing ongoing discovery

6     to defense counsel.  Ms. Kearney has turned over several

7     rounds this past week.  And we know that the federal

8     public defenders are working to make sure that the CJA Bar

9     retained counsel have access to the various databases, the

10    electronic databases and so --

11         THE COURT:  How is that coming along?  I know

12    that's been a monumental project.  I know that.  I hear it

13    from all the other attorneys.  But any relief in sight

14    with respect to finality?

15         MS. KUKOWSKI:  I think so, Your Honor.  We are

16    at this point like I said now where we are actually

17    turning over rather voluminous data sets to defense

18    counsel.  And there's just a couple of hiccups in terms of

19    making sure -- I shouldn't say hiccups.  But we're

20    continuing in a process working with FPD to make sure

21    everyone -- all the defense bar does have access to

22    relative databases.  But it's been ongoing and I would be

23    confident in saying it's been amped up quite a bit over in

24    the last couple of weeks.

25         THE COURT:  What about the problems associated

1    with the attorneys being able to view the videos with

2    their clients who are detained?  I know there are problems

3    with the Department of Corrections that -- I mean we're

4    all aware of that.  I'm the chair of a community that

5    deals with those problems and it's very frustrating

6    because we're constantly hearing from the attorneys that

7    they -- it's taken four to six weeks to get a laptop and

8    there are problems with the attorneys being able to view

9    the exhibits --

10            THE DEFENDANT:  Permission to address the Court,

11   sir, please?

12            MR. CIROCCO:  Jeff --

13            THE COURT:  Wait.  Let me just hear from

14   counsel, from the government's attorney first.  I'll give

15   you a chance.  All right.

16            MS. KUKOWSKI:  Thank you, Your Honor.  We did

17   check in with our discovery coordinator on this point and

18   can represent to the Court that the government is working

19   in collaboration with the Federal Public Defender Service,

20   you know, the associated defense bar, but chiefly with the

21   Federal Public Defender Service to increase access by

22   incarcerated defendants to voluminous materials.

23            My understanding is that FPD is awaiting some

24   additional technology and logistical information and then

25   should be scheduling a meeting with the jail and is going

1    to have more information about this over the next couple
2    of weeks.  And so here what I understand is just working
3    to get the technological platforms in place.  But that FPD
4    is working on that.  We are collaborating with them and
5    then we hope to be reaching out to the jail shortly.
6            THE COURT:  All right.  All right, counsel.
7    Yes, Mr. Sabol, go right ahead, sir.
8            MR. CIROCCO:  Jeff, do you want to talk to me
9    first in a breakout room and --
10           THE DEFENDANT:  No.  This is just really quick.
11   It's just that there are approximately --
12           THE COURT:  Well, wait a minute.  Wait a minute.
13   Mr. Sabol, your attorney doesn't -- he's getting very
14   anxious now because he doesn't know what you're going to
15   say and he doesn't want you to hurt yourself.  Nor do I.
16           THE DEFENDANT:  I understand.
17           THE COURT:  So I'm going to ask Mark to put you
18   both in a breakout room.  Okay?
19           THE DEFENDANT:  Yes, sir.
20           THE COURT:  All right.  Okay.  Talk to your
21   attorney.  Take as much time as you need, but he doesn't
22   know and I don't want you to say -- believe me, there have
23   been other cases where people have, you know, they've say
24   all sort of things that if there's a trial, you know, the
25   government can use it against them, you know.  For

1    instance, if someone says I'm sorry, I apologize for what

2    I did.  I mean that has evidentiary value.  So I'm just

3    looking out for your interest.  I can't as my namesake

4    once said, I can't be a potted plant here.  So I got to

5    protect you.  All right.  So I'm going to put you both in

6    a breakout room.

7                THE DEFENDANT:  Very good.

8                THE COURT:  All right.  Mark, just let me know

9    when counsel are ready.  Okay?

10               THE CLERK:  Sure, Your Honor.

11               THE COURT:  Okay.  I'll be right here, Mark.

12   I'm just going to stop the video and mute.

13               (Defense counsel conferred with the defendant in

14   a breakout room.  After which, the following ensued:)

15               THE COURT:  All right.  Counsel, did you have

16   enough time to meet with your client?

17               MR. CIROCCO:  I did, judge.  His prior attorney

18   did send videos to the jail that were received by the jail

19   approximately eight weeks ago and he has not received any

20   notice about an attempt to view them or has any idea when

21   he will be attempt to view them.  He just wanted to place

22   that on the record.  And he did want me to also just ask

23   as I did for Your Honor to -- the videos, he really relies

24   on the video evidence that was submitted today.

25               THE COURT:  Right.  No.  I understand that.  So

1    his attorney sent videos to him by way of mail.  Do we

2    know whether they were received or not by the D.O.C.?

3            MR. CIROCCO:  They were, judge.  I actually

4    received an email from them the day I submitted my brief

5    that they were received.

6            THE COURT:  Any explanation as to why they have

7    not been shared with your client?

8            MR. CIROCCO:  That's the only information I

9    received, judge.  What was a little weird to say the least

10   was they were sent by his prior attorney a month or two

11   before that I believe and his office is very near to the

12   jail.  I don't know what took so long for them to get in

13   the hands of the jail.  That's the only information I

14   have, judge.

15          THE COURT:  All right.  All right.  Thank you.

16          All right.  This hearing has been helpful.  It's

17   always helpful to hear the argument along with viewing the

18   tape.  So I need a little more time.  I've read

19   everything.  I've looked at the videos that have been

20   sent.  I want to look at them again with my law clerk.

21          So I'm thinking now we should probably resume

22   this hearing in two weeks so that will give me enough

23   time.  We're all overwhelmed with all these cases.  We

24   have at least four or five hearings today, four or five

25   cases and it's like being in -- I loved it when I was in

1    Superior Court and I've been gone for years.  But it's

2    like I'm back in Superior Court again, which is not a bad

3    thing.  I'm not knocking Superior Court.  Don't tell the

4    chief judge I was knocking that court.  I loved it when I

5    was there.  But I'm not there.  So, you know, it's

6    stretching our time.  So I just need some more time.  I

7    want to be fair to Mr. Sabol.  And I just need some more

8    time to look at the tapes again and to consider the

9    arguments and consider the presentation this morning.

10         So having said all that and recognizing that

11   virtual rooms have been decreased from five to two at the

12   D.C. Jail, I'm going to ask Mark to suggest a date

13   probably within the next two-week timeframe, Mark, that's

14   convenient for everyone and available at the jail.

15         THE CLERK:  Court's indulgence.

16         THE COURT:  Sure.

17         THE CLERK:  Judge Sullivan, the earliest I

18   can -- Your Honor, the next date I can get Mr. Sabol back

19   here will be on October 27th at 4:15.

20         THE COURT:  If that's the best we can do, that's

21   the best we can do.  Are the attorneys available then?

22         MR. CIROCCO:  What was the time again,

23   Mr. Coates?

24         THE CLERK:  4:15 p.m.

25         THE COURT:  On October -- did you say the 27th,

1    Mark?

2               THE CLERK:  The 27th.  That's correct, Your

3    Honor.

4               MR. CIROCCO:  I'm fine with that date, judge.

5               THE COURT:  Okay.  What about the government's

6    attorneys?

7               MS. KUKOWSKI:  I will be available.  Ms. Kearney

8    is going to be in a in-person sentencing, but she says she

9    should be available as well.  Sorry, Ms. Kearney, for

10   speaking for you.

11              THE COURT:  All right.  Fine.  What I'll do is

12   I'll keep the motion under advisement and give it some

13   more consideration and look at the tapes one more time.

14              It's difficult looking at those videos.  You

15   know, the attorneys are very familiar with everything

16   that's going on.  But the judges aren't and, you know, we

17   get these snippets.  So it takes a little while to figure

18   out just what the movements are.  But you both have

19   done -- everyone has done a great job in assisting the

20   Court in trying to figure out what's taking place.  So I

21   appreciate that.  But I want to be fair to both sides and

22   to take another look at those videos as well.

23              All right.  Anything further that we need to

24   discuss today?

25              MR. CIROCCO:  Judge, the only thing that I would

1    ask Mr. Sabol's initial date was for a status at the end

2    of September, that I believe was carried with today and I

3    believe that that status just from looking at the PACER

4    that the speedy trial clock was tolled and we are just

5    continuing.

6              THE COURT:  Yeah.  Well, the clock is tolled

7    anyway because of the motion that's pending.  Yeah.

8    That's fine.  And, look, believe me, I'm not going to, you

9    know, lose track of this motion.  It's a very important

10   one to Mr. Sabol.  It's important to the government.  It's

11   important to the Court as well.  So I'm going to resolve

12   if not before the next hearing, I will resolve the pending

13   motion at the next hearing.  But I'm going to try to

14   resolve it before the next hearing.

15             All right.  But vis-a-vis status if you'd like

16   to say anything or request anything, counsel, at this

17   time, go right ahead.

18             MR. CIROCCO:  No, judge.  I understand the

19   government is still providing discovery.  I've personally

20   gotten some thumbs the past week and --

21             THE COURT:  Well, let me ask you this.  What's

22   the process now?  Are you in Washington, D.C.?

23             MR. CIROCCO:  I'm not, judge.

24             THE COURT:  Okay.  So that really complicates

25   matters.  What is the process for your being able to view

1    the videos?  Is there some remote-sharing screen process

2    available at the jail for the attorneys who are out of

3    state?

4             MR. CIROCCO:  So, judge, the way that I have

5    been able since I've been retained by Jeff is when I have

6    video conferences with him, which are generally in

7    one-hour slots and the most I've been able to get I

8    believe has been two to three a week and I just screen

9    share and watch what video evidence that I think is at

10   least the most important that we need to review.

11            THE COURT:  So there is a process in place.

12   Well, that's good.  I'm glad to hear that.  What about the

13   tapes though that you've mentioned were sent to the jail

14   by your predecessor?  Do you have those?

15            MR. CIROCCO:  I have all that, judge.  He sent

16   me hard copies.  So Jeff can view them on his own time

17   other than besides when I have a video conference with

18   him.  That has been one of the issues, judge.  I believe

19   we've had maybe seven or eight total hours to view

20   discovery.  And there's -- I don't need to tell the Court

21   there's hundreds of hours of footage.

22            THE COURT:  I have no doubt about that.  So if

23   you're not present, your client has the opportunity to

24   view the videos by himself.  Is that correct?

25            MR. CIROCCO:  Well, he is shaking his head,

1    judge.  He should.  I guess that was one --

2              THE COURT:  Oh, okay.  All right.

3              MR. CIROCCO:  These videos, these disks, either

4    they are in hard copy, judge, these hard copies are at the

5    jail and they've been there for about two months and he

6    has or I apologize, judge, about a month and he hasn't had

7    an opportunity or no one has said to him, hey, you have

8    discovery here, let's try to view it, let's give you an

9    opportunity to view it.

10             THE COURT:  All right.  It's complicated.  And

11   this is a complaint we're hearing from lots of folks.  But

12   we're also hearing that there are available tablets and

13   laptops.

14             And, Mr. Sabol, you can just shake your head.

15   Am I correct in saying that those are available to you,

16   maybe not upon request, but pursuant to some sort of

17   process?  Is that correct?  Are we being told correctly?

18             THE DEFENDANT:  They have been available to some

19   people.

20             THE COURT:  All right.  So I don't want to --

21   counsel, I don't want to put you in an awkward position of

22   have your client respond, but this is kind of important.

23   I'm trying to help him.  So I'd like to get some answers

24   from him about just what the process is from his

25   perspective.

1          MR. CIROCCO:  I understand, judge, and I have no
2  problems about that --
3          THE COURT:  We hear one thing from D.O.C. like
4  essentially, there are no problems, you know.  And we hear
5  something else from defense attorneys.
6          Let me ask you this, Mr. Sabol, if you wanted to
7  look at the videos that we looked at today during this
8  hearing, what would the process be for you to try and view
9  those videos?
10          THE DEFENDANT:  I would have to somehow send a
11  request up the chain of command to dates that I have been
12  unable to get any CD's or a laptop.
13          THE COURT:  Are you aware that other residents
14  are able to get CD's and/or laptops?
15          THE DEFENDANT:  Yes, sir.  There are two people
16  that have been able to get that in the pod that I am in.
17          THE COURT:  Okay.  Do you have an opinion or
18  a -- yeah -- do you have an opinion as to why they've been
19  successful in getting access to their videos and you've
20  not been successful in getting access to your videos?
21          THE DEFENDANT:  I think because of the pressure
22  that their judge has put on the jail, sir.
23          THE COURT:  Well, I'm not immune to putting
24  pressure on the jail, counsel.  So if you want to file a
25  motion or something, you know -- and give it some thought.

1    Why don't you think about filing an appropriate motion?

2    And I'm happy to do whatever I can.  I mean, you know,

3    we've had conversations with jail personnel as late as

4    last week and I know other judges have as well.  But if

5    you want to give some thought to an appropriate remedy,

6    believe me, I'm all for assisting you and your client

7    gaining access to those videos.  But give it some thought

8    and talk to the other defense attorneys.  I mean it would

9    be great if defense attorneys could come up with a unified

10   proposal and ask the judges, you know, this is what we

11   would like to have done, judges, and believe me, we'll

12   help you to the extent we can.

13           It gets a little tricky because the Department

14   of Corrections is not directly under the authority of the

15   federal court.  It's a D.C. agency.  We commit individuals

16   to the custody of the Attorney General and they're housed

17   at the D.C. Jail and other places.  But if you want to

18   give it some thought and file an appropriate motion

19   suggesting a remedy to assist you and your client, go

20   right ahead.

21           MR. CIROCCO:  Understood, judge.  And just so

22   Your Honor is aware, in my motion that was here today, I

23   did ask that and I guess it would have to be submitted

24   differently.  But I did ask that if his motion for release

25   was denied that he does be afforded the opportunity for

1    access to allow the opportunity of discovery.

2            THE COURT:  All right.  Okay.  Have you spoken

3    with anyone at the jail?

4            MR. CIROCCO:  Judge, the only people I've spoken

5    with at the jail was when I was coordinating video

6    conferences.

