## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21 Cr. 35 (RC)** |
| **PETER STAGER,** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Peter Stager to a term of 78 months of incarceration, three years of supervised release, $2,000 in restitution, a $31,627 fine, and the mandatory $100 special assessment.

## I.    INTRODUCTION

The defendant, Peter Stager, a 44-year old truck driver from Conway, Arkansas, violently participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers – including an officer that Stager injured by striking him with a flagpole -- and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in its overall restitution summary ($2.9

1

Stager seized the opportunity to join a prolonged multi-assailant attack on police officers on the Lower West Terrace ("LWT") of the United States Capitol building.   During the course of the attack, Stager's co-defendants pulled two officers off the police line.   As one of the officers was pulled – face down and head first – down a set of steps and into the violent mob below, Stager beat him with a flagpole.   Stager made his intentions on January 6, 2021 clear: he was captured on video stating that "Death is the only remedy for what's in [the Capitol] building" and "Every single one of those Capitol law enforcement officers, death is the remedy, that is the only remedy they get."

Because of Stager's chilling motivation and the brutality of the assault, the Government recommends that the Court sentence Stager to 78 months' incarceration for his conviction of violating 18 U.S.C. § 111(a) and (b), a sentence at the top of the Guidelines range of 63 to 78 months.   Such a sentence properly accounts for Stager's horrific conduct.

## II.   FACTUAL BACKGROUND

### A.   The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF 296, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

*Assaultive Conduct in Tunnel Leading to the Doors of the*
*West Front of the U.S. Capitol Building*

The fighting in the lower West Terrace tunnel was nothing short of brutal. Here, I observed approximately 30 police officers standing shoulder to shoulder, maybe

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

four or five abreast, using the weight of their bodies to hold back the onslaught of violent attackers. Many of these officers were injured, bleeding, and fatigued, but they continued to hold the line.   *Testimony of USCP Sgt. Gonell, MPD Officer Fanone, USCP Officer Dunn, and MPD Officer Hodges*: Hearing Before the House Select Comm. to Investigate the January 6th Attack on the United States Capitol, 117   Cong. (July 27, 2021) (Statement of Officer Michael Fanone) available at https://www.c-span.org/video/?513434-1/capitol-dc-police-testify-january-6-attack.

Many of the most violent confrontations on January 6, 2021 occurred near an entrance to the Capitol Building in the LWT.   The entrance usually consists of a flight of stairs leading to a doorway.   On January 6, 2021, however, the construction of the inaugural stage converted the stairway into a 10-foot-wide, slightly sloped, short tunnel that was approximately 15 feet long (the "Tunnel").   That tunnel led to two sets of metal swinging doors inset with glass.   On the other side of the two sets of swinging doors is a security screening area with metal detectors and an x-ray scanner and belt, that leads into the basement of the Capitol Building.   The exterior of the Tunnel is framed by a stone archway (the "Archway") that is a visual focal point at the center of the West Front of the Capitol Building, as circled in red below.



*Exhibit 1*[2]

On January 6, 2021, when rioters arrived at the doors behind this Archway, the outer set of doors was closed and locked, and members of Congress who had fled from the rioters were sheltering nearby.   Members of the United States Capitol Police ("USCP"), assisted by officers from the District of Columbia Metropolitan Police Department ("MPD"), were arrayed inside the doorway and guarding the entrance.   Many of these officers had already physically engaged with the mob for over an hour, having reestablished a defense line here after retreating from an earlier protracted skirmish on the West Plaza of the Capitol building just below.

At approximately 2:42 p.m. the mob broke the windows to the first set of doors, and the police officers reacted immediately by spraying Oleoresin Capsicum ("OC") spray at the rioters, who continued to resist.   The mob continued to grow, and the rioters pushed their way into the second set of doors, physically engaging police with batons, poles, chemical spray, bottles, and

---

[2]  Exhibit 1 is taken from "Inauguration at the U.S. Capitol", Architect of the Capitol, https://www.aoc.gov/what-we-do/programs-ceremonies/inauguration.

other items.   Officers created a line in the doorway to block the rioters and in turn used physically engaged them with batons and OC spray.