7            THE COURT:  All right.  One suggestion that I

8    have is to speak with Eric Glover who is the general

9    counsel at the jail.  I've found Mr. Glover to be a very

10   responsible attorney and I have always suggested to

11   attorneys who appear before me if they have a problem with

12   their client having health issues or, you know, access to

13   the library or whatever, tell them.  Speak to Mr. Glover

14   first and when you speak to him, tell him that you've

15   spoken to me and that I have encouraged you to reach out

16   to him and that may help you, counsel.

17           Actually, you know what, I just suggested you

18   file a motion.  Talk to Glover first because when the

19   attorneys tell me they want to file a motion for access to

20   a doctor or they have a complaint about maybe that their

21   client needs to see a dentist or whatever, I say call Eric

22   first before you file anything.  And I never get motions

23   so I have to assume they've been successful in working

24   through whatever that problem is.  So I encourage you to

25   reach out to Eric first.  He's a general counsel.  He'll

1    talk to you, especially when you tell him that we had this

2    hearing and that I strongly encouraged you to reach out to

3    him before you file a motion.  All right?

4              MR. CIROCCO:  Understood, judge.

5              THE COURT:  All right.  If that doesn't help, go

6    ahead and file your motion.  But hold off on the motion

7    first.  Give him a call and see what you can accomplish

8    that way.  And remind him that materials have been sitting

9    there at the jail for you say a month?

10             MR. CIROCCO:  Yes, judge.  I received an email

11   from the jail that I believe it was the -- the day I filed

12   my brief, judge, I forget what date that was.  I think it

13   was August 24th maybe, but I received an email that day

14   stating that the materials were received by the jail.

15             THE COURT:  Okay.  Well, reach out to him and if

16   you have the time to do it today, reach out to him.  He's

17   very reasonable.  And I have a sneaky suspicion you might

18   get some relief that you are seeking by doing -- by

19   following that procedure.  And mentioning the fact that I

20   strongly encourage.  Use those words that Judge Sullivan

21   strongly encouraged me to reach out to you before I file

22   the motions that I'm planning on filing or something,

23   whatever you want to say.  But you got to be crafty about

24   it.  You got to be a lawyer.  You got to be an advocate

25   and I'm sure you will be.  But use my name freely.  Okay?

1           MR. CIROCCO:  Understood, judge.

2           THE COURT:  It's not going to hurt you.

3           All right.  Anyone else?  Anything else we need

4    to talk about today?  All right.  So I am continuing the

5    hearing.  The motion is under advisement.  We'll talk

6    again -- Mark, I've been talking too much.  What's that

7    date and time again?  Let's confirm and make sure we're

8    all on the same page.

9           THE CLERK:  Your Honor, I just realized that it

10   was like a cancellation right before the 4:15.  So if we

11   can start this at 3:45 p.m. on October 27th?

12          THE COURT:  Is that better for everyone?

13          MR. CIROCCO:  That's fine with me, judge.

14          MS. KUKOWSKI:  That's fine with the government.

15          THE COURT:  I think Ms. Kearney has a

16   sentencing.  Does that interfere with your sentencing,

17   counsel?

18          MS. KEARNEY:  I think I'll be done by then.

19          THE COURT:  All right.  Okay.  All right.  3:45.

20   All right.  Great.  Everyone, take care.  Mr. Sabol, take

21   care of yourself, sir.  All right?

22          THE DEFENDANT:  Thank you, judge.

23          THE COURT:  All right.  Okay.  Everyone, thank

24   you.  Take care and be safe and be healthy.

25          (Proceedings concluded.)

1                    CERTIFICATE OF REPORTER

2

3          I, Lisa K. Bankins, an Official Court Reporter

4    for the United States District and Bankruptcy Courts for

5    the District of Columbia, do hereby certify that I

6    reported, by machine shorthand, in my official capacity,

7    the proceedings had and testimony adduced upon the

8    sentencing in the case of the United States of America

9    versus Jeffrey Sabol, Criminal Number 21-035, in said

10   court on the 7th day of October, 2021.

11

12         I further certify that the foregoing 55 pages

13   constitute the official transcript of said proceedings, as

14   taken from my machine shorthand notes, together with the

15   backup tape of said proceedings to the best of my ability.

16

17         In witness whereof, I have hereto subscribed my

18   name, this 9th day of November, 2021.

19

20

21                              Lisa K. Bankins

22                              Lisa K. Bankins
                                Official Court Reporter
23

24

25

MR. CIROCCO: [53]
2/12 2/23 3/4 3/15 3/23
4/1 4/11 4/17 4/20 4/24
5/12 5/16 5/22 6/5 6/13
7/1 7/10 7/16 8/3 8/6
8/9 8/12 8/14 8/18 8/21
8/23 9/1 11/23 14/17
32/1 39/21 40/9 42/12
43/8 44/17 45/3 45/8
46/22 47/4 47/25 48/18
48/23 49/4 49/15 49/25
50/3 51/1 52/21 53/4
54/4 54/10 55/1 55/13
MS. KEARNEY: [2]  2/9
55/18
MS. KUKOWSKI: [30]
2/6 22/4 26/10 27/14
27/18 28/16 30/7 30/11
30/14 30/19 31/21 31/25
32/2 32/7 32/9 32/25
33/9 33/12 33/16 34/23
37/16 38/24 39/3 39/12
39/18 41/4 41/15 42/16
47/7 55/14
THE CLERK: [7]  2/2
44/10 46/15 46/17 46/24
47/2 55/9
THE COURT: [89]
THE DEFENDANT: [18]
2/18 4/15 8/4 8/10 8/13
8/15 8/19 8/22 42/10
43/10 43/16 43/19 44/7
50/18 51/10 51/15 51/21
55/22

**0**

00035 [1]  1/3
035 [2]  2/3 56/9
07011 [1]  1/17

**1**

10:00 [1]  1/6
11 [2]  17/7 29/24
11-second [1]  30/15
13 [1]  32/15
14 [2]  30/15 30/19
14-second [1]  31/22
16:27:30 [1]  14/19
16:27:31 [1]  7/12
16:27:36 [1]  14/22
16:27:44 [1]  9/8
18 [1]  16/19
19-second [1]  32/18

**2**

20 [1]  11/2
20001 [1]  1/21
2021 [5]  1/5 12/21 13/9
56/10 56/18
20530 [1]  1/13
21-035 [2]  2/3 56/9
21-cr-00035 [1]  1/3

**24th** [1]  54/13
**27** [1]  14/8
27th [4]  46/19 46/25
47/2 55/11
2:04 [4]  27/7 33/2 34/1
36/8
2:20 [1]  23/25
2:23 [1]  23/14
2:23 p.m [2]  23/25 24/2
2:27 [2]  33/25 33/25
2:27 p.m [1]  24/5
2:30 [2]  33/17 37/1
2:33 [5]  24/6 33/25
34/2 36/16 36/24

**3**

30 feet [1]  11/3
305 [1]  1/16
3142 [2]  16/19 22/12
333 [1]  1/20
3:45 [2]  55/11 55/19

**4**

4:15 [3]  46/19 46/24
55/10
4:27 [5]  4/5 24/23 26/1
26/15 36/9
4:30 [3]  24/23 26/1
36/10

**5**

55 [1]  56/12
555 [1]  1/12

**6**

600 [1]  1/16
6th [4]  4/5 19/14 20/3
40/9

**7**

70's [1]  18/3
7th [1]  56/10

**8**

80's [1]  18/3

**9**

9th [1]  56/18

**A**

a.m [1]  1/6
A.W [5]  13/21 14/10
37/6 37/6 37/7
A.W.'s [1]  13/18
ability [2]  39/10 56/15
able [14]  10/17 26/16
27/16 30/21 32/18 32/22
32/23 42/1 42/8 48/25
49/5 49/7 51/14 51/16
about [33]  3/2 4/3 4/21
8/12 8/14 10/23 16/22
17/7 19/16 22/22 24/4
25/3 26/16 27/3 32/17
38/21 38/21 38/23 41/1

**41/25 43/1 44/20 47/5
49/18 49/22 50/5 50/6
50/24 51/2 52/1 53/20
54/23 55/4
above** [4]  6/7 6/20 8/10
15/7
access [9]  41/9 41/21
42/21 51/19 51/20 52/7
53/1 53/12 53/19
accompanied [1]  36/8
accomplish [1]  54/7
accurate [2]  5/5 24/24
accurately [1]  4/4
action [5]  7/23 19/25
25/15 28/24 34/10
actions [6]  14/4 14/13
16/2 22/19 38/6 39/23
activity [1]  12/21
actually [11]  5/5 6/9
6/20 10/6 15/10 23/19
37/13 38/16 41/16 45/3
53/17
additional [2]  36/19
42/24
address [2]  6/1 42/10
adds [1]  13/2
adduced [1]  56/7
adequate [1]  23/4
admit [1]  36/5
advisement [2]  47/12
55/5
advocate [1]  54/24
affected [1]  39/10
afforded [1]  52/25
after [11]  4/19 9/9
9/12 9/22 10/18 22/19
24/17 38/11 38/11 38/12
44/14
again [22]  11/6 20/13
20/16 20/18 20/25 22/15
28/11 29/18 31/2 31/16
34/4 35/23 36/24 37/4
37/11 37/24 45/20 46/2
46/8 46/22 55/6 55/7
against [14]  10/13
10/13 12/10 12/10 21/2
21/17 24/3 24/5 24/13
24/18 25/15 30/4 36/12
43/25
agency [1]  52/15
ago [1]  44/19
ahead [9]  3/1 3/2 7/9
35/17 40/7 43/7 48/17
52/20 54/6
aid [1]  14/10
air [2]  6/10 6/11
Alex [3]  1/15 1/15 2/12
all [63]
allegation [4]  13/21
14/4 16/2 16/9
alleged [3]  19/7 19/9
21/9
allegedly [2]  3/19 20/7
alleges [1]  14/9

**A**

alleging [1]   14/24
allow [1]   53/1
almost [1]   37/5
along [5]   16/3 17/8
40/24 41/11 45/17
already [3]   22/23 24/3
24/18
also [15]   5/4 11/19
18/5 18/9 19/9 19/11
19/15 22/13 22/19 22/25
26/25 34/11 36/18 44/22
50/12
altercation [3]   24/6
25/20 27/6
although [1]   18/21
always [2]   45/17 53/10
am [13]   4/21 5/16 6/7
7/13 8/23 14/17 14/18
21/22 21/22 27/17 50/15
51/16 55/4
AMERICA [3]   1/3 2/3
56/8
amount [3]   13/3 13/20
17/17
amped [1]   41/23
analyzed [1]   22/13
angle [1]   28/22
ankle [1]   17/14
another [6]   14/5 14/13
16/3 28/5 37/10 47/22
answer [1]   21/19
answers [1]   50/23
anxious [1]   43/14
any [15]   6/11 6/16 6/19
8/5 12/13 13/19 18/1
18/13 19/13 21/12 41/13
44/19 44/20 45/6 51/12
anybody [3]   20/20 20/21
20/24
anyone [3]   15/25 53/3
55/3
anything [11]   4/9 4/15
8/9 15/8 18/25 38/16
47/23 48/16 48/16 53/22
55/3
anyway [1]   48/7
apologize [6]   3/23 4/11
14/21 19/12 44/1 50/6
Appeals [4]   19/19 20/1
22/16 23/22
Appeals' [1]   23/16
appear [1]   53/11
APPEARANCES [1]   1/10
appears [5]   3/1 6/3
10/18 10/19 18/20
appreciate [1]   47/21
appreciated [1]   3/7
appropriate [3]   52/1
52/5 52/18
appropriately [1]
23/16
approximately [12]   4/5

20/7 23/14 24/23 25/6
27/4 31/18 32/15 32/15
36/15 43/11 44/19
April [1]   10/10
are [55]   2/17 2/18 8/6
8/15 8/19 10/17 12/1
12/2 17/25 18/2 18/18
20/9 21/1 21/20 22/11
22/12 23/25 26/22 27/23
28/1 32/18 34/5 36/16
37/2 40/2 40/4 40/16
41/2 41/3 41/8 41/15
41/16 42/2 42/2 42/8
43/4 43/11 44/9 46/21
47/15 47/18 48/4 48/22
49/2 49/6 50/4 50/4
50/12 50/15 50/17 51/4
51/13 51/14 51/15 54/18
area [2]   26/13 27/2
aren't [1]   47/16
argue [1]   3/12
argued [2]   15/21 24/10
arguing [2]   15/19 24/25
argument [10]   3/7 3/9
5/25 6/5 12/9 13/14
16/12 16/13 18/6 45/17
arguments [1]   46/9
arm [1]   30/12
around [7]   9/13 24/5
28/3 34/1 35/20 37/17
37/21
articulable [3]   12/18
16/6 40/12
as [43]   3/17 4/2 5/2
5/2 5/9 7/11 8/3 10/16
11/14 11/20 12/6 12/11
12/19 12/23 15/14 15/16
17/9 17/16 18/2 20/5
22/6 22/10 23/2 26/11
26/15 26/18 34/1 34/15
35/8 37/23 43/21 43/21
44/3 44/23 45/6 47/9
47/22 48/11 51/18 52/3
52/3 52/4 56/13
ask [14]   3/19 18/4 19/1
29/25 35/7 43/17 44/22
46/12 48/1 48/21 51/6
52/10 52/23 52/24
asking [4]   17/22 21/21
21/22 21/23
assault [16]   5/25 6/17
9/7 23/18 24/3 24/4
25/20 25/22 29/3 31/3
33/25 34/1 36/5 36/8
36/8 38/9
assaulting [3]   7/7 9/14
9/19
assaultive [8]   20/1
20/23 24/18 25/10 33/2
33/24 35/16 36/19
assaults [11]   23/20
23/24 25/9 25/25 26/15
29/6 31/6 36/9 38/2
38/11 39/7

assertion [2]   15/23
assertive [1]   35/24
assessments [1]   22/11
assist [2]   6/17 52/16
assisting [2]   47/19
52/6
associated [2]   41/25
42/20
assume [3]   2/19 5/15
53/23
attack [1]   29/1
attacked [2]   11/4 14/11
attempt [9]   7/7 16/14
16/14 16/17 17/2 18/10
18/12 44/20 44/21
attempting [3]   6/16
11/12 36/21
attention [4]   3/3 16/19
26/20 26/23
attorney [9]   18/5 42/14
43/13 43/21 44/17 45/1
45/10 52/16 53/10
Attorney's [1]   1/11
attorneys [13]   41/13
42/1 42/6 42/8 46/21
47/6 47/15 49/2 51/5
52/8 52/9 53/11 53/19
audio [1]   2/14
August [1]   54/13
August 24th [1]   54/13
AUSA [2]   2/6 2/10
authority [1]   52/14
available [9]   25/21
46/14 46/21 47/7 47/9
49/2 50/12 50/15 50/18
Avenue [2]   1/16 1/20
awaiting [1]   42/23
aware [6]   12/12 19/7
20/5 42/4 51/13 52/22
away [4]   6/21 11/3
11/15 15/3
awkward [1]   50/21