The violent battle for control over the LWT entrance in the Tunnel and doorway area continued for more than two hours, during which time rioters repeatedly threatened, pushed, and assaulted police officers, engaging them in intense hand-to-hand combat.   Several officers sustained injuries during this prolonged struggle, and many returned to defend the Capitol, even when injured, as substantial reinforcements for these officers did not arrive until heavily armored Virginia State Police officers joined the police line with additional munitions around 5:00 p.m.   It is not an exaggeration to state the actions of these officers in thwarting the mob at the LWT entrance potentially saved the lives of others, including members of Congress.

### B.      Peter Stager's Role in the January 6, 2021 Attack on the Capitol

#### *Stager's Assault of MPD Officer B.M.*

By 4:27 p.m., police officers had been defending the Tunnel for nearly two hours, advancing and retreating as rioters fought their way into the Tunnel, and were yet again attempting to expel rioters from the Tunnel and the Archway.   The crowd of rioters was crushed against the line of police officers protecting the Archway; many rioters tumbled out of the Tunnel and several were trampled by the mob.

The battle escalated considerably at approximately 4:27 p.m. when co-defendant Justin Jersey moved toward the front of the crowd and charged at the line of officers who were positioned in the Archway, which included MPD Officers A.W., B.M., and C.M.   Jersey grabbed Officer A.W.'s baton with one hand, reached towards Officer A.W.'s face with the other, and knocked him to the ground.   While Officer A.W. was lying on the ground of the Archway, co-defendant

Jack Wade Whitton leapt over a fence, kicked at Officer A.W. and repeatedly struck Officer B.M. and other officers with a crutch.   With the commencement of those assaults, other rioters surged towards the Archway, throwing objects at the officers, and striking at them with makeshift weapons such as a baton, a hockey stick, a piece of wood, flagpoles, and a police riot shield.

At that time, Stager was positioned towards the bottom of a set of steps that led to the Archway, carrying a flagpole with an American flag affixed to it.   He watched as Whitton, Jersey, and others attacked the police line.



*Exhibit 2[3] at 00:39*
*(Stager is circled in dark blue.   Whitton is circled in orange.*
*Jersey is not visible, but is positioned towards the center of the Archway.)*

Whitton grabbed Officer B.M., first by his baton, then by the helmet and neck of the officer's ballistic vest.   Co-defendant Logan Barnhart then reached through Whitton's arms and

---

[3] Exhibit 2 is video footage captured by an individual located on the south side of the LWT.

grabbed the neck of Officer B.M.'s ballistic vest. Barnhart and Whitton, with assistance from co-defendant Jeffrey Sabol then dragged Officer B.M. headfirst over Officer A.W., out of the police line and away from the Archway, down the steps in a prone position and into the crowd.  *See* Exhibit 2 at 00:55-01:04.

An aerial photograph was taken as Barnhart, Whitton, and Sabol dragged Officer B.M. down the stairs and into the mob.   Eight of the nine defendants in this case are shown in Exhibit 3, which illustrates their proximity to one another as they assaulted the officers.



*Exhibit 3*
*(Stager is circled in dark blue, Courson is circled in red, McAbee is circled in purple, Barnhart is circled in yellow, Whitton is circled in orange, Jersey is circled in green, Sabol is circled in gray, and Mullins is circled in light blue.)*

In order to obtain this position, Stager had to cross through or around the densely packed, angry, and violent mob and actively sought to move closer to Officer B.M.

Once Barnhart, Sabol, and Whitton had dragged Officer B.M. partway down the steps,

Stager leaned over the stair railing, raised the flagpole he was carrying, and beat Officer B.M. with it, striking at him at least three times.  *See* Exhibit 2 at 01:03-01:11; Exhibit 4.[4]   Co-defendant Mason Courson joined, beating Officer B.M. with a police baton.



*Exhibit 2 at 01:07*

---

[4] Exhibit 4 is a video posted by various Twitter users.   It can be found at https://twitter.com/islandgirlprv/status/1668283520395927553?s=42&t=nOTT7_F02MWBrQfV_MBZhw.



*Still Images from Exhibit 4*

After Stager and Courson beat Officer B.M., the officer eventually was able to stand upright and attempted to climb the steps to re-join the other officers in the Archway.   Courson and co-defendant Clayton Mullins then each pushed Officer B.M.'s head, causing him to stumble back into the crowd, where he was again surrounded by rioters.   When Officer B.M. was trapped in the crowd of rioters, co-defendant Michael Lopatic stole Officer B.M.'s body worn camera.