**B**

B.M [2]   14/10 25/13
back [19]   6/4 6/6 6/7
6/20 12/18 14/17 25/8
29/12 29/12 29/16 29/23
32/19 34/9 35/9 35/19
36/24 38/4 46/2 46/18
background [1]   27/19
backpack [9]   23/8 23/10
28/6 28/8 28/14 29/20
30/17 31/17 32/14
backup [1]   56/15
bad [2]   21/10 46/2
bag [5]   5/13 9/10 19/23
19/24 20/15
Bankins [4]   1/19 56/3
56/21 56/22
BANKRUPTCY [2]   1/1 56/4
bar [3]   41/8 41/21
42/20
basically [1]   19/2

**B**

**baton [18]** 3/19 4/8 4/25 5/4 5/24 5/25 6/1 6/3 6/9 6/19 6/23 9/16 9/17 9/17 13/21 13/24 25/11 37/7
**battle [14]** 10/13 10/22 10/22 11/3 11/11 12/10 12/24 24/13 24/17 25/10 36/13 38/7 38/10 38/10
**be [60]**
**bear [5]** 23/7 23/8 23/9 23/13 23/18
**beard [1]** 11/21
**because [26]** 5/17 6/7 8/24 11/8 12/5 13/8 14/6 15/5 16/5 20/2 21/1 28/23 29/13 34/7 34/10 35/1 35/8 36/23 39/6 39/14 42/6 43/14 48/7 51/21 52/13 53/18
**been [40]** 12/22 12/22 13/10 14/8 16/1 21/2 22/23 33/21 34/14 35/5 36/6 36/17 37/25 39/8 40/10 40/10 41/5 41/12 41/22 41/23 43/23 45/7 45/16 45/19 46/1 46/11 49/5 49/5 49/7 49/8 49/18 50/5 50/18 51/11 51/16 51/18 51/20 53/23 54/8 55/6
**before [15]** 1/8 3/10 13/4 24/7 24/22 34/17 38/20 45/11 48/12 48/14 53/11 53/22 54/3 54/21 55/10
**began [1]** 25/5
**beginning [5]** 8/16 29/11 31/18 32/3 32/20
**behalf [1]** 3/6
**behavior [1]** 20/3
**behind [5]** 12/1 15/17 29/21 34/19 37/13
**being [18]** 6/23 10/24 11/4 11/4 11/11 12/2 16/5 17/14 21/2 25/24 26/17 37/2 39/20 42/1 42/8 45/25 48/25 50/17
**believe [14]** 5/1 13/2 18/16 39/25 43/22 45/11 48/2 48/3 48/8 49/8 49/18 52/6 52/11 54/11
**below [1]** 5/4
**BENET [2]** 1/12 2/10
**besides [1]** 49/17
**best [3]** 46/20 46/21 56/15
**better [2]** 5/20 55/12
**between [2]** 23/16 27/7
**Biden [1]** 12/22
**biggest [1]** 9/24
**binding [1]** 19/6

**bit [2]** 30/9 41/23
**black [4]** 30/1 50/8 34/20 37/16
**blood [2]** 13/17 13/19
**blue [8]** 15/11 26/24 27/12 27/21 28/6 28/13 29/19 30/11
**blurred [1]** 30/9
**body [8]** 5/8 7/12 8/16 9/11 29/9 30/24 34/15 37/10
**book [5]** 5/13 9/10 19/22 19/24 20/14
**both [7]** 2/13 3/8 17/16 43/18 44/5 47/18 47/21
**bottom [10]** 4/7 9/9 9/12 10/25 11/18 15/2 26/12 28/16 33/20 34/3
**Boylan [5]** 14/23 15/3 15/7 15/9 15/10
**brag [1]** 19/15
**breakout [4]** 43/9 43/18 44/6 44/14
**brief [16]** 3/8 3/9 4/2 7/11 9/8 10/4 10/9 10/10 10/11 13/17 14/23 17/16 17/21 23/3 45/4 54/12
**briefings [1]** 38/19
**briefly [3]** 16/10 33/3 39/20
**bring [3]** 3/20 16/18 29/16
**bringing [1]** 23/18
**brings [1]** 23/25
**brought [2]** 21/2 23/7
**buffering [5]** 27/13 31/20 31/24 32/6 32/12
**building [1]** 20/17
**burden [5]** 16/18 17/3 21/6 21/24 40/18
**button [2]** 37/12 37/13
**BWC [1]** 32/5

**C**

**C.O.P.D [1]** 18/4
**C.W.'s [2]** 5/8 7/12
**call [2]** 53/21 54/7
**cam [4]** 5/8 7/12 8/16 10/4
**came [2]** 19/18 19/21
**camera [8]** 15/17 26/4 29/9 30/24 33/4 34/15 36/25 37/10
**camouflage [3]** 28/3 28/12 37/18
**can [51]** 3/20 5/2 6/22 9/3 9/10 10/17 11/14 11/20 14/25 15/14 19/1 19/22 26/7 26/16 26/25 27/10 28/1 28/11 28/23 29/14 29/18 30/5 30/8 30/16 31/8 31/15 32/4 32/8 33/10 33/16 34/21

34/23 34/24 35/9 36/3 36/19 36/25 37/13 38/6 42/18 43/25 46/18 46/18 46/20 46/21 49/16 50/14 52/2 52/12 54/7 55/11
**can't [7]** 4/9 4/14 6/19 31/23 40/13 44/3 44/4
**cancellation [1]** 55/10
**capacity [1]** 56/6
**Capitol [8]** 11/12 19/10 19/21 25/6 26/4 26/5 26/19 33/3
**care [3]** 55/20 55/21 55/24
**carried [1]** 48/2
**carrying [1]** 28/4
**case [15]** 2/2 3/10 16/24 19/3 19/18 19/19 21/3 22/12 22/18 22/24 23/24 24/1 24/21 36/9 56/8
**cases [5]** 22/7 36/18 43/23 45/23 45/25
**CD's [2]** 51/12 51/14
**celebrate [1]** 20/17
**celebrating [1]** 19/17
**celebration [1]** 19/14
**center [3]** 27/20 29/19 35/5
**central [1]** 33/19
**certain [1]** 13/15
**certainly [1]** 6/18
**CERTIFICATE [1]** 56/1
**certified [1]** 12/22
**certify [2]** 56/5 56/12
**chain [1]** 51/11
**chair [1]** 42/4
**chance [1]** 42/15
**changed [1]** 38/20
**character [1]** 13/3
**characteristics [1]** 16/21
**charge [7]** 13/9 18/17 21/1 28/8 29/15 31/18 32/14
**charged [2]** 13/18 36/18
**charges [10]** 11/7 18/18 20/6 20/8 20/11 20/12 20/13 20/24 20/25 21/18
**charging [7]** 28/21 30/2 30/17 31/3 35/11 35/21 35/22
**check [1]** 42/17
**chemical [1]** 19/22
**chief [1]** 46/4
**chiefly [1]** 42/20
**choice [3]** 25/18 35/2 35/15
**choices [1]** 25/17
**chooses [1]** 36/11
**choosing [1]** 35/16
**choppy [1]** 9/3
**chose [4]** 25/22 28/25 38/7 38/8

**C**

Chutkan [1]   22/13
circling [2]   5/3 6/8
circumstances [1]
  13/12
circumstantial [3]   7/5
  9/5 9/21
Cirocco [4]   1/15 1/15
  2/13 2/20
cite [1]   40/14
cited [2]   16/24 19/4
citizenship [1]   18/1
CJA [1]   41/8
claiming [1]   22/19
clear [8]   4/7 6/9 7/6
  9/8 12/23 15/24 15/25
  21/13
clearly [7]   4/25 7/19
  12/15 14/14 16/8 30/16
  39/25
clerk [1]   45/20
client [23]   2/14 2/20
  3/6 5/10 5/12 6/14 7/4
  7/18 8/24 13/18 14/2
  17/21 18/19 21/18 21/22
  44/16 45/7 49/23 50/22
  52/6 52/19 53/12 53/21
client's [1]   5/19
clients [1]   42/2
Clifton [1]   1/17
clip [8]   28/19 30/21
  30/23 31/19 32/15 32/23
  37/10 37/11
clips [1]   28/1
clock [2]   48/4 48/6
close [2]   32/4 39/16
closer [1]   34/3
co [10]   5/1 7/20 19/21
  19/23 19/24 22/8 23/2
  23/9 23/12 23/14
co-defendant [10]   5/1
  7/20 19/21 19/23 19/24
  22/8 23/2 23/9 23/12
  23/14
Coates [1]   46/23
collaborating [1]   43/4
collaboration [1]
  42/19
COLLEEN [2]   1/11 2/7
COLUMBIA [3]   1/1 1/20
  56/5
come [3]   9/2 17/13 52/9
comes [1]   24/20
coming [2]   7/21 41/11
command [1]   51/11
commit [1]   52/15
communication [1]
  17/21
community [3]   20/4
  38/15 42/4
complaint [2]   50/11
  53/20
completely [2]   12/8

complicated [1]   50/10
complicates [1]   48/24
complying [1]   18/22
concede [1]   20/21
concern [2]   18/11 20/9
concerted [2]   25/15
  28/24
concluded [1]   55/25
conduct [16]   17/7 20/23
  22/14 23/7 23/12 23/18
  24/18 25/11 25/23 31/10
  33/2 35/16 36/19 37/24
  39/9 39/15
conference [1]   49/17
conferences [2]   49/6
  53/6
conferred [1]   44/13
confident [1]   41/23
confirm [2]   11/14 55/7
confirmed [1]   23/21
confirming [1]   11/24
Congress [2]   16/21 17/1
consequences [1]   36/11
consider [3]   40/23 46/8
  46/9
consideration [2]   18/5
  47/13
considered [1]   16/20
constantly [1]   42/6
constitute [1]   56/13
Constitution [1]   1/20
contact [1]   9/18
context [1]   31/5
continue [1]   40/25
continued [2]   25/10
  31/3
continues [1]   30/3
continuing [5]   34/10
  38/11 41/20 48/5 55/4
contrast [1]   35/25
contributed [1]   25/23
control [1]   26/22
convenient [1]   46/14
conversations [1]   52/3
convicted [1]   21/4
convictions [1]   20/2
coordinating [1]   53/5
coordinator [1]   42/17
cop [3]   35/13 36/1 36/2
copies [2]   49/16 50/4
copy [1]   50/4
corner [2]   28/17 34/3
correct [6]   2/22 2/23
  47/2 49/24 50/15 50/17
Corrections [2]   42/3
  52/14
correctly [1]   50/17
could [13]   17/4 21/15
  25/19 25/21 28/18 30/20
  34/14 35/3 35/5 35/18
  37/9 39/5 52/9
couldn't [1]   39/14
counsel [32]   2/5 2/11

24/10 24/25 27/13 31/23
38/23 39/19 39/20 41/6
41/9 41/18 42/14 43/6
44/9 44/13 44/15 48/16
50/21 51/24 53/9 53/16
53/25 55/17
counsel's [1]   38/21
counter [1]   18/7
counter-intuitive [1]
  18/7
counters [1]   24/13
couple [5]   16/15 40/25
  41/18 41/24 43/1
course [2]   18/11 31/6
court [87]
Court's [8]   5/23 26/2
  26/6 26/20 26/23 27/9
  33/9 46/15
COURTS [2]   1/1 56/4
cr [1]   1/3
crafty [1]   54/23
crescent [3]   26/25
  27/12 27/21
criminal [7]   1/3 2/2
  7/23 12/12 17/10 18/14
  56/9
crowd [18]   24/14 25/13
  25/19 28/20 28/23 29/15
  31/7 31/9 31/13 32/17
  32/19 33/18 34/8 34/25
  35/12 38/4 38/4 39/9
cue [1]   37/9
curiam [1]   23/3
currently [1]   2/15
cursor [1]   36/4
custody [1]   52/16

**D**

D.C [8]   1/4 1/13 1/21
  2/15 46/12 48/22 52/15
  52/17
D.O.C [2]   45/2 51/3
danger [15]   7/25 11/2
  11/9 12/6 12/8 13/25
  14/12 15/20 15/22 20/4
  36/10 38/13 40/12 40/15
  40/19
dangerous [1]   24/15
dangerousness [17]
  3/11 3/17 7/24 9/14
  11/2 12/6 14/1 15/20
  20/10 23/5 24/20 25/16
  31/10 34/10 37/8 38/15
  40/17
data [1]   41/17
databases [3]   41/9
  41/10 41/22
date [7]   41/3 46/12
  46/18 47/4 48/1 54/12
  55/7
dates [1]   51/11
day [13]   12/21 22/14