After striking Officer B.M. with the flagpole, Stager ascended the steps toward the Archway where Officer A.W. was still lying on the ground fending off attacks.   His helmet had been knocked off and Sabol stole his baton.   Co-defendant Ronald Colton McAbee grabbed at Officer A.W.'s torso, while Mullins grabbed one of Officer A.W.'s legs and the two engaged in a tug-o-war with officers who were trying to pull Officer A.W. back into the Archway.   Eventually, McAbee pulled Officer A.W. out of the Archway and the two slid down a set of stairs and into the crowd together, with McAbee on top of Officer A.W. and pinning Officer A.W. down.   As he was dragged into the mob, Officer A.W. was kicked, struck with poles, and stomped on by several individuals.   As Stager stood over Officer A.W., he yelled at him, "Fuck you!   Fucking traitor!"

*See* Exhibit 5[5] at 01:20-01:25.

### Stager's Statements

Subsequent to this assault, Stager was filmed in the vicinity of the Capitol making statements regarding the events of January 6.   In one portion of the video, Stager pointed to the U.S. Capitol and made the following chilling statement: "Everybody in there is a disgrace.   That entire building is filled with treasonous traitors.   Death is the only remedy for what's in that building."   Stager went on to say that "everybody in there is a treasonous traitor.   Every single one of those Capitol law enforcement officers, death is the remedy, that is the only remedy they get."   *See* Exhibit 6.

### Officer B.M.'s Injuries

As a result of the attack, Officer B.M. sustained physical injuries including bruising and abrasions.   In an interview conducted after the assault, Officer B.M. later described his injuries to the Federal Bureau of Investigation ("FBI") as visible bruising to his arms, face, and legs. The bruises were black and blue in color and were sore and painful, consistent with being hit by a metal pipe.   Officer B.M. also had scratches on his knees.   While Officer B.M. did not immediately seek medical attention, and eventually rejoined his fellow officers on the police line, it is clear from video footage that he was physically affected by the assault.   As individuals in the crowd surround him, Officer B.M. appears to have difficulty walking and moving on his own.   Some of the individuals around him supported his weight as they attempted to guide him away from the mob.   *See* Exhibit 7[6] at 01:20-02:31.

---

[5] Exhibit 5 is footage from the BWC of MPD Officer A.W.

[6] Exhibit 7 is video footage captured by the same individual who filmed Exhibit 2.

## III.    THE CHARGES AND PLEA AGREEMENT

On November 17, 2021, a federal grand jury returned a superseding indictment, charging twenty-four counts against nine defendants.   The indictment charged Stager with seven counts:

- Count One: violation of 18 U.S.C. § 1512(c)(2) and § 2 (Obstruction of an Official Proceeding, and Aiding and Abetting);

- Count Ten: violation of 18 U.S.C. § 111(a)(1) and (b) and § 2 (Assaulting, Resisting, or Impeding Certain Officers or Employees Using a Deadly or Dangerous Weapon, and Aiding and Abetting);

- Count Fourteen: violation of 18 U.S.C. § 231(a)(3) (Obstruction of Law Enforcement During Civil Disorder);

- Counts Eighteen, Nineteen, and Twenty: violations of 18 U.S.C. §§ 1752(a)(1), (2), (4), and (b)(1)(A) (Knowingly Entering or Remaining in any Restricted Building or Grounds, Disorderly and Disruptive Conduct in any Restricted Building or Grounds, and Engaging in Physical Violence in any Restricted Building or Grounds, with a Deadly or Dangerous Weapon);

- Count Twenty-Four: violation of 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence on Capitol Grounds).

On, February 16, 2023 , Stager was convicted of Count Ten based on a guilty plea entered pursuant to a plea agreement.

## IV.    STATUTORY PENALTIES

Stager now faces sentencing on one count of violating 18 U.S.C. § 111(a)(1) and (b).   As noted in the Plea Agreement and the Presentence Report issued by the U.S. Probation Office,

Barnhart faces up to 20 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000 or twice the gross pecuniary gain or loss of the offense, and a mandatory special assessment of $100.