**D**

**day...** **[11]** 23/8 24/14 25/14 35/12 37/8 38/8 45/4 54/11 54/13 56/10 56/18
**dealing** **[2]** 39/6 39/7
**deals** **[1]** 42/5
**death** **[7]** 14/5 14/13 16/3 21/9 39/1 39/22 39/24
**decided** **[1]** 19/5
**decision** **[4]** 25/23 29/15 37/5 37/8
**decisions** **[2]** 22/10 36/11
**decreased** **[1]** 46/11
**defendant** **[56]** 1/6 1/15 2/13 5/1 7/20 10/12 19/5 19/7 19/21 19/23 19/24 22/8 22/18 22/24 23/2 23/9 23/12 23/14 23/20 24/3 24/12 24/16 24/25 25/4 27/4 27/7 28/6 28/20 29/14 29/20 30/3 30/6 30/22 31/1 31/4 31/11 31/17 32/13 32/19 34/8 34/19 34/24 35/2 35/10 35/16 35/21 36/4 36/7 36/10 36/16 36/20 37/4 37/14 37/22 38/7 44/13
**defendant's** **[12]** 22/20 24/14 28/24 30/1 30/16 31/2 31/10 33/2 33/23 37/7 38/5 39/9
**defendants** **[1]** 42/22
**Defender** **[2]** 42/19 42/21
**defenders** **[1]** 41/8
**defense** **[14]** 4/18 22/5 22/7 24/10 24/13 24/25 41/6 41/17 41/21 42/20 44/13 51/5 52/8 52/9
**defense's** **[1]** 38/14
**deliberate** **[1]** 35/24
**demonstrator** **[1]** 38/22
**denied** **[1]** 52/25
**dentist** **[1]** 53/21
**Department** **[2]** 42/3 52/13
**depicted** **[1]** 5/10
**detained** **[8]** 12/17 13/13 16/6 16/7 21/5 21/24 36/7 42/2
**detention** **[4]** 17/14 21/21 23/21 40/13
**detentions** **[1]** 22/11
**determine** **[6]** 7/24 11/9 13/7 13/7 40/4 40/16
**did** **[31]** 3/24 4/9 4/11 5/17 8/24 16/10 16/11 19/10 19/15 19/15 19/16 20/4 20/6 21/15 21/24

22/17 23/23 24/11 24/25 25/14 39/22 42/16 44/2 44/15 44/17 44/18 44/22 44/23 46/25 52/23 52/24
**didn't** **[9]** 3/23 5/15 17/5 20/16 20/17 20/20 20/20 20/21 35/4
**died** **[2]** 14/11 38/22
**different** **[3]** 27/15 29/3 35/15
**differently** **[1]** 52/24
**difficult** **[2]** 10/6 47/14
**difficulties** **[1]** 4/18
**diminimous** **[1]** 12/12
**direct** **[1]** 7/5
**directly** **[6]** 9/13 11/1 11/11 31/12 37/13 52/14
**discovery** **[8]** 41/3 41/5 41/5 42/17 48/19 49/20 50/8 53/1
**discuss** **[1]** 47/24
**discussed** **[1]** 19/23
**disks** **[1]** 50/3
**dismissed** **[1]** 11/7
**distinguishable** **[1]** 22/23
**distinguished** **[3]** 22/13 22/24 23/16
**district** **[8]** 1/1 1/1 1/9 1/19 1/20 19/6 56/4 56/5
**do** **[33]** 3/5 3/7 7/3 14/1 15/8 16/1 18/25 19/1 19/10 19/15 20/21 21/8 21/15 25/22 26/10 29/2 38/16 39/5 39/25 40/13 41/1 43/8 43/15 45/1 46/20 46/21 47/11 49/14 51/17 51/18 52/2 54/16 56/5
**doctor** **[1]** 53/20
**documentation** **[2]** 17/15 18/14
**does** **[14]** 4/4 7/3 9/2 11/6 15/8 16/5 16/18 18/22 20/22 24/19 38/15 41/21 52/25 55/16
**doesn't** **[6]** 38/16 43/13 43/14 43/15 43/21 54/5
**doing** **[2]** 34/24 54/18
**dollars** **[1]** 17/18
**don't** **[15]** 3/12 4/14 4/15 5/17 10/5 32/11 38/17 39/3 43/22 45/12 46/3 49/20 50/20 50/21 52/1
**done** **[5]** 21/15 47/19 47/19 52/11 55/18
**doubt** **[2]** 10/23 49/22
**down** **[7]** 6/15 7/22 9/2 9/3 20/22 20/20 33/17
**dragged** **[1]** 39/8
**dragging** **[1]** 31/12

**draw** **[3]** 6/22 26/20 26/23
**dreds** **[1]** 34/20
**driving** **[1]** 25/12
**dual** **[1]** 18/1
**DUI** **[1]** 18/17
**during** **[3]** 25/9 31/6 51/7
**dying** **[4]** 14/25 15/21 16/1 40/1

**E**

**each** **[2]** 17/18 22/10
**earlier** **[1]** 39/14
**earliest** **[1]** 46/17
**early** **[2]** 18/3 23/11
**easily** **[3]** 13/24 13/25 21/14
**effect** **[1]** 35/14
**effort** **[1]** 6/23
**egregious** **[1]** 23/18
**eight** **[4]** 31/19 32/13 44/19 49/19
**either** **[2]** 4/15 50/3
**election** **[1]** 12/22
**electronic** **[1]** 41/10
**else** **[3]** 51/5 55/3 55/3
**email** **[3]** 45/4 54/10 54/13
**EMMET** **[1]** 1/8
**emphasize** **[2]** 31/2 35/1
**employment** **[1]** 17/9
**encourage** **[2]** 53/24 54/20
**encouraged** **[3]** 53/15 54/2 54/21
**end** **[3]** 28/19 30/20 48/1
**enforcement** **[3]** 33/24 34/2 40/11
**engage** **[11]** 10/21 12/25 24/4 24/6 25/1 25/15 35/4 35/16 36/12 38/7 38/9
**engaged** **[7]** 23/17 23/20 24/3 24/18 25/9 25/20 36/18
**engagement** **[3]** 33/24 34/2 38/2
**engaging** **[5]** 11/12 25/5 28/25 30/17 35/10
**enough** **[3]** 36/6 44/16 45/22
**ensued** **[2]** 4/19 44/14
**enter** **[1]** 20/16
**entered** **[1]** 19/10
**Eric** **[3]** 53/8 53/21 53/25
**especially** **[3]** 13/12 13/22 54/1
**ESQUIRE** **[3]** 1/11 1/12 1/15
**essentially** **[1]** 51/4
**even** **[8]** 10/12 12/13

**E**

even... [6] 13/2 24/7 28/20 38/16 39/3 39/13
eventual [1] 26/14
eventually [1] 25/24
ever [4] 12/20 40/10 40/10 40/11
every [2] 13/9 21/1
everyone [6] 41/21 46/14 47/19 55/12 55/20 55/23
everything [3] 2/25 45/19 47/15
evidence [39] 3/2 3/14 3/16 5/7 7/5 7/5 7/6 9/5 9/19 9/21 9/25 9/25 11/18 12/11 12/19 12/24 14/14 16/5 16/8 16/13 16/17 17/2 17/12 18/1 18/9 18/11 18/12 19/3 20/22 21/7 21/17 22/6 24/1 24/2 25/3 38/14 40/3 44/24 49/9
evidentiary [1] 44/2
exact [1] 15/13
Excellent [2] 33/12 33/16
exception [1] 13/22
exceptional [1] 13/12
Exhibit [16] 3/18 4/2 7/11 10/3 11/17 14/18 27/11 29/7 30/24 31/14 31/16 32/20 33/4 33/13 34/15 37/9
exhibits [1] 42/9
expected [1] 34/11
explanation [1] 45/6
extent [1] 52/12
extra [1] 17/1
extremist [4] 12/14 18/2 19/14 20/3

**F**

face [1] 15/11
facing [3] 9/10 9/11 20/8
fact [11] 13/8 13/23 22/17 22/20 22/21 25/4 28/19 30/1 39/14 39/16 54/19
factor [2] 16/25 40/4
factors [5] 16/20 17/7 17/7 18/15 22/12
facts [3] 3/10 19/19 22/13
failure [1] 18/20
fair [2] 46/7 47/21
fairness [1] 40/23
fallen [2] 33/18 37/2
false [1] 16/9
familiar [1] 47/15
family [2] 17/9 18/17
favor [2] 17/9 18/15

favorable [1] 7/3
FCRR [1] 1/19
federal [4] 41/7 42/19 42/21 52/15
feet [2] 9/4 11/3
fell [1] 35/13
fellow [1] 28/24
felony [1] 20/2
fighting [3] 12/2 22/22 38/12
figure [2] 47/17 47/20
file [8] 51/24 52/18 53/18 53/19 53/22 54/3 54/6 54/21
filed [1] 54/11
filing [2] 52/1 54/22
final [1] 36/14
finality [1] 41/14
finally [1] 32/18
financially [1] 17/17
find [5] 10/6 10/17 21/23 34/12 39/22
findings [4] 5/23 14/12 15/22 23/4
fine [9] 3/25 33/11 33/11 40/21 47/4 47/11 48/8 55/13 55/14
first [25] 3/4 3/16 4/6 4/20 7/17 10/6 16/17 19/4 20/15 24/22 26/3 26/10 27/6 34/18 35/24 36/5 38/19 38/20 42/14 43/9 53/14 53/18 53/22 53/25 54/7
five [6] 29/17 29/23 37/21 45/24 45/24 46/11
five-second [2] 29/17 37/21
flag [7] 26/24 27/1 27/1 27/12 27/21 27/22 34/4
flee [6] 16/15 16/17 17/2 18/8 18/10 18/12
flies [1] 6/21
flight [6] 16/11 16/12 16/13 16/14 38/17 38/18
floor [5] 11/14 11/24 13/20 15/4 15/10
focus [6] 3/13 22/5 22/17 24/8 27/24 36/9
focused [4] 20/15 22/20 24/22 25/25
focuses [1] 6/1
folks [1] 50/11
follow [3] 9/22 19/1 29/25
followed [1] 28/5
following [4] 4/19 10/8 44/14 54/19
footage [1] 49/21
force [1] 13/20
forced [1] 37/2
forcing [1] 25/8
foregoing [1] 56/12

foreground [1] 27/4
foremost [1] 34/19
foreshadowing [1] 31/9
forget [1] 54/12
forth [1] 22/5
forward [1] 41/1
found [5] 5/24 11/18 14/12 20/22 53/9
four [4] 40/7 42/7 45/24 45/24
Fourth [1] 1/12
Foy [7] 19/5 19/7 19/13 19/17 22/7 22/12 22/22
Foy's [1] 22/14
FPD [3] 41/20 42/23 43/3
frame [1] 32/5
frankly [2] 27/5 39/3
freely [2] 26/16 54/25
front [1] 25/5
frustrating [1] 42/5
fully [3] 12/12 19/7 20/5
further [3] 22/1 47/23 56/12
future [3] 11/2 12/6 15/20

**G**

Gadsden [3] 27/1 27/22 34/4
gaining [1] 52/7
general [3] 52/16 53/8 53/25
generally [1] 49/6
George [5] 19/19 19/21 19/22 20/2 22/8
get [21] 3/10 3/14 8/24 11/7 11/12 20/6 33/10 36/2 39/6 42/7 43/3 45/12 46/18 47/17 49/7 50/23 51/12 51/14 51/16 53/22 54/18
gets [1] 52/13
getting [3] 43/13 51/19 51/20
Getty [1] 1/16
give [11] 32/10 40/22 42/14 45/22 47/12 50/8 51/25 52/5 52/7 52/18 54/7
glad [1] 49/12
Glover [4] 53/8 53/9 53/13 53/18
go [11] 2/25 3/2 7/9 12/7 17/8 35/17 40/7 43/7 48/17 52/19 54/5
goes [6] 9/3 9/13 11/1 13/5 25/16 34/9
going [59]
gone [2] 38/18 46/1
good [9] 2/6 2/8 2/9 2/11 2/12 2/16 2/19 44/4 49/12

**G**

**got [14]** 8/21 9/9 9/12 9/13 24/7 25/24 28/10 29/11 29/24 31/9 44/4 54/23 54/24 54/24
**gotten [2]** 39/13 48/20
**government [30]** 1/11 2/5 2/7 2/10 10/21 12/25 13/16 13/23 14/4 14/9 14/24 15/20 15/23 16/9 16/11 17/3 17/11 20/15 20/19 21/9 21/23 22/3 24/11 40/3 41/4 42/18 43/25 48/10 48/19 55/14
**government's [14]** 10/9 12/9 16/13 27/11 29/7 31/14 31/16 32/20 33/4 33/13 34/15 37/25 42/14 47/5
**grab [3]** 36/21 37/19 37/20
**grabbed [1]** 7/20
**grant [1]** 40/22
**granting [2]** 3/5 3/6
**gray [2]** 5/3 30/11
**great [6]** 27/18 32/9 32/25 47/19 52/9 55/20
**ground [8]** 26/19 35/13 35/13 36/1 37/1 37/6 39/5 39/8
**grounds [2]** 26/5 26/19
**group [1]** 34/13
**groups [5]** 12/14 18/2 19/14 20/3 40/15
**guess [2]** 50/1 52/23
**guilty [5]** 13/7 13/7 21/3 40/5 40/5

**H**

**H.S [1]** 34/16
**H.S.'s [1]** 37/10
**had [25]** 4/18 7/20 14/8 15/25 17/3 19/13 19/22 20/2 20/23 21/8 21/12 22/18 23/8 24/3 24/17 25/21 33/21 39/8 39/13 39/25 49/19 50/6 52/3 54/1 56/7
**half [3]** 7/13 14/18 26/24
**hand [8]** 3/19 5/1 5/3 5/19 5/22 6/2 6/8 9/16
**hands [3]** 35/23 36/22 45/13
**happen [1]** 27/7
**happened [7]** 4/4 5/6 20/7 20/7 21/11 21/12 36/15
**happening [3]** 12/2 13/19 37/1
**happens [1]** 36/23
**happy [1]** 52/2

**hard [4]** 12/4 49/16 50/4 50/4
**harm [4]** 20/1 20/24 21/12 21/14
**has [39]** 2/20 10/16 11/7 12/12 12/13 12/14 12/19 12/22 12/22 16/1 17/9 17/11 18/15 21/1 22/5 22/23 27/1 28/5 33/13 33/18 33/18 37/2 37/16 37/25 38/20 41/5 41/6 44/2 44/19 44/20 45/16 47/19 49/8 49/18 49/23 50/6 50/7 51/22 55/15
**hasn't [1]** 50/6
**hat [6]** 28/5 28/7 28/13 29/20 35/7 37/18
**have [78]**
**having [5]** 17/14 18/16 18/23 46/10 53/12
**he [126]**
**He'll [1]** 53/25
**he's [19]** 9/4 11/8 12/8 13/1 13/10 13/25 15/20 24/15 28/4 34/19 35/6 35/22 35/22 35/23 35/24 40/10 43/13 53/25 54/16
**head [5]** 20/22 30/1 35/24 49/25 50/14
**health [1]** 53/12
**healthy [1]** 55/24
**hear [10]** 3/23 22/2 31/8 32/16 41/12 42/13 45/17 49/12 51/3 51/4
**hearing [22]** 1/8 2/21 12/5 13/4 13/16 14/3 15/19 19/5 20/15 39/23 40/25 42/6 45/16 45/22 48/12 48/13 48/14 50/11 50/12 51/8 54/2 55/5
**hearings [1]** 45/24
**held [2]** 23/15 23/21
**helmet [6]** 28/8 28/16 30/8 34/24 37/16 37/20
**help [7]** 26/6 32/3 35/14 50/23 52/12 53/16 54/5
**helped [1]** 21/16
**helpful [2]** 45/16 45/17
**helping [11]** 10/1 10/19 10/25 11/5 11/8 12/1 12/3 13/1 24/13 24/14 24/16
**helps [1]** 27/15
**her [12]** 15/15 15/15 16/1 17/20 22/15 22/21 39/1 39/4 39/6 39/13 39/24 40/1
**here [49]** 6/7 7/16 7/24 8/3 9/1 9/2 9/7 10/16 10/17 10/23 11/8 11/20 11/24 12/6 12/16 13/6 13/6 13/7 14/23 14/25