## V.   THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).   The Sentencing Guidelines calculation set forth in the PSR is the same as the calculation to which the parties stipulated in the plea agreement.   According to the PSR and the parties, Stager's adjusted offense level under the Sentencing Guidelines as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a)[7] | Base Offense Level | **14** |
| U.S.S.G. § 2A2.2(b)(2)(B) | Use of a Dangerous Weapon | **+4** |
| U.S.S.G. § 2A2.2(b)(3) | Bodily Injury | **+3** |
| U.S.S.G. § 2A2.2(b)(7) | Conviction under 18 U.S.C. § 111(b) | **+2** |
| U.S.S.G. § 3A1.2(a)-(b) | Government Official Victim; Application of Chapter 2, Part A of U.S.S.G. | **+6** |
| | **Adjusted Offense Level:** | **29** |
| U.S.S.G. § 3E1.1(a)-(b) | Acceptance of Responsibility | **-3** |
| | **Total Offense Level:** | **26** |

*See* PSR ¶¶ 52-64; Plea Agreement, Section 4.C.

The U.S. Probation Office calculated Stager's criminal history as category I, which the government does not dispute. PSR at ¶¶ 67-68. Accordingly, the U.S. Probation Office calculated Stager's total adjusted offense level, following a three-level downward adjustment for acceptance

---

[7] § 2A2.2 applies here because Stager's conduct involved aggravated assault.   *See* U.S.S.G. § 2A2.4(c)(1).

of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), as 26, and his corresponding Guidelines imprisonment range as 63-78 months. PSR at ¶ 114.   Stager's plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein.

## VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.    Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Stager's extremely violent conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Stager joined a prolonged, multi-assailant attack on police officers, which resulted in injuries to the officers.   Stager himself wielded a flagpole and used it to strike at a vulnerable officer, who, lying face down in a mob of rioters had no means of defending himself.   And, if his intention in engaging in this assault was not clear, he subsequently announced it, proclaiming "death" to be the "only remedy" for both the members of Congress who had gathered to certify the electoral college count (*i.e.* "everybody in [the Capitol building]) and those officers for protecting them (*i.e.*, "every single one of those Capitol law enforcement officers"). The nature and circumstances of Stager's offense were of the utmost seriousness, and fully support the government's recommended sentence of 78 months' incarceration.

### B.  Stager's History and Characteristics

As set forth in the PSR, Stager has two criminal convictions, both from more than 20 years ago.   He has one additional arrest, also from more than 20 years ago. *See* PSR ¶¶ 66, 67, 70.

13

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Stager joined an assault on a police officer responsible for safeguarding the Capitol building and those inside, and beat him with a flagpole.   He then proclaimed that "death" was the "only remedy" for those he viewed as traitors – the members of Congress and those protecting them.   Stager's actions on January 6 were the epitome of disrespect for the law.

### D.  The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[8] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.   Stager's actions on January 6 were deliberate and dangerous.   *See* Sections II(B) and IV(A) *supra.*   It is fortuitous that Officer B.M. was not more seriously injured and that Stager and his fellow rioters did not succeed in harming members of Congress.

---

[8]  *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

### E.     The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.     Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."   So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the

Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[9]

---

[9] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[10]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, Stager's already-sentenced co-defendants are relevant and useful comparators.

*United States v. Justin Jersey*, 21-cr-35-RC.   As discussed above, Jersey charged at and attacked the police line in the Archway.   Jersey viciously assaulted Officer A.W. by grabbing his face and knocking him to the ground, leaving him vulnerable to attack by other rioters.   This assault   reignited other rioters' violent assaults against police after a relative lull.   Jersey eventually obtained a police baton and used it to strike at the other officers in the line.   (This assault, however, occurred after his offense of conviction, the assault of Officer A.W.).   As discussed above, Officer A.W. sustained serious injuries as a result of the attacks on the LWT, including from Jersey's assault.   For Jersey, the Court calculated a total offense level of 24 and criminal history category of I, resulting in a Guidelines range of 51 to 63 months' imprisonment,

---

[10] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

lower than Stager's Guidelines range, largely because no enhancement for the use of a weapon was applied.   This Court imposed a Guidelines range sentence of 51 months' incarceration.