15/14 15/16 15/18 20/10 21/4 27/10 28/11 30/3 30/8 30/12 30/16 31/1 31/3 31/15 32/20 33/5 34/24 35/20 36/3 36/16 40/2 40/4 40/16 43/2 44/4 44/11 46/19 50/8 52/22
**hereby [1]** 56/5
**hereto [1]** 56/17
**hey [1]** 50/7
**hiccups [2]** 41/18 41/19
**high [2]** 21/6 40/18
**him [40]** 6/16 6/17 9/14 10/13 11/11 12/1 12/10 13/5 16/5 17/13 17/16 17/23 19/1 19/2 20/22 21/2 21/24 23/7 25/21 30/12 34/21 34/23 35/7 35/8 35/14 45/1 49/6 49/18 50/7 50/23 50/24 53/14 53/14 53/16 54/1 54/3 54/7 54/8 54/15 54/16
**himself [6]** 19/16 24/12 28/20 34/12 39/1 49/24
**hire [1]** 18/7
**hired [1]** 18/6
**his [88]**
**history [3]** 12/14 16/20 18/22
**hit [2]** 6/16 11/4
**hitting [2]** 4/17 7/7
**hockey [1]** 19/8
**hold [3]** 23/10 23/11 54/6
**home [2]** 17/14 40/13
**Honor [40]** 2/2 2/6 2/9 2/12 7/18 8/1 10/5 11/14 11/25 12/11 14/8 14/21 15/22 16/24 17/22 18/4 19/1 19/4 19/6 20/6 21/8 22/4 24/22 30/7 32/10 32/23 33/9 36/6 37/11 38/24 39/22 41/4 41/15 42/16 44/10 44/23 46/18 47/3 52/22 55/9
**Honor's [2]** 14/7 16/19
**HONORABLE [1]** 1/8
**hope [1]** 43/5
**hour [1]** 49/7
**hours [5]** 20/8 24/18 37/5 49/19 49/21
**house [3]** 17/20 18/25 40/13
**housed [1]** 52/16
**how [6]** 2/17 2/18 8/14 38/4 41/1 41/11
**hundred [3]** 14/14 17/17 20/10
**hundreds [1]** 49/21
**hurt [3]** 38/12 43/15 55/2

**I**

**I'd [2]**   5/8 50/23
**I'll [18]**   22/2 27/24
27/25 29/10 29/13 30/19
31/14 32/3 32/9 32/10
33/2 40/21 40/25 42/14
44/11 47/11 47/12 55/18
**I'm [64]**
**I've [15]**   2/24 11/17
21/7 28/10 29/11 29/24
45/18 45/19 46/1 48/19
49/5 49/7 53/4 53/9
55/6
**idea [1]**   44/20
**identified [2]**   12/18
16/7
**identify [1]**   2/4
**immediate [1]**   15/12
**immediately [6]**   9/9
9/11 9/22 18/8 22/23
26/12
**immune [1]**   51/23
**important [13]**   13/15
15/6 19/11 20/18 22/9
23/1 23/6 30/3 48/9
48/10 48/11 49/10 50/22
**importantly [1]**   25/16
**incarcerated [2]**   2/15
42/22
**incident [3]**   10/8 10/18
36/14
**inclined [1]**   40/22
**include [2]**   22/14 25/11
**incorporate [1]**   3/8
**increase [1]**   42/21
**indeed [1]**   11/25
**indicted [4]**   13/10 20/6
21/2 37/25
**indictment [2]**   19/20
38/1
**individual [20]**   5/2
6/7 10/19 11/13 11/15
11/23 14/5 14/13 16/3
21/9 28/7 28/11 28/12
29/19 34/20 35/5 35/8
35/11 35/25 37/18
**individualized [1]**
22/11
**individually [1]**   38/1
**individuals [5]**   23/17
28/19 36/17 36/21 52/15
**indulgence [4]**   26/2
27/9 33/9 46/15
**inference [3]**   5/4 6/22
6/22
**information [5]**   3/2
42/24 43/1 45/8 45/13
**initial [10]**   3/9 10/9
13/4 13/16 14/3 15/19
25/10 33/2 39/23 48/1
**initially [4]**   7/20 20/8
24/21 38/19
**injured [3]**   11/13 11/15

11/23
**innocent [12]**   11/10
12/7 12/17 13/8 13/9
13/10 20/12 21/1 21/4
21/5 21/25 40/20
**inside [2]**   10/4 15/17
**instance [1]**   44/1
**instances [1]**   33/23
**instrumental [1]**   25/7
**intending [1]**   9/6
**intense [1]**   11/3
**intent [3]**   20/1 21/12
22/20
**intentionally [1]**   9/19
**interest [1]**   44/3
**interfere [1]**   55/16
**interfered [1]**   14/10
**intimidation [1]**   17/25
**intuitive [1]**   18/7
**involved [8]**   6/15 7/19
11/11 12/20 28/21 31/5
31/12 40/11
**involvement [1]**   25/12
**inward [1]**   9/11
**is [238]**
**isn't [1]**   30/4
**issue [5]**   5/23 9/14
11/1 13/6 18/17
**issues [4]**   7/1 17/25
49/18 53/12
**it [96]**
**it's [42]**   2/24 3/7 6/6
6/6 15/23 15/24 18/6
19/2 19/6 22/15 22/16
22/25 23/11 24/24 26/5
26/5 27/10 27/13 30/8
31/10 31/20 32/5 32/6
33/8 34/10 37/4 41/22
41/23 42/5 42/7 43/11
45/16 45/25 46/1 46/5
47/14 48/9 48/10 48/10
50/10 52/15 55/2
**item [1]**   15/14
**its [1]**   17/4
**itself [2]**   16/18 36/6

**J**

**J.M.'s [1]**   30/24
**jacket [12]**   13/18 28/6
28/13 29/19 29/25 30/12
31/17 32/14 34/20 34/21
35/6 36/1
**jail [22]**   2/15 42/25
43/5 44/18 44/18 45/12
45/13 46/12 46/14 49/2
49/13 50/5 51/22 51/24
52/3 52/17 53/3 53/5
53/9 54/9 54/11 54/14
**January [5]**   4/5 12/21
19/14 20/3 40/9
**January 6 [1]**   12/21
**January 6th [3]**   4/5
19/14 40/9
**jeans [1]**   30/12

**Jeff [32]**   3/18 3/19
7/2 8/9 9/9 9/12 9/25
10/6 10/17 10/25 11/20
12/6 13/8 14/24 15/2
15/8 15/25 16/7 17/9
17/12 18/15 19/8 19/10
19/15 20/6 20/12 21/1
21/6 42/12 43/8 49/5
49/16
**Jeff's [5]**   9/10 11/7
14/4 18/5 19/4
**JEFFREY [5]**   1/5 2/3
2/13 40/5 56/9
**Jersey [1]**   1/17
**job [1]**   47/19
**Joe [1]**   12/22
**joining [1]**   36/20
**judge [200]**
**judges [4]**   47/16 52/4
52/10 52/11
**judgment [1]**   25/1
**judicial [1]**   18/24
**Julian [2]**   19/21 22/9
**just [47]**   3/13 4/21 6/1
7/17 9/6 10/20 11/24
11/25 12/24 14/1 14/20
16/10 17/20 20/11 22/6
23/3 26/6 26/11 27/18
29/22 31/15 32/10 33/2
35/19 39/21 40/7 41/18
42/13 43/2 43/10 43/11
44/2 44/8 44/12 44/21
44/22 46/6 46/7 47/18
48/3 48/4 49/8 50/14
50/24 52/21 53/17 55/9

**K**

**KEARNEY [14]**   1/12 2/10
33/10 33/12 34/14 34/17
35/17 35/18 37/9 37/12
41/6 47/7 47/9 55/15
**Kearney's [1]**   36/4
**keep [3]**   21/5 21/24
47/12
**kept [1]**   10/6
**Khater [4]**   22/9 23/13
23/20 23/24
**kind [1]**   50/22
**knocking [2]**   46/3 46/4
**know [30]**   4/14 10/5
12/5 13/4 39/4 39/5
41/7 41/11 41/12 42/2
42/20 43/14 43/22 43/23
43/24 43/25 44/8 45/2
45/12 46/5 47/15 47/16
48/9 51/4 51/25 52/2
52/4 52/10 53/12 53/17
**knows [1]**   22/10
**KUKOWSKI [2]**   1/11 2/7

**L**

**lack [1]**   17/10
**lapse [1]**   25/1
**laptop [2]**   42/7 51/12

## L

**laptops [2]** 50/13 51/14
**large [1]** 27/1
**last [2]** 41/24 52/4
**late [2]** 18/3 52/3
**later [3]** 14/11 31/11 37/5
**law [7]** 1/15 16/24 19/4 33/24 34/2 40/11 45/20
**lawyer [1]** 54/24
**laying [1]** 39/17
**leadership [1]** 34/13
**least [4]** 8/4 45/9 45/24 49/10
**leave [2]** 18/25 40/13
**led [3]** 14/4 14/13 16/2
**left [5]** 25/21 26/23 27/5 28/17 34/3
**lengthy [1]** 3/13
**less [1]** 13/25
**let [6]** 27/14 32/9 42/13 44/8 48/21 51/6
**let's [3]** 50/8 50/8 55/7
**lettering [1]** 27/22
**letters [2]** 13/3 27/2
**level [2]** 26/19 26/21
**liability [2]** 7/23 11/7
**library [1]** 53/13
**life [1]** 40/11
**like [20]** 5/8 5/19 5/21 6/18 9/23 14/6 14/15 15/9 20/11 35/5 35/22 37/1 41/16 45/25 46/2 48/15 50/23 51/3 52/11 55/10
**line [20]** 2/4 25/5 25/7 26/17 26/21 28/9 28/21 29/1 29/16 31/18 32/15 33/17 33/21 34/5 34/9 34/25 35/11 35/22 37/2 38/5
**Lisa [4]** 1/19 56/3 56/21 56/22
**listed [1]** 17/4
**literally [1]** 36/13
**little [6]** 9/3 24/19 45/9 45/18 47/17 52/13
**lives [1]** 17/23
**LLC [1]** 1/15
**location [1]** 34/1
**logistical [1]** 42/24
**long [2]** 34/20 45/12
**look [14]** 7/3 15/11 15/15 22/11 23/1 23/6 25/2 38/3 45/20 46/8 47/13 47/22 48/8 51/7
**looked [3]** 22/19 45/19 51/7
**looking [11]** 18/19 22/25 24/21 26/11 33/6 34/25 34/25 36/24 44/3 47/14 48/3

**looks [7]** 5/19 5/21 6/8 6/18 15/9 21/10 36/7
**lose [1]** 48/9
**lot [1]** 19/2
**lots [1]** 50/11
**loved [2]** 45/25 46/4
**lower [9]** 24/7 25/8 26/14 31/7 33/7 33/21 36/19 37/3 38/6

## M

**M.T [1]** 29/9
**mace [1]** 10/24
**machine [2]** 56/6 56/14
**madam [1]** 32/1
**made [10]** 9/7 9/18 10/11 10/21 13/16 14/4 25/22 35/15 37/4 40/6
**mail [1]** 45/1
**main [1]** 7/1
**maintained [1]** 26/18
**majority [2]** 16/11 16/12
**make [6]** 13/14 15/13 18/6 41/8 41/20 55/7
**making [3]** 29/15 37/8 41/19
**malice [1]** 6/17
**man [1]** 35/15
**mandating [1]** 21/25
**many [3]** 17/8 25/21 35/1
**marble [1]** 13/19
**marijuana [1]** 18/17
**mark [16]** 27/25 28/10 29/17 30/15 31/22 32/18 35/21 37/17 37/21 43/17 44/8 44/11 46/12 46/13 47/1 55/6
**marked [2]** 7/10 34/15
**material [1]** 38/14
**materials [3]** 42/22 54/8 54/14
**matter [2]** 22/7 22/8
**matters [1]** 48/25
**may [8]** 5/22 9/18 34/11 35/19 36/6 38/2 39/12 53/16
**maybe [5]** 4/13 49/19 50/16 53/20 54/13
**me [22]** 6/9 15/24 23/25 27/14 32/1 42/13 43/8 43/22 44/8 44/22 45/22 48/8 48/21 49/16 51/6 52/6 52/11 53/11 53/15 53/19 54/21 55/13
**mean [8]** 6/18 6/21 6/24 11/6 42/3 44/2 52/2 52/8
**meaning [1]** 9/11
**means [1]** 24/15
**mechanical [1]** 1/23
**media [2]** 27/19 33/19
**meet [2]** 21/24 44/16