*United States v. Logan Barnhart*, 21-cr-35-RC.   Barnhart grabbed Officer B.M. and dragged him in a prone position from the police line, out of the Archway, and down a set of stairs into the violent mob, where Officer B.M was then attacked by Stager and others.   Barnhart then returned to the Archway and joined other rioters in charging against the police line and striking at the officers with a flagpole.   For Barnhart, the Court calculated a total offense level of  22 and criminal history category I, resulting in a Guideline range of 41 to 51 months' imprisonment,[11] significantly lower than Stager's Guidelines range.   This Court imposed a below-guidelines sentence of 36 months' incarceration, crediting, in part, complications arising from the GPS monitor that Barnhart was required to wear while on pre-trial release and the restrictions that this condition placed on his liberty.

*United States v. Mason Courson*, 21-cr-35-RC.   Courson joined the assault on Officer B.M., striking him with a police baton, then, as the officer attempted to stand up and rejoin the police line, pushing him towards the mob of rioters.   Courson then grabbed at Officer A.W. as he was still lying on the ground.   Approximately one hour earlier, Courson and other rioters forced their way through the line of police officers guarding the Tunnel.   As officers expelled rioters, Courson grabbed at their equipment.   For Courson, the Court calculated a total offense level of 26 and a criminal history category of II, resulting in a Guideline range of 78 to 87 months' imprisonment, higher than Stager's Guidelines range as a result of Courson's more significant

---

[11] The Government sought, but the Court did not apply, an additional 2-point enhancement pursuant to U.S.S.G. § 3A1.3, which would have increased Barnhart's Guidelines range to 51 to 63 months.

criminal history.   The Government recommended a sentence of 87 months' imprisonment.   This Court imposed a below-guidelines sentence of 57 months' incarceration.

Stager's conduct in assaulting Officer B.M. is most analogous to Courson's.   Both observed the melee from the base of the steps leading to the Archway and actively sought to join it.   Both approached with weapons – Courson wielding a baton and Stager carrying a flagpole – and used them to strike the officer, inflicting injury.   While Stager's subsequent statements render his actions even more appalling, the Government is not aware of any additional violent or destructive conduct on January 6.   In contrast, Courson engaged with police officers on an earlier occasion, and while he did not specifically wish death upon them as Stager did, referred to them as "traitors" in his post-arrest interview with the FBI and described the scene at the Capitol, which he willingly joined, as a "warzone" or "battle."

## VII.   RESTITUTION

As agreed to by the parties, the Court should order Stager to pay $2,000 to the Architect of the Capitol.   The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to

impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Stager must pay $2,000 in restitution to the Architect of the Capitol, which reflects in part the role he played in the riot on January 6.[12] Plea Agreement ¶ 12. As the plea agreement reflects, the riot at the United States Capitol had caused more than $2.8 million in damages, a figure based on loss estimates supplied by the Architect of the Capitol in mid-October 2022.[13] *Id.*  This restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol. *See* PSR ¶ 139.

## VIII.   FINE

Stager's convictions under Section 111(b) subject him to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b)(3). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. §5E1.2(d).  In assessing a defendant's income and earning capacity, a sentencing court properly considers whether a defendant can or has sought to "capitalize" on a crime that "intrigue[s]" the "American public." *United States v. Seale*, 20 F.3d 1279, 1284-86 (3d Cir. 1994).

A fine is appropriate in this case. As the PSR notes, Stager has raised money in an online campaign through GiveSendGo, a fundraising website, through a webpage operated by his wife.

---

[12] The government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

[13] As noted above in footnote 1, since the Plea Agreement was executed, the amount of damages has been updated by the Architect of the Capitol, USCP, and MPD.

As of June 26, 2023, Stager had raised $31,627 through the website. PSR ¶ 107; Exhibit 8.   The text of the page implies that Stager is a "[p]olitical [p]risoner[]."   Stager should not be able to "capitalize" on his participation in January 6 riot in this way.

**CONCLUSION**

For the reasons set forth above, the government recommends that the Court impose a sentence of 78 months of incarceration, three years of supervised release, $2,000 in restitution, a $31,627 fine, and the mandatory $100 special assessment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:   Colleen D. Kukowski
Colleen D. Kukowski
Assistant United States Attorney

Benet J. Kearney
Assistant United States Attorney

Matthew Moeder
Assistant United States Attorney

601 D Street, N.W.
Washington, D.C. 20530
Colleen.Kukowski@usdoj.gov / (202) 252 2646
Benet.Kearney@usdoj.gov / (212) 637 2260
Matthew.Moeder@usdoj.gov / (816) 426-4103