**meeting [1]** 42/25
**member [1]** 35/12
**mention [1]** 13/17
**mentioned [2]** 16/4 49/13
**mentioning [1]** 54/19
**met [1]** 40/17
**Michael [5]** 19/5 19/7 19/13 19/17 22/7
**Michelle [2]** 17/19 17/22
**might [1]** 54/17
**minimally [1]** 6/15
**minute [2]** 43/12 43/12
**minutes [1]** 39/13
**misrepresentations [2]** 13/15 16/4
**missing [1]** 6/24
**mitigate [2]** 24/19 38/15
**mob [1]** 14/9
**moment [2]** 28/25 31/15
**momentary [2]** 25/1 30/4
**monitor [1]** 17/14
**month [3]** 45/10 50/6 54/9
**months [2]** 16/2 50/5
**monumental [1]** 41/12
**monumentous [1]** 38/3
**moon [1]** 26/25
**more [14]** 9/21 10/12 13/2 17/2 18/18 25/16 32/12 40/22 43/1 45/18 46/6 46/7 47/13 47/13
**moreover [1]** 38/16
**morning [8]** 2/6 2/8 2/9 2/11 2/12 2/16 2/17 46/9
**most [5]** 12/12 15/24 37/25 49/7 49/10
**mother [1]** 18/3
**motion [18]** 2/24 19/12 40/23 47/12 48/7 48/9 48/13 51/25 52/1 52/18 52/22 52/24 53/18 53/19 54/3 54/6 54/6 55/5
**motions [3]** 1/8 53/22 54/22
**mouse [2]** 10/6 11/21
**move [4]** 26/16 33/1 33/19 37/3
**movements [1]** 47/18
**moving [1]** 38/4
**Mr [15]** 2/17 2/20 14/10 14/12 22/14 22/21 38/25 39/23 43/7 43/13 46/7 46/18 48/1 50/14 51/6
**Mr. [8]** 22/22 23/7 28/17 46/23 48/10 53/9 53/13 55/20
**Mr. Coates [1]** 46/23
**Mr. Foy [1]** 22/22
**Mr. Glover [2]** 53/9 53/13

Case 1:21-cr-00035-RC Document 145 Filed 11/10/21 Page 66 of 72

## M

**Mr. Sabol [3]** 28/17
48/10 55/20
**Mr. Tanios [1]** 23/7
**Ms [5]** 14/23 15/3 33/10
35/17 36/3
**Ms. [13]** 15/7 15/9
15/10 33/12 34/14 34/17
35/18 37/9 37/12 41/6
47/7 47/9 55/15
**Ms. Boylan [3]** 15/7
15/9 15/10
**Ms. Kearney [10]** 33/12
34/14 34/17 35/18 37/9
37/12 41/6 47/7 47/9
55/15
**much [6]** 3/7 12/13
18/18 34/3 43/21 55/6
**multiple [2]** 25/9 25/23
**mute [2]** 5/17 44/12
**my [50]** 2/14 3/3 3/6
3/8 3/8 3/9 3/12 3/13
3/20 4/2 5/12 5/23 6/5
6/9 6/13 6/14 7/1 7/4
7/11 7/18 8/24 9/8 10/4
10/6 10/11 11/21 13/17
13/18 13/22 14/2 14/23
17/16 17/20 17/21 18/19
21/18 21/22 31/14 31/24
42/23 44/3 45/4 45/20
52/22 54/12 54/25 56/6
56/14 56/15 56/17
**myself [2]** 3/6 12/4

## N

**name [2]** 54/25 56/18
**namesake [1]** 44/3
**near [1]** 45/11
**necessarily [1]** 31/5
**neck [3]** 4/25 5/2 6/8
**need [10]** 35/19 38/17
43/21 45/18 46/6 46/7
47/23 49/10 49/20 55/3
**needs [2]** 3/1 53/21
**neighbors [1]** 17/23
**never [4]** 20/16 20/23
38/25 53/22
**new [18]** 1/17 3/2 3/13
3/16 9/24 17/23 19/3
20/6 20/13 20/24 22/6
24/1 24/2 25/2 37/24
38/1 38/2 38/14
**newer [1]** 22/6
**next [12]** 11/13 13/14
15/11 30/23 33/1 33/23
43/1 46/13 46/18 48/12
48/13 48/14
**nine [2]** 29/11 35/21
**nine-second [1]** 35/21
**no [44]** 1/3 2/20 6/17
7/7 8/4 8/11 8/13 9/19
10/16 10/23 11/7 12/11
12/13 12/14 12/19 12/19

---

13/13 16/5 16/6 16/7
17/25 18/1 18/1 18/20
18/21 19/13 19/13 19/14
20/2 20/2 20/3 20/13
21/7 21/12 22/18 40/15
40/15 43/10 44/25 48/18
49/22 50/7 51/1 51/4
**norm [1]** 13/11
**not [78]**
**notable [1]** 22/17
**note [3]** 23/23 23/23
34/8
**notereading [1]** 1/23
**notes [1]** 56/14
**nothing [11]** 14/1 15/8
15/25 21/8 21/25 38/20
39/25 40/16 40/18 40/18
40/20
**notice [1]** 44/20
**noticed [1]** 10/5
**November [1]** 56/18
**now [27]** 4/20 5/7 8/7
8/12 8/14 8/17 9/16
11/7 14/3 16/15 20/5
23/23 25/2 25/14 27/16
29/2 29/24 32/5 32/8
33/13 34/17 35/19 41/2
41/16 43/14 45/21 48/22
**number [3]** 18/11 18/14
56/9
**NW [2]** 1/12 1/20

## O

**object [2]** 30/1 30/8
**objection [1]** 2/20
**obscured [1]** 27/5
**obvious [1]** 7/19
**occasions [2]** 23/14
35/2
**occur [1]** 34/1
**occurred [1]** 26/15
**October [6]** 1/5 13/9
46/19 46/25 55/11 56/10
55/11
**October 27th [2]** 46/19
55/11
**October 7 [1]** 13/9
**off [3]** 11/19 30/22
54/6
**offense [1]** 16/23
**office [2]** 1/11 45/11
**officer [42]** 5/25 6/12
6/15 6/21 6/24 7/8 7/11
7/21 9/2 9/7 9/9 9/12
9/15 9/18 9/20 13/18
13/21 15/7 15/9 20/23
21/14 25/11 25/13 29/4
29/6 29/9 29/10 30/24
30/25 31/6 31/9 31/12
32/17 34/16 35/12 36/22
37/6 37/6 37/7 37/10
37/19 37/23
**officer's [3]** 4/25 6/4
37/20
**officers [25]** 5/21 14/9

---

15/16 15/18 19/9 19/25
21/18 23/22 25/24 26/13
26/16 26/22 28/20 30/2
30/4 30/17 30/21 31/8
32/16 32/18 34/5 38/2
39/5 39/8 39/13
**offices [1]** 1/15
**official [4]** 56/3 56/6
56/13 56/22
**oh [2]** 13/24 50/2
**okay [26]** 8/18 27/10
27/14 27/15 27/18 30/14
31/25 32/7 32/9 32/25
33/8 33/12 34/17 43/18
43/20 44/9 44/11 47/5
48/24 50/2 51/17 53/2
54/15 54/25 55/19 55/23
**old [2]** 20/11 20/25
**once [4]** 13/1 20/24
35/10 44/4
**one [25]** 4/11 4/14 5/20
7/1 10/1 17/7 18/12
18/15 23/17 23/19 24/3
24/11 30/25 31/2 34/18
35/1 36/15 47/13 48/10
49/7 49/18 50/1 50/7
51/3 53/7
**one-hour [1]** 49/7
**ongoing [2]** 41/5 41/22
**only [12]** 4/14 6/22
12/20 13/12 14/5 15/8
18/6 40/10 45/8 45/13
47/25 53/4
**open [1]** 4/9
**opinion [11]** 3/12 3/13
14/7 22/15 22/15 22/21
22/25 23/2 23/3 51/17
51/18
**opportunities [1]**
10/12
**opportunity [5]** 49/23
50/7 50/9 52/25 53/1
**opposite [1]** 24/19
**opposition [1]** 10/10
**options [1]** 25/21
**oral [2]** 3/7 40/24
**orange [1]** 5/13
**order [3]** 18/13 18/23
18/24
**orders [2]** 18/21 18/23
**organization [1]** 26/21
**orient [3]** 26/11 26/21
27/18
**original [1]** 38/25
**originally [1]** 25/25
**other [17]** 6/12 6/19
16/4 19/3 19/18 29/14
31/8 36/13 36/17 38/9
41/13 43/23 49/17 51/13
52/4 52/8 52/17
**others [4]** 17/8 22/14
28/25 35/10
**our [5]** 23/25 38/19
38/25 42/17 46/6

**O**

**out [30]** 7/18 8/1 9/11 22/10 25/13 31/7 31/12 32/4 33/6 34/7 34/18 35/7 35/12 35/23 36/22 36/23 37/5 37/19 39/9 43/5 44/3 47/18 47/20 49/2 53/15 53/25 54/2 54/15 54/16 54/21
**over [10]** 12/21 17/15 26/23 27/4 38/18 40/9 41/6 41/17 41/23 43/1
**overwhelmed [3]** 25/24 33/18 45/23
**overwhelming [1]** 25/7
**own [3]** 17/4 39/6 49/16

**P**

**p.m [17]** 23/14 23/25 24/2 24/5 24/7 24/23 25/6 25/17 26/1 26/5 26/8 26/15 26/22 27/8 36/16 46/24 55/11
**PACER [1]** 48/3
**page [2]** 14/8 55/8
**pages [1]** 56/12
**pants [2]** 35/6 36/1
**parallel [1]** 6/20
**parents [3]** 17/16 17/24 18/2
**parole [2]** 16/23 16/25
**part [5]** 25/4 25/4 34/8 34/12 37/24
**particularly [1]** 22/16
**parties [2]** 2/4 41/2
**partner [1]** 17/19
**passive [1]** 35/3
**past [8]** 12/15 12/20 17/7 40/14 40/15 40/18 41/7 48/20
**pause [7]** 7/16 9/5 15/5 15/14 27/25 32/11 35/18
**paused [5]** 9/8 28/10 29/11 29/24 31/21
**pausing [1]** 30/15
**pavement [1]** 39/17
**peacefully [1]** 25/18
**peer [1]** 22/15
**pending [2]** 48/7 48/12
**people [8]** 11/4 11/4 12/1 17/17 43/23 50/19 51/15 53/4
**per [1]** 23/3
**perceived [2]** 24/12 38/10
**perceives [2]** 24/17 36/12
**percent [2]** 14/14 20/10
**period [1]** 24/23
**perished [1]** 39/13
**Permission [1]** 42/10
**person [3]** 14/6 15/11 47/8

**personally [1]** 48/19
**personnel [1]** 52/3
**perspective [9]** 23/1 26/7 27/23 28/23 29/4 29/5 30/25 38/3 50/25
**perspectives [1]** 29/4
**phone [1]** 18/25
**photo [2]** 4/21 36/24
**photograph [1]** 26/7
**physical [3]** 25/20 25/20 33/24
**physically [2]** 35/4 38/9
**picture [14]** 3/18 3/20 4/3 4/4 4/6 4/8 5/5 6/6 6/10 7/2 7/3 21/10 21/10 33/1
**pictures [1]** 19/16
**piece [1]** 9/24
**pinpoint [1]** 15/13
**place [4]** 43/3 44/21 47/20 49/11
**places [1]** 52/17
**planning [1]** 54/22
**plant [1]** 44/4
**platforms [1]** 43/3
**play [18]** 7/13 8/3 10/15 14/18 27/3 28/2 29/2 29/3 29/12 29/12 29/22 30/23 32/10 34/14 35/18 35/19 37/12 37/13
**played [1]** 7/15
**player [1]** 27/15
**playing [1]** 27/25
**Plaza [6]** 25/6 26/18 27/20 31/8 33/6 33/18
**plea [1]** 21/3
**please [3]** 2/4 2/5 42/11
**pod [1]** 51/16
**point [27]** 3/14 7/18 7/25 15/2 20/18 21/20 21/20 22/10 24/24 25/25 26/17 26/22 33/6 33/22 34/7 34/18 35/7 36/9 36/23 38/21 38/23 38/25 39/4 40/7 41/2 41/16 42/17
**pointed [1]** 35/12
**pointer [1]** 30/5
**pointing [2]** 36/1 37/12
**police [43]** 5/21 6/4 6/12 6/20 6/24 9/14 9/20 15/7 19/9 24/4 24/5 24/7 25/5 25/7 25/8 25/15 26/4 26/17 26/21 27/7 28/9 28/21 29/1 29/4 29/5 29/15 30/2 30/2 31/4 31/18 32/14 33/3 33/17 33/21 34/5 34/9 34/25 35/9 35/11 35/21 37/2 38/5 39/5
**portion [1]** 33/20

**poses [1]** 24/12
**position [4]** 6/9 6/13 34/12 50/21
**possession [1]** 18/13
**possibility [1]** 9/17
**possibly [1]** 5/24
**post [3]** 17/19 19/14 20/3
**posterior [1]** 5/20
**posture [1]** 35/23
**potential [1]** 7/23
**potted [1]** 44/4
**precursor [1]** 37/4
**predecessor [1]** 49/14
**prejudice [1]** 14/2
**prelude [1]** 31/11
**preponderance [1]** 17/12
**present [3]** 2/14 25/3 49/23
**presentation [1]** 46/9
**presentations [1]** 40/24
**presented [3]** 25/17 25/18 35/2
**president [1]** 12/23
**pressure [2]** 51/21 51/24
**presumption [2]** 12/9 13/11
**pretrial [8]** 11/10 13/11 16/6 16/23 17/1 18/19 20/11 21/20
**pretty [1]** 6/8
**previous [2]** 16/14 16/14
**previously [1]** 14/20
**prior [6]** 16/17 17/2 20/8 22/18 44/17 45/10
**prison [1]** 16/1
**private [1]** 18/7
**probably [3]** 9/24 45/21 46/13
**probation [2]** 16/23 17/1
**problem [2]** 53/11 53/24
**problems [6]** 41/25 42/2 42/5 42/8 51/2 51/4
**procedure [1]** 54/19
**proceed [1]** 41/2
**proceeding [2]** 2/21 14/2
**proceedings [5]** 1/23 55/25 56/7 56/13 56/15
**process [9]** 18/24 41/20 48/22 48/25 49/1 49/11 50/17 50/24 51/8
**produced [1]** 1/23
**project [1]** 41/12
**proof [1]** 12/16
**proposal [1]** 52/10
**prosecutor [1]** 32/1
**protect [1]** 44/5
**protection [1]** 25/12

## P

protest [1]   25/19
protester [1]   14/8
protestor [2]   35/4
  39/22
prove [3]   9/6 12/7
  17/11
providing [2]   41/5
  48/19
proximity [1]   39/17
public [3]   41/8 42/19
  42/21
pull [2]   29/7 31/14
pulled [1]   31/7
punch [1]   20/20
pursuant [1]   50/16
push [3]   20/21 30/21
  32/18
pushing [3]   30/4 34/9
  38/4
put [7]   16/21 22/5 30/5
  43/17 44/5 50/21 51/22
putting [2]   35/22 51/23

## Q

quick [4]   28/1 36/15
  37/11 43/10
quite [2]   36/13 41/23
quoting [1]   14/7

## R

raised [1]   22/7
rather [1]   41/17
RDR [1]   1/19
re [2]   3/12 11/12
re-argue [1]   3/12
re-engaging [1]   11/12
reach [9]   37/5 37/19
  37/22 53/15 53/25 54/2
  54/15 54/16 54/21
reaching [1]   43/5
reaction [1]   35/25
read [4]   2/25 13/4 14/6
  45/18
ready [1]   44/9
realized [1]   55/9
really [5]   5/25 24/8
  43/10 44/23 48/24
reason [3]   6/12 6/19
  26/5
reasonable [2]   6/22
  54/17
reasoning [1]   13/22
rebuts [1]   12/8
received [10]   13/4
  44/18 44/19 45/2 45/4
  45/5 45/9 54/10 54/13
  54/14
recent [1]   37/25
recognizing [1]   46/10
record [10]   2/5 12/12
  13/13 17/10 18/16 19/13
  21/7 29/8 29/22 44/22

recorded [2]   1/23 10/7
recover [1]   39/7
red [5]   28/5 28/7 28/13
  29/20 37/18
referred [1]   26/18
regarding [1]   23/4
regardless [1]   7/22
regards [3]   3/16 18/9
  39/22
reiterate [1]   38/18
relation [2]   3/17 13/19
relative [1]   41/22
release [8]   13/11 16/24
  17/1 17/23 20/11 21/20
  21/22 52/24
released [10]   7/25
  10/11 10/21 11/9 12/9
  13/1 17/12 19/17 21/25
  40/19
relevant [1]   5/18
relied [1]   15/22
relief [2]   41/13 54/18
relies [2]   40/3 44/23
remained [1]   35/3
remains [2]   21/4 39/14
remedy [2]   52/5 52/19
remind [1]   54/8
remote [1]   49/1
remote-sharing [1]
  49/1
remove [1]   31/1
reopen [1]   19/12
repeat [1]   12/4
repeatedly [1]   25/17
repetitive [1]   39/20
replay [1]   28/1
reply [2]   3/9 17/21
report [1]   18/20
reported [1]   56/6
Reporter [4]   1/19 56/1
  56/3 56/22
represent [2]   4/4 42/18
representing [1]   2/13
request [3]   48/16 50/16
  51/11
residents [1]   51/13
resolve [3]   48/11 48/12
  48/14
resolves [1]   21/3
respect [2]   18/23 41/14
respectfully [1]   15/24
respond [3]   39/10 40/8
  50/22
response [1]   23/10
responsible [6]   14/25
  15/21 17/17 39/1 39/24
  53/10
restart [7]   4/22 29/10
  30/14 30/19 32/2 32/4
  32/20
restarting [1]   8/23
resume [1]   45/21
retained [2]   41/9 49/5
retreat [1]   37/3

retreated [1]   33/22
retrieve [1]   25/8
retrieved [1]   23/9
review [1]   49/10
rewind [1]   8/20
right [73]
riot [3]   28/4 29/18
  38/12
rioter [2]   28/5 39/12
rioters [6]   25/5 27/11
  28/24 29/14 32/19 34/13
riots [1]   23/19
risk [5]   16/10 16/12
  16/13 38/17 38/18
RMR [1]   1/19
rob [2]   37/5 37/6
robbing [1]   25/11
room [4]   43/9 43/18
  44/6 44/14
rooms [1]   46/11
Roseanne [1]   14/23
round [1]   38/19
rounds [1]   41/7
rugby [1]   35/22

## S

SABOL [24]   1/5 2/3 2/13
  2/17 13/9 14/10 14/12
  14/24 22/14 22/18 22/21
  28/6 28/17 38/25 40/5
  43/7 43/13 46/7 46/18
  48/10 50/14 51/6 55/20
  56/9
Sabol's [2]   39/23 48/1
safe [1]   55/24
said [13]   10/11 10/20
  12/19 23/3 23/10 35/13
  41/16 44/4 46/10 50/7
  56/9 56/13 56/15
same [9]   14/20 29/2
  29/3 32/1 33/3 33/5
  33/5 34/1 55/8
satisfy [2]   16/18 17/3
saw [2]   11/13 15/16
say [18]   3/24 12/25
  23/17 23/23 24/24 33/20
  34/11 38/14 41/19 43/15
  43/22 43/23 45/9 46/25
  48/16 53/21 54/9 54/23
saying [5]   12/5 13/24
  36/2 41/23 50/15
says [2]   44/1 47/8
scaffolding [1]   27/6
scene [3]   7/19 9/22
  15/6
scheduling [1]   42/25
scope [1]   23/12
screen [22]   3/20 3/21
  4/1 4/17 8/7 8/10 10/7
  10/7 26/3 26/3 26/12
  26/24 27/16 29/19 31/15
  31/24 33/3 33/13 34/4
  35/6 49/1 49/8
scrum [1]   35/22

**S**

| | |
|---|---|

**scrutinize [1]** 3/1
**second [16]** 4/12 7/17 9/6 10/1 18/5 24/4 27/25 28/10 29/17 30/15 31/4 31/22 32/18 35/21 37/17 37/21
**seconds [10]** 7/12 28/3 29/11 29/23 29/24 30/15 30/19 31/19 32/13 32/15
**Section [2]** 16/20 16/21
**see [73]**
**seeing [7]** 8/4 8/5 8/6 8/9 8/11 8/13 8/16
**seeking [1]** 54/18
**seem [2]** 20/22 38/2
**sees [1]** 24/16
**select [1]** 41/3
**send [2]** 44/18 51/10
**sent [5]** 45/1 45/10 45/20 49/13 49/15
**sentencing [4]** 47/8 55/16 55/16 56/8
**separate [1]** 36/18
**separately [1]** 36/18
**September [1]** 48/2
**serious [1]** 18/18
**Service [2]** 42/19 42/21
**services [1]** 18/20
**set [1]** 26/6
**sets [1]** 41/17
**seven [1]** 49/19
**several [3]** 26/13 34/5 41/6
**shake [1]** 50/14
**shaking [1]** 49/25
**share [5]** 3/20 4/17 26/2 31/14 49/9
**shared [1]** 45/7
**sharing [1]** 49/1
**she [8]** 22/13 22/17 22/19 33/10 39/4 39/17 47/8 47/8
**shield [5]** 28/4 28/12 29/18 30/2 30/9
**shirt [1]** 5/13
**shock [2]** 15/12 15/15
**short [1]** 24/23
**shorthand [2]** 56/6 56/14
**shortly [2]** 24/5 43/5
**shot [5]** 8/7 8/10 26/3 26/8 33/3
**should [8]** 12/17 23/23 27/11 34/7 42/25 45/21 47/9 50/1
**shouldn't [1]** 41/19
**show [16]** 5/8 6/14 7/6 9/23 10/1 11/13 14/15 20/13 20/19 20/22 21/10 26/3 28/22 33/3 36/14 40/14
**showed [3]** 11/25 12/24

24/2
**showing [4]** 14/20 26/6 33/8 35/14
**shown [2]** 5/1 11/8
**shows [12]** 5/5 9/19 11/11 12/15 14/14 16/8 21/8 34/11 37/7 37/8 39/25 40/18
**side [8]** 24/17 24/19 26/13 26/13 26/23 27/5 36/13 38/9
**sides [1]** 47/21
**sight [1]** 41/13
**sign [1]** 17/16
**since [2]** 19/4 49/5
**sir [8]** 2/18 4/16 42/11 43/7 43/19 51/15 51/22 55/21
**sitting [2]** 16/1 54/8
**situation [1]** 36/25
**six [1]** 42/7
**slightly [2]** 27/5 29/13
**slots [1]** 49/7
**slower [3]** 28/2 29/13 29/23
**small [2]** 18/16 18/22
**snapshot [2]** 7/2 21/11
**sneaky [1]** 54/17
**snippets [1]** 47/17
**so [100]**
**some [21]** 3/1 3/2 13/16 21/18 22/6 27/1 40/22 42/23 46/6 46/7 47/12 48/20 49/1 50/16 50/18 50/23 51/25 52/5 52/7 52/18 54/18
**somebody [8]** 10/1 11/1 11/5 11/8 12/1 12/3 13/1 21/16
**somehow [1]** 51/10
**someone [8]** 13/12 15/21 16/23 16/25 21/5 24/14 24/16 44/1
**something [7]** 6/24 12/25 19/10 19/15 51/5 51/25 54/22
**somewhat [1]** 7/18
**sorry [3]** 31/23 44/1 47/9
**sort [2]** 43/24 50/16
**sound [3]** 5/17 10/16 11/19
**source [1]** 25/12
**speak [3]** 53/8 53/13 53/14
**speaking [2]** 18/19 47/10
**speaks [1]** 16/22
**specifically [4]** 6/6 21/23 22/21 23/10
**speed [5]** 7/13 14/18 28/2 29/13 29/23
**speedy [1]** 48/4
**spoken [3]** 53/2 53/4

53/15
**spray [7]** 19/22 19/23 23/7 23/8 23/9 23/13 23/18
**sprayed [1]** 19/24
**spraying [1]** 28/20
**stage [1]** 14/2
**stairs [1]** 6/16
**stamp [1]** 32/5
**stamps [1]** 32/11
**stand [1]** 38/24
**standing [4]** 27/4 34/5 34/19 35/9
**start [10]** 2/5 3/16 5/16 22/6 27/25 31/16 32/16 35/11 37/19 55/11
**starting [6]** 7/12 10/16 14/19 28/2 29/23 33/19
**starts [1]** 34/17
**state [2]** 24/11 49/3
**stated [3]** 14/8 22/20 38/25
**statement [3]** 10/11 10/20 13/23
**STATES [9]** 1/1 1/3 1/9 1/11 1/19 2/3 12/23 56/4 56/8
**stating [1]** 54/14
**status [4]** 39/4 48/1 48/3 48/15
**statute [1]** 16/19
**stay [1]** 17/22
**stayed [1]** 25/19
**stenography [1]** 1/23
**steps [16]** 4/5 4/7 4/25 5/6 7/22 9/3 9/10 9/12 10/8 10/23 10/25 11/19 13/20 15/1 15/3 19/8
**stick [1]** 19/9
**still [23]** 7/23 10/22 17/11 18/13 23/11 23/15 23/17 23/20 26/8 26/16 27/13 30/17 30/17 31/20 31/24 32/6 38/10 38/13 39/24 40/19 41/3 41/4 48/19
**stop [4]** 11/16 29/6 32/11 44/12
**stopping [1]** 14/22
**straight [1]** 19/20
**Street [1]** 1/12
**stretching [1]** 46/6
**strike [3]** 6/12 6/23 19/3
**striking [2]** 15/10 15/15
**strong [1]** 12/16
**strongly [3]** 54/2 54/20 54/21
**subject [2]** 28/3 28/4
**submissions [2]** 3/8 40/24
**submit [11]** 7/3 10/14 16/3 17/6 17/8 17/13

**S**

**submit... [5]** 21/6 24/15 29/13 39/24 40/17
**submitted [13]** 3/17 4/2 9/25 10/3 10/10 11/17 14/23 17/15 18/2 21/7 44/24 45/4 52/23
**subscribed [1]** 56/17
**subsection [3]** 16/22 17/4 17/6
**subsequent [1]** 38/5
**successful [3]** 51/19 51/20 53/23
**such [2]** 17/9 18/16
**suffers [1]** 18/3
**suggest [1]** 46/12
**suggested [2]** 53/10 53/17
**suggesting [1]** 52/19
**suggestion [1]** 53/7
**Suite [1]** 1/16
**SULLIVAN [3]** 1/8 46/17 54/20
**summarize [1]** 2/25
**Superior [3]** 46/1 46/2 46/3
**superseding [1]** 38/1
**support [3]** 13/2 13/5 16/5
**supposed [1]** 16/25
**sure [16]** 3/22 4/23 8/2 8/25 15/13 20/5 20/19 30/7 33/11 41/8 41/19 41/20 44/10 46/16 54/25 55/7
**surveillance [3]** 26/4 33/4 36/25
**suspicion [1]** 54/17
**sustained [1]** 31/3
**swatting [1]** 6/21
**sweatshirt [1]** 5/3
**swinging [1]** 19/8
**swirling [1]** 9/17
**switch [2]** 27/9 27/14
**sworn [1]** 12/22

**T**

**tablets [1]** 50/12
**tackle [1]** 20/20
**take [10]** 13/22 16/25 18/4 19/16 34/8 43/21 47/22 55/20 55/20 55/24
**taken [4]** 4/6 4/24 42/7 56/14
**takes [1]** 47/17
**taking [2]** 35/23 47/20
**talk [10]** 4/3 4/21 18/25 43/8 43/20 52/8 53/18 54/1 55/4 55/5
**talked [1]** 22/22
**talking [1]** 55/6
**tan [10]** 26/13 29/25 30/12 31/17 32/14 34/21 35/6 35/6 35/25 36/1

**Tanios [7]** 19/16 22/8 22/25 23/2 23/7 23/10 23/24
**Tanios' [1]** 19/15
**tape [2]** 45/18 56/15
**tapes [3]** 46/8 47/13 49/13
**teal [6]** 5/12 28/7 28/13 30/16 31/17 32/14
**team [1]** 28/25
**teaming [1]** 36/17
**technical [1]** 4/18
**technological [1]** 43/3
**technology [1]** 42/24
**tell [6]** 46/3 49/20 53/13 53/14 53/19 54/1
**terms [1]** 41/18
**Terrace [8]** 24/8 25/9 26/14 33/7 33/21 36/19 37/3 38/6
**testimony [1]** 56/7
**than [2]** 6/12 49/17
**thank [14]** 3/4 3/5 3/5 7/10 22/2 22/4 32/2 39/19 39/21 40/20 42/16 45/15 55/22 55/23
**that [323]**
**that's [30]** 3/25 4/13 5/1 5/14 12/13 15/8 21/13 22/9 24/20 26/14 27/6 27/20 27/22 33/11 33/11 34/8 40/9 41/12 45/8 45/13 46/13 46/20 46/20 47/2 47/16 48/7 48/8 49/12 55/13 55/14
**their [13]** 10/10 15/12 16/12 18/3 21/24 39/6 39/8 39/10 42/2 51/19 51/22 53/12 53/20
**them [14]** 14/11 19/20 28/8 29/21 35/10 43/4 43/25 44/20 44/21 45/4 45/12 45/20 49/16 53/13
**then [25]** 18/7 18/9 23/19 24/5 25/10 25/12 25/24 26/25 27/21 28/6 28/13 29/1 29/5 29/20 31/4 32/17 33/25 34/2 36/8 37/20 38/5 42/24 43/5 46/21 55/18
**there [51]** 5/7 5/22 6/17 6/21 7/7 7/22 9/17 9/18 10/22 11/20 12/11 12/23 15/15 16/5 16/6 16/6 17/21 17/25 18/20 18/20 20/13 21/18 22/17 23/4 23/6 23/15 26/17 27/11 27/21 28/18 28/19 28/23 31/5 34/4 34/5 34/6 38/20 40/14 42/2 42/8 43/11 43/22 46/5 46/5 49/1 49/11 50/5 50/12 51/4 51/15 54/9

**there's [15]** 10/24 10/24 10/24 13/10 15/14 15/16 15/17 18/1 21/17 32/16 35/13 41/18 43/24 49/20 49/21
**thereafter [1]** 24/6
**these [16]** 10/23 13/25 18/18 20/12 20/12 22/10 28/1 29/14 31/6 36/20 38/1 45/23 47/17 50/3 50/3 50/4
**they [24]** 10/10 10/11 13/17 14/1 17/3 17/4 20/13 37/2 39/6 39/7 39/14 40/14 40/17 42/7 45/2 45/3 45/5 45/6 45/10 50/4 50/18 53/11 53/19 53/20
**they're [3]** 21/5 26/13 52/16
**they've [4]** 43/23 50/5 51/18 53/23
**thing [7]** 3/4 4/20 7/17 22/9 46/3 47/25 51/3
**things [7]** 10/24 12/2 13/25 16/15 31/2 34/18 43/24
**think [31]** 4/7 5/18 6/19 7/6 9/13 12/7 12/15 13/5 13/15 15/6 15/24 16/8 19/11 20/18 21/13 22/9 22/16 22/22 22/25 24/24 25/16 31/10 38/17 38/24 41/15 49/9 51/21 52/1 54/12 55/15 55/18
**thinking [1]** 45/21
**third [1]** 24/6
**this [127]**
**those [21]** 10/13 12/7 12/10 13/17 20/9 23/16 23/24 23/25 24/12 24/19 29/6 36/12 38/9 42/5 47/14 47/22 49/14 50/15 51/9 52/7 54/20
**though [2]** 41/1 49/13
**thought [8]** 5/14 38/11 38/12 40/22 51/25 52/5 52/7 52/18
**thousand [1]** 17/18
**threat [5]** 10/15 12/18 16/6 16/7 40/12
**threats [1]** 24/11
**three [6]** 27/25 28/3 28/10 37/17 40/7 49/8
**three-second [3]** 27/25 28/10 37/17
**through [3]** 30/9 32/10 53/24
**throughout [1]** 38/8
**throw [1]** 20/20
**thrown [2]** 10/24 12/2
**thumbs [1]** 48/20
**ties [7]** 12/13 17/9

## T

ties... **[5]**   18/1 19/13 20/3 20/14 40/15
tight **[1]**   33/17
time **[21]**   12/20 16/22 23/24 24/23 24/24 32/5 32/11 40/10 43/21 44/16 45/18 45/23 46/6 46/6 46/8 46/22 47/13 48/17 49/16 54/16 55/7
timeframe **[1]**   46/13
times **[2]**   25/23 40/7
today **[23]**   2/21 3/7 11/9 12/6 12/16 13/6 13/6 17/11 20/10 21/8 22/5 24/9 40/2 40/4 40/24 44/24 45/24 47/24 48/2 51/7 52/22 54/16 55/4
together **[3]**   28/6 29/16 56/14
told **[1]**   50/17
tolled **[2]**   48/4 48/6
tons **[1]**   15/18
too **[2]**   12/13 55/6
took **[6]**   13/21 13/24 13/25 19/20 19/24 45/12
top **[7]**   4/5 4/6 4/24 5/6 10/23 14/25 19/8
total **[1]**   49/19
touch **[5]**   16/10 16/15 17/20 35/19 38/16
towards **[3]**   33/20 35/9 37/19
tower **[2]**   27/20 33/19
track **[1]**   48/9
trampled **[1]**   14/9
transcript **[3]**   1/8 1/23 56/13
travel **[2]**   17/15 18/14
tremendous **[1]**   13/3
trial **[4]**   21/4 41/3 43/24 48/4
tricky **[1]**   52/13
true **[2]**   14/15 21/12
try **[9]**   12/4 15/13 20/20 20/21 37/22 38/8 48/13 50/8 51/8
trying **[6]**   14/10 29/6 31/1 39/7 47/20 50/23
tunnel **[3]**   10/4 10/5 15/17
turned **[4]**   9/13 11/19 17/15 41/6
turning **[1]**   41/17
two **[19]**   18/14 20/7 23/13 23/16 24/18 29/3 31/2 33/23 34/18 36/17 36/21 37/5 45/10 45/22 46/11 46/13 49/8 50/5 51/15
two-week **[1]**   46/13
tyranny **[2]**   22/22 38/13

## U

U.S **[1]**   26/4
ultimately **[2]**   38/22 38/22
unable **[1]**   51/12
unarticulable **[1]**   10/15
under **[5]**   16/20 17/6 47/12 52/14 55/5
understand **[13]**   7/22 18/10 18/18 19/2 20/9 21/17 21/18 40/6 43/2 43/16 44/25 48/18 51/1
understanding **[2]**   18/24 42/23
Understood **[4]**   3/15 52/21 54/4 55/1
unidentified **[1]**   10/14
unified **[1]**   52/9
UNITED **[9]**   1/1 1/3 1/9 1/11 1/19 2/3 12/23 56/4 56/8
unleash **[2]**   10/13 12/10
unless **[1]**   6/24
unlike **[1]**   22/18
until **[2]**   21/3 30/20
up **[15]**   3/20 3/21 9/13 29/1 29/7 31/14 32/5 33/13 36/2 36/17 37/3 37/9 41/23 51/11 52/9
upon **[3]**   7/4 50/16 56/7
us **[1]**   25/24
USC **[1]**   16/19
use **[3]**   43/25 54/20 54/25
used **[7]**   6/23 13/20 20/14 20/16 23/13 23/13 23/19
using **[1]**   5/24

## V

value **[1]**   44/2
vanguard **[1]**   25/4
vantage **[1]**   33/6
various **[1]**   41/9
versus **[2]**   2/3 56/9
very **[21]**   3/7 10/5 12/16 13/15 19/11 20/18 23/3 30/20 35/15 36/15 37/11 39/12 39/20 42/5 43/13 44/7 45/11 47/15 48/9 53/9 54/17
via **[2]**   2/14 2/14
victim **[2]**   29/5 29/10
video **[40]**   2/14 5/7 5/17 6/14 7/2 7/4 7/15 8/4 8/5 8/6 8/11 8/16 9/2 9/4 10/15 10/16 11/10 11/16 11/18 11/25 14/20 21/14 27/3 27/9 27/10 27/25 29/3 30/21 30/23 31/19 32/4 34/18 35/18 39/25 44/12 44/24

## V (continued)

videos **[17]**   12/7 20/19 42/1 44/18 44/23 45/1 45/19 47/14 47/22 49/1 49/24 50/3 51/7 51/9 51/19 51/20 52/7
view **[13]**   32/22 33/5 42/1 42/8 44/20 44/21 48/25 49/16 49/19 49/24 50/8 50/9 51/8
viewing **[1]**   45/17
violation **[2]**   18/13 18/21
violence **[9]**   10/13 10/25 11/3 12/2 12/14 12/19 35/4 36/12 40/16
violent **[5]**   12/20 19/25 25/15 38/8 40/10
virtual **[1]**   46/11
virtue **[1]**   2/21
vis **[2]**   48/15 48/15
visor **[3]**   36/21 37/20 37/22
voluminous **[2]**   41/17 42/22

## W

wait **[3]**   42/13 43/12 43/12
walking **[1]**   11/15
want **[44]**   3/5 3/12 3/13 3/16 4/3 4/20 5/15 5/20 7/16 7/17 7/25 8/19 13/14 16/10 16/15 17/20 22/5 23/23 24/8 26/20 27/24 28/22 29/2 31/1 34/18 35/1 35/17 36/14 36/23 40/23 43/8 43/15 43/22 44/22 45/20 46/7 47/21 50/20 50/21 51/24 52/5 52/17 53/19 54/23
wanted **[6]**   17/2 21/14 25/18 35/3 44/21 51/6
was **[114]**
Washington **[4]**   1/4 1/13 1/21 48/22
wasn't **[4]**   6/21 23/4 30/20 31/4
watch **[3]**   21/13 35/8 49/9
watches **[1]**   15/25
way **[4]**   6/16 45/1 49/4 54/8
we **[59]**
we'll **[4]**   2/5 32/19 52/11 55/5
we're **[18]**   7/24 8/4 11/8 12/5 12/16 13/6 13/6 13/7 20/10 21/19 26/11 41/19 42/3 42/6 45/23 50/11 50/12 55/7
we've **[4]**   31/8 38/18 49/19 52/3
weakest **[1]**   40/4

**W**

**weapon [1]** 20/14
**wearing [4]** 28/3 28/7 35/6 37/18
**week [5]** 41/7 46/13 48/20 49/8 52/4
**weeks [6]** 40/25 41/24 42/7 43/2 44/19 45/22
**weight [3]** 17/1 17/3 40/3
**weird [1]** 45/9
**well [19]** 5/2 5/9 6/13 7/1 7/18 23/2 37/23 39/12 43/12 47/9 47/22 48/6 48/11 48/21 49/12 49/25 51/23 52/4 54/15
**went [2]** 21/15 23/9
**were [23]** 13/15 14/10 17/22 19/20 20/14 20/16 24/21 24/22 24/22 26/16 30/21 38/19 39/6 39/7 39/8 39/23 44/18 45/2 45/3 45/5 45/10 49/13 54/14
**west [15]** 24/7 25/6 25/8 26/14 26/18 27/20 31/7 31/8 33/6 33/7 33/18 33/21 36/19 37/3 38/6
**what [82]**
**what's [7]** 23/6 30/3 34/14 37/1 47/20 48/21 55/6
**whatever [6]** 8/22 52/2 53/13 53/21 53/24 54/23
**when [28]** 7/4 10/7 13/10 14/10 19/23 24/21 24/22 25/2 31/11 32/15 32/18 36/7 37/2 37/4 37/6 38/3 38/19 39/4 44/9 44/20 45/25 46/4 49/5 49/17 53/5 53/14 53/18 54/1
**where [18]** 5/10 11/21 25/25 26/12 26/14 27/6 27/22 33/18 33/20 34/4 35/2 35/23 36/3 38/4 39/17 40/11 41/16 43/23
**whereof [1]** 56/17
**whether [2]** 16/22 45/2
**which [32]** 3/18 4/19 6/13 7/6 9/13 9/22 10/3 11/1 11/13 11/18 13/3 13/14 13/18 14/15 17/4 17/7 18/4 19/4 19/5 19/10 19/18 20/25 21/9 21/10 22/15 23/2 30/1 30/24 37/9 44/14 46/2 49/6
**while [15]** 6/14 11/9 11/10 12/17 13/8 18/15 20/21 21/5 21/21 21/24 27/9 31/4 35/15 40/19

47/17
**white [3]** 27/1 27/12 27/21
**whitton [1]** 7/20
**whitton's [1]** 5/1
**who [25]** 4/14 5/3 6/7 14/8 14/9 14/23 14/24 17/23 23/17 23/19 28/5 29/5 29/6 29/10 35/4 35/11 36/17 36/18 38/22 38/22 39/8 42/2 49/2 53/8 53/11
**whose [1]** 15/11
**why [14]** 6/11 6/19 12/16 12/16 13/6 17/12 20/25 26/6 36/10 38/13 38/13 45/6 51/18 52/1
**will [28]** 2/4 6/1 6/14 7/6 11/13 20/19 21/19 27/2 27/3 29/6 29/7 32/3 32/12 32/14 32/16 32/17 32/25 35/20 36/5 37/11 37/21 40/12 44/21 45/22 46/19 47/7 48/12 54/25
**willing [1]** 17/19
**wish [2]** 2/25 41/2
**within [1]** 46/13
**without [2]** 7/21 39/20
**witness [2]** 17/25 56/17
**word [1]** 5/20
**words [3]** 22/19 35/14 54/20
**working [6]** 41/8 41/20 42/18 43/2 43/4 53/23
**worn [4]** 29/9 30/24 34/15 37/10
**would [32]** 3/19 6/11 6/19 7/25 9/22 10/12 10/21 12/25 12/25 14/15 17/8 17/13 17/16 17/19 17/22 19/1 21/9 23/17 24/6 28/4 33/20 34/11 35/7 38/14 40/15 41/22 47/25 51/8 51/10 52/8 52/11 52/23
**wouldn't [1]** 13/24
**wrest [2]** 36/21 37/22
**written [1]** 40/23

**Y**

**yeah [3]** 48/6 48/7 51/18
**years [1]** 46/1
**yelling [2]** 31/8 32/16
**yellow [3]** 27/1 27/22 34/4
**yes [23]** 3/24 3/25 3/25 5/16 8/7 8/8 8/16 9/18 11/22 23/7 26/9 27/17 28/15 30/10 32/24 33/15 34/22 37/15 39/18 43/7 43/19 51/15 54/10
**yet [3]** 21/20 23/11

33/8
**york [1]** 17/23
**you [139]**
**you'd [1]** 48/15
**you'll [3]** 28/2 28/8 31/16
**you're [6]** 8/9 12/5 13/10 37/17 43/14 49/23
**you've [3]** 49/13 51/19 53/14
**your [63]**
**yourself [3]** 2/4 43/15 55/21

**Z**

**zip [1]** 20/14
**zoom [3]** 2/14 2/21 26/